## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KASSEM HEJEIJ** )<br>Rouche District, Albahri Building )<br>Beirut, Lebanon )<br>*Plaintiff*, )<br> )<br>v. )<br> )<br>**ANDREA M. GACKI** )<br>**in her official capacity as** )<br>**Director of the** )<br>**United States Department of the Treasury's** )<br>**Office of Foreign Assets Control** )<br>1500 Pennsylvania Avenue, NW )<br>Freedman's Bank Building )<br>Washington, D.C. 20220 )<br> )<br>*Defendant*, )<br> )<br>and )<br> )<br>**THE UNITED STATES DEPARTMENT** )<br>**OF THE TREASURY, OFFICE OF FOREIGN** )<br>**ASSETS CONTROL** )<br>1500 Pennsylvania Avenue, NW )<br>Freedman's Bank Building )<br>Washington, D.C. 20220 )<br> )<br>*Defendant*. )<br> )<br> ) | **AMENDED COMPLAINT**<br>**FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF**<br><br>CIV. No. 19-cv-1921 (TFH)<br><br>ECF |

Plaintiff Kassem Hejeij (herein referred to as "Hejeij") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Andrea M. Gacki, and in support of this complaint alleges:

## INTRODUCTION

1.      Kassem Hejeij—a reputed Lebanese businessman—has been subject to economic sanctions imposed by Defendants for more than four years without sufficient notice as to the bases for his designation and without a meaningful opportunity to contest his designation. These sanctions have caused serious financial and reputational for Hejeij, who has been forced to divest from companies in which he held ownership, resign from a leadership position at a respected Lebanese bank, and is now subject to an effective international boycott.

2.      Provided exceptionally limited access to the factual bases for his designation under Executive Order ("E.O.") 13224, Hejeij has been at a clear and unlawful disadvantage in pursuing his request for administrative reconsideration before OFAC. Being barred from accessing the factual bases for his designation and unable to discern whether the limited disclosures provided by OFAC served as a basis for his designation, Hejeij has been left guessing as to the reasons for OFAC's determination that he meets the criteria for designation under E.O. 13224.

3.      This guesswork was made evident when OFAC issued its denial of Hejeij's delisting petition—which occurred after Hejeij instituted this instant lawsuit alleging OFAC's unreasonable delay. The record produced in support of OFAC's denial decision conclues that Hejeij rebutted allegations that did not serve as a factual basis for his designation under E.O. 13224; failed to address allegations that were left—and remain—entirely undisclosed to Hejeij; and was left unaware of OFAC's new allegations used in support of its denial decision. This record clearly shows that OFAC has long hid the ball from Hejeij as to the reasons for his designation and moved the goalposts at its convenience so as to ensure that Hejeij cannot meaningfully contest that designation. That Hejeij's failure to rebut certain allegations left undisclosed to him is now used

to justify denying his delisting petition demonstrates how Defendants have no real interest in providing Hejeij a meaningful opportunity to challenge his designation.

4.     Now, OFAC has determined that Hejeij is to remain designated under E.O. 13224 despite their withholding of entire reasons for that determination. This renders Hejeij without notice and unable to seriously challenge his designation. Defendants' actions in denying Hejeij's request for reconsideration thus violate his administrative and constitutional due process rights.

5.     The limited and insufficient disclosures made to Hejeij regarding the denial of his delisting petition evidence OFAC's unwillingness to seriously consider the facts before it and adjudicate the matter fairly. Those disclosures highlight irrational conclusions and findings drawn by OFAC to support its denial decision, and largely center on the agency's reflexive dismissal of exculpatory information provided by Hejeij as being non-germane.

6.     Defendants' unlawful action cannot be allowed to stand. The APA entrusts federal agencies to fairly consider matters presented to them and to provide a process that protects core features of our constitutional system. Defendants have abused this trust. For this reason, Hejeij turns to this Court for reprieve.

## JURISDICTION AND VENUE

7.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, the United Nations Participation Act, 22 U.S.C. § 287c, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

8.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

9.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

10.     Kassem Hejeij is and was at all times relevant to this complaint a citizen of Lebanon. Hejeij currently resides at Rouche District, Albahri Building, Beirut, Lebanon.

11.     Hejeij is a respected Lebanese businessman who is the founder and former owner and manager of Middle East Africa Bank—a reputable Lebanese financial institution. Up until his designation, Hejeij owned a number of companies in Lebanon, which were engaged in various industries.

12.     On June 10, 2015, Hejeij was designated under E.O. 13224, and his name was identified on OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"). As a result of this designation, all property in which Hejeij has an interest that is subject to U.S. jurisdiction is blocked, and U.S. persons are generally prohibited from engaging in any dealings or transactions with him. Moreover, foreign persons are subject to potential designation under E.O. 13224 for engaging in transactions with Hejeij.

13.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Avenue, NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including, *inter alia*, by designating persons under E.O. 13224 and regulating dealings

with them via 31 C.F.R. Parts 501 and 594, the "Reporting, Procedures, and Penalties Regulations" and the "Global Terrorism Sanctions Regulations," respectively. OFAC and its Director were responsible for designating Hejeij under E.O. 13224.

14.     Defendant Andrea M. Gacki is the Director of OFAC. The Director of OFAC is delegated the authority to take any action permitted the Secretary of the Treasury under E.O. 13224, including designating parties thereto. 31 C.F.R. § 594.802. Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A.     OFAC's June 10, 2015 Designation of Hejeij

15.     On June 10, 2015, OFAC designated Hejeij under E.O. 13224 for allegedly providing financial, material, or technological support for, or services to or in support of, Hizballah. As a result of this designation, all of Hejeij's property and interests in property within U.S. jurisdiction was blocked, and U.S. persons are generally prohibited from engaging in transactions with him. In addition, foreign parties may be subject to sanctions for engaging in transactions or dealings with him.

16.     OFAC issued a press release announcing the designation. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Hizballah Front Companies and Facilitators in Lebanon and Iraq (June 10, 2015). This press release included allegations of unclear relevance to the legal criteria for designation under E.O. 13224. OFAC did not make clear whether the allegations contained in the press release served as the factual bases for his designation.

### B.     Hejeij's Delisting Petition

17.     On October 2, 2017, Hejeij filed a request for administrative reconsideration of his designation pursuant to OFAC's delisting procedures at 31 C.F.R. § 501.807. Hejeij's delisting

petition argued that the factual allegations supporting OFAC's determination that Hejeij met the criteria for designation under E.O. 13224 were erroneous or, in the alternative, that circumstances had changed so fundamentally as to the negate the basis for his designation.

18.     On March 12, 2018, OFAC issued a questionnaire seeking information and documents relevant to their consideration of Hejeij's delisting petition. On June 8, 2018, Hejeij responded to that questionnaire with information and documents responsive to OFAC's queries. Hejeij also provided additional arguments as to why his designation should be rescinded, as he did not meet the criteria for designation under E.O. 13224.

19.     As part of his June 8, 2018 Questionnaire Response, Hejeij noted, *inter alia*, that he had resigned from his position at Middle East Africa Bank ("MEAB") and had divested his ownership interest in the bank. Hejeij further stated that he had "ceased his relationship with the bank," and that any present communication with MEAB "takes place through the bank's lawyers" and "relate[s] to [Hejeij's] provision of information . . . relevant to legal claims the bank has brought against certain customers . . ."

20.     As part of his June 8, 2018 Questionnaire Response, Hejeij noted, *inter alia*, that he "is not aware of the bank opening an account for any person directly affiliated with Hizballah or any charitable institutions known to be otherwise connected to Hizballah." In addition, Hejeij stated that he "has not invested in any infrastructure projects in which he knew were led by or otherwise related to Hizballah or to entities or charitable institutions known to be connected to Hizballah." While Hejeij sought to provide rebuttal evidence or otherwise explain any specific evidence in OFAC's possession, OFAC "failed to provide the names of the persons or entities tied to Hizballah for which [Hejeij] allegedly opened bank accounts and provided credit." As Hejeij noted in his Questionnaire Response, "[t]he absence of this information undermines [his] ability

to meaningfully respond to OFAC's allegations, instead leaving [Hejeij] speculating as to OFAC's evidentiary basis for making these allegations."

21.     On June 11, 2018, Hejeij proposed entrance into a Terms of Removal Agreement with OFAC under which Hejeij (1) would sever and refrain from dealings of any nature with Adham Tabaja or companies owned or controlled by Tabaja; (2) would not be employed in any operational, executive, or managerial position in any financial institution for a five-year period; and (3) would not extend any lines of credit to any companies for a five-year period. OFAC acknowledged receipt but did not otherwise provide any substantive response to this request.

22.     On February 25, 2019, Hejeij supplemented his initial response to OFAC's March 12, 2018 Questionnaire with additional information and documentation. This submission was undertaken in response to OFAC's provision of a new unclassified summary of classified or otherwise privileged information contained in the administrative record.

23.     Hejeij's supplemental response noted that OFAC's unclassified summary stated that Hejeij—as of mid-2014—is "an owner of Global Cleaners SARL." Hejeij therefore provided corporate registry documents evidencing the historical ownership of Global Cleaners SARL, which makes clear that Hejeij has never held any ownership interest in the company. Specifically, Hejeij provided a Comprehensive Statement of the Company's Current Status, "which identifie[d] all persons that have maintained an ownership share in, or a formal position with, Global Cleaners," as well as "Minutes of an Extraordinary General Meeting of Global Cleaners, dated August 20, 2013, which identifie[d] Global Cleaners' shareholders as of August 2013." These documents—Hejeij noted—"are publicly available in the Commercial Register in the District of Mount Lebanon." Hejeij further highlighted that his "name does not appear in either document, evidencing that [he] was not a shareholder in Global Cleaners and that OFAC's allegation is thus

contradicted by the facts." Hejeij requested that OFAC "share [any] information or documents with him . . . showing . . . that [he] currently holds or previously held an ownership interest in, or formal position with, Global Cleaners," so that Hejeij "has an opportunity to rebut or otherwise challenge the legitimacy of that information."

24.     Hejeij's supplemental response recited each of the five allegations contained in OFAC's unclassified summaries and provided rebuttal evidence or arguments as to each of the allegations. For instance, Hejeij argued that "[i]t was solely through [his] role as MEAB's Chairman that he dealt with Adham Tabaja," and that—because Hejeij had resigned his role as MEAB's Chairman—there had been a change in circumstances warranting rescission of his designation under E.O. 13224. Moreover, Hejeij noted that "MEAB had ceased its relationships with OFAC-designated parties, including Adham Tabaja . . . by closing his and his companies accounts and seeking repayment of debts owed by Mr. Tabaja."

25.     On March 13, 2019, Hejeij submitted a letter to OFAC seeking clarification as to the disclosures made by OFAC regarding the bases for his designation. Hejeij noted that he sought such clarification "so as to ensure that [he] understands the bases and conclusions for his designation to which the disclosure correlates and has a meaningful opportunity to respond . . ." Two days later, OFAC responded that they had already provided him with all releasable information from the record.

26.     On June 26, 2019, following nearly 21 months without a decision on his delisting petition, Hejeij filed a lawsuit against Defendants alleging: (1) that Defendants' failure to render a decision on his reconsideration request constituted unreasonable delay in violation of the APA; (2) that Defendants' continued designation of Hejeij constituted arbitrary and capricious agency action in violation of the APA; and (3) that Defendants' continued designation of Hejeij violated his Fifth

Amendment right to due process and constituted arbitrary and capricious agency action in violation of the APA.

### C.      Hejeij's Request for Notice

27.      On October 2, 2017, Hejeij filed a request for the administrative record underlying OFAC's determination that he meets the criteria for designation under E.O. 13224. This request sought, *inter alia*, "the administrative record relied upon to designate [Hejeij], including any releasable exhibits or portions of such exhibits attached to the administrative record." It also sought "unclassified summaries of classified or otherwise privileged information contained in the administrative record." To the extent that such is required, Hejeij also requested that his counsel— provided that appropriate security clearances were obtained—be permitted to review the full unredacted administrative record relied upon to designate him.

28.      On March 7, 2018, Hejeij submitted a demand letter to OFAC, noting that it had been five months since his request for the administrative record and that OFAC had yet to disclose the record or any portions thereof. Because OFAC's failure to release record prevented Hejeij from having an understanding as to the bases for his designation and limited his effective use of OFAC's delisting procedures, Hejeij stated that he intended to pursue litigation if OFAC persisted in delaying disclosure of the administrative record.

29.      On April 19, 2018, OFAC provided Hejeij with the redacted administrative record underlying his E.O. 13224 designation. In this version of the administrative record, the entire portion titled "Basis for Designation" was redacted, leaving Hejeij unable to gain an understanding as to the bases for OFAC's determination that he met the criteria for designation under E.O. 13224.

30.      For this reason, Hejeij submitted a letter to OFAC requesting the agency to provide an unclassified summary of classified or otherwise privileged information contained in the

administrative record so as to permit Hejeij an understanding of the reasons for his designation. Absent immediate disclosure of the unclassified summaries, Hejeij signaled his intent to pursue litigation so as to achieve notice of the reasons for his designation.

31.     On August 15, 2018, Hejeij filed a civil complaint against Defendants alleging that Defendants had violated Hejeij's constitutional and administrative due process rights by failing to provide him adequate notice as to the factual bases for his designation under E.O. 13224.

32.     On October 17, 2018, OFAC provided Hejeij with a non-privileged and unclassified summary of information regarding the basis for Hejeij's designation under E.O. 13224. As a result of this disclosure, Hejeij voluntarily dismissed his lawsuit without prejudice so that he could properly review the information disclosed in response to his lawsuit.

33.      On November 28, 2018, OFAC provided Hejeij with an additional non-privileged and unclassified summary of information regarding the basis for Hejeij's designation under E.O. 13224. This unclassified summary comprised two sentences, alleging in a conclusory fashion that Hejeij "has maintained direct ties with senior elements in Hezbollah, Hezbollah elements in Iraq, among others," and "has provided support to Hezbollah for a number of years through Middle East and Africa Bank, including by investing in civilian infrastructure that Hezbollah uses in Lebanon and Iraq."

### D.     OFAC's Denial of Hejeij's Delisting Petition

34.     In response to this instant lawsuit, OFAC issued a decision on the delisting petition. Exhibit A—OFAC August 29, 2019 Letter. OFAC denied Hejeij's request for reconsideration, having "determined that [Hejeij] has not put forth arguments or evidence establishing that an insufficient basis exists for his designation or that the circumstances resulting in the designation

are no longer applicable." *Id*. According to OFAC, Hejeij "failed to provide sufficient evidence that he no longer provides support and services to Hizballah." *Id*.

35.    OFAC's denial letter states that Hejeij's designation under E.O. 13224 was based on Hejeij's "maintain[ing] direct ties with senior elements of Hizballah and provi[sion of] support to the group for a number of years through Middle East Africa Bank, including by working on behalf of Hizballah to manage commercial ventures in Iraq."

36.    OFAC's denial letter states that, while Hejeij "claimed to have no relationship with Hizballah," that during a 2018 meeting with the Federal Bureau of Investigation ("FBI"), he "provided details on Hizballah funding mechanisms and business connections," as well as "on multiple Hizballah-affiliated bankers and money launderers." OFAC therefore "concluded that only a person having intimate familiarity and ongoing access to senior elements of Hizballah would possess this knowledge." For this reason, OFAC states that it "has reason to believe that [Hejeij's] support and services have not ceased."

37.    OFAC's denial letter further states that it "has evidence in its possession that undermines [Hejeij's] claim that he has never knowingly had any sort of relationship with Hizballah." OFAC states that Hejeij's "disingenuous denial of any support or affiliation with Hizballah undermines his overall credibility."

38.    OFAC's denial letter goes on to state that, while the agency "acknowledges that [Hejeij's] name does not appear on the corporate record documents [for Global Cleaners], information available to OFAC indicates that [Hejeij] was an owner of Global Clearners S.A.R.L., which provided millions of dollars per year to Hizballah." Similarly, OFAC states that Hejeij's claim that he opened MEAB branches in Iraq for commercial reasons is unpersuasive, as OFAC

"has reason to believe that [Hejeij] opened the Iraqi MEAB branches for reasons other than advancing innocuous commercial interests."

39.     OFAC's denial letter also alleges that Hejeij "collaborated with Adham Tabaja, whom OFAC designated in June 2015 for providing support and services to Hizballah." Specifically, OFAC notes that "[a]s of early 2014, [Hejeij] and an individual whom OFAC has reason to believe is Adham Tabaja were responsible for transferring funds from Hizballah companies in Iraq to Hizballah." Moreover, OFAC states that Hejeij's "description of his relationship with Adham Tabaja as professional in nature does not diminish the fact that he was personally involved in facilitating a customer relationship with Adham Tabaja," evidencing his close collaboration for Tabaja "for the benefit of Hizballah."

40.     The denial letter alleges that "OFAC has reliable evidence in its possession contradicting [Hejeij's] assertions" that his role with MEAB was "mostly ceremonial" and that Hejeij "did not have the authority to extend credit unilaterally at the institution." OFAC notes that, "as of 2018, [Hejeij] continued to use MEAB on behalf of Hizballah . . . [and] continues to oversee the day-to-day operations at MEAB." According to OFAC, "the management change was merely a change on paper designed to circumvent sanctions."

## E.     OFAC's Administrative Record in Support of Its Denial Decision

41.     On October 4, 2019, Defendants provided Hejeij with a copy of the redacted administrative record upon which it relied in denying Hejeij's delisting petition. This record included the evidentiary memorandum "recommend[ing] the denial of [Hejeij's] request for removal from the SDN List."

42.     OFAC's evidentiary memorandum states that the information contained therein "establishes a reason to believe that the basis for HEJEIJ's designation continues to exist and,

therefore, the circumstances continue to warrant the blocking of HEJEIJ's property and/or interests in property."

43.    To make this determination, OFAC appears to have concluded the following: (1) that it "has reason to believe that HEJEIJ continues to maintain relationships with HIZBALLAH;" and (2) that it has reason to believe that "HEJEIJ was not truthful with OFAC when he claimed to have distanced himself from dealing with MEAB."

44.    Section III of the evidentiary memorandum is titled "Basis for Denial of Request," which appears to contain OFAC's conclusions and findings underpinning its decision to deny Hejeij's delisting petition. Section III contains three sub-headings titled: (1) Detailed Information Provided by HEJEIJ During a FBI Interview Demonstrates that He Made False Statements to OFAC and Maintains an Ongoing Relationship with HIZBALLAH; (2) Additional Information on HEJEIJ's Continued Relationship with MEAB and Provision of Financial, Material, or Technological Support for, or Financial or Other Services to or in Support of, HIZBALLAH; and (3) Other Arguments Raised by HEJEIJ.

45.    The entire subsection of subheading (1)—totaling what appear to be fourteen paragraphs—is redacted outside of the agency's conclusion that the findings contained therein "demonstrate that HEJEIJ was untruthful with OFAC in his questionnaire response, in which he stated that he 'does not have and has never knowingly had a relationship with HIZBALLAH.'"

46.    The entire subsection of subheading (2)—totaling what appear to be five paragraphs—is redacted outside of the agency's conclusion that the findings contained therein "show that HEJEIJ was not truthful with OFAC when HEJEIJ stated that he 'does not maintain any current relationship with [MEAB]' and that 'upon his resignation and the transfer of his ownership interest in MEAB, he ceased his relationship with the bank.'" OFAC used this

subsection to further determine that "HEJEIJ continued to provide financial, material, or technological support for, or financial or other services to or in support of, HIZBALLAH subsequent to his designation on June 10, 2015."

47.     Subheading (3) provides OFAC's reasons for discounting other arguments raised by Hejeij during his reconsideration matter.

48.     In the first paragraph of Subheading (3), OFAC notes that Hejeij argued that the agency "ha[d] not provided [him] a meaningful opportunity to respond to the allegations forming the basis for his designation due to significant redactions in the administrative record provided to HEJEIJ." OFAC concludes that its provision of a non-privileged, unclassified summary of the classified and/or privileged information contained in the administrative record "provided HEJEIJ sufficient notice for the basis of his designation," as it "included information from every exhibit which formed the basis of HEJEIJ's designation." OFAC did not, however, provide a statement of reasons as to the factual bases for Hejeij's designation.

49.     In the second paragraph of Subheading (3), OFAC concludes that Hejeij's argument that he did not unilaterally extend credit to Hizballah members is "not germane to the basis for th[e] denial . . ." Specifically, OFAC states that information evidences that Hejiej continues to use MEAB to the benefit of Hizballah, an allegation that OFAC states which wholly contradicts statements by Hejeij that he did not act to support Hizballah through MEAB. OFAC provides no other explanation as to why Hejeij's argument that he did not unilaterally extend credit to Hizballah members is "not germane to the basis for th[e] denial."

50.     In the third paragraph of Subheading (3), OFAC states that while the agency does not dispute "HEJEIJ's claim that MEAB terminated [certain] loans following OFAC's February 2018 designation . . . , the information HEJEIJ provides . . . are not germane to the basis for this

denial…" This is because, according to OFAC, as these particular loans 1) did not factor into any part of the basis for HEJEIJ's initial designation, and 2) do not comprise any part of the basis for this denial."

51.      In the fourth paragraph of Subheading (3), OFAC concludes that Hejeij's provision of corporate registry documents for Global Cleaners SARL showing that he is not—and never was—an owner of the company *contra* OFAC's allegations "[is] not germane to the use of information regarding HEJEIJ's affiliation with GLOBAL CLEANERS in the basis for HEJEIJ's initial designation." OFAC's unclassified summary, however, specifically stated that "[a]s of mid 2014, Kassem Hejeij was an owner of Global Cleaners which provided millions of dollars per year to Hizballah." Based on the disclosures provided to Hejeij, his purported ownership of Global Cleaners entirely served as the basis for establishing Hejeij's affiliation to Global Cleaners.

52.      In the fifth paragraph of Subheading (3), OFAC also concludes that Adham Tabaja's possible use of a proxy for his ownership interest in Global Cleaners "casts doubt on HEJEIJ's claim that no individual on the document acted as an agent or nominee for HEJEIJ." OFAC does not state or otherwise suggest that it has information in its possession evidencing that a person listed as an owner in Global Cleaners' corporate registry documents acted as a proxy for Hejeij. Instead, OFAC relies on speculation that since someone else may have used a proxy that he himself used a proxy.

53.      In the sixth paragraph of Subheading (3), OFAC concludes that "the precise nature of HEJEIJ's relationship with TABAJA is irrelevant, as HEJEIJ's statements that he was involved in 'facilitating a customer relationship with TABAJA,' 'providing TABAJA banking facilities,' and 'opening and maintenance of accounts' held by TABAJA's companies demonstrate that HEJEIJ collaborated closely with TABAJA, a significant HIZBALLAH financier . . ." OFAC fails

to assess the nature of Hejeij's relationship with Tabaja and entirely ignores the fact that because Hejeij's provision of support to Tabaja was solely through his role as MEAB's Chairman and because Hejeij is no longer MEAB's Chairman, there has been a change in circumstances.

54.     In the seventh paragraph of Subheading (3), OFAC concludes that "HEJEIJ's lack of recollection of a meeting with a HIZBALLAH official does not mean that such a meeting did not occur, and OFAC views HEJEIJ's denials as being self-serving and unpersuasive given HEJEIJ's stated ability to recall the details of his travel to Iraq in 2013 . . ." Hejeij had requested further detail regarding this purported meeting with a Hizballah official in order to establish whether such a meeting occurred or to otherwise rebut OFAC's allegation. OFAC had failed to provide any additional information to Hejeij.

55.     In the ninth paragraph of Subheading (3), OFAC concludes that "the information contained above in this memo contradicts both HEJEIJ's assertion that he has distanced himself from MEAB and that circumstances have changed such that the basis for HEJEIJ's designation has been negated." The evidentiary memorandum provided to Hejeij redacts all substantive portions of OFAC's findings with respect to Hejeij's purported continued involvement with MEAB.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DENIAL OF HEJEIJ'S DELISTING PETITION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

56.     Hejeij re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

57.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

58.     Defendants' denial of Hejeij's delisting petition—including its determination, conclusions, and findings contained therein—is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA, as Hejeij does not meet the legal criteria for designation under E.O. 13224 and the information assembled and rationalized by OFAC does not provide reason to believe that he meets the criteria for designation.

59.     Defendants' conclusions and findings in support of its denial decision are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA, as the information assembled, rationalized, and considered by OFAC does not rationally support those conclusions and findings.

## COUNT II

**DEFENDANTS' FAILURE TO RESPOND TO HEJEIJ'S REQUEST TO ENTER INTO A TERMS OF REMOVAL AGREEMENT CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

60.     Hejeij re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

61.     Pursuant to 5 U.S.C. § 555(b), agencies are required "to conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." The APA permits "interested" parties to appear before agencies "for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding . . . or in connection with an agency function." 5 U.S.C. § 555(b).

62.     A reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

63.     For more than sixteen months, OFAC has failed to issue a decision, make a determination, or otherwise respond in any manner to Hejeij's request to enter into a Terms of Removal Agreement. Accordingly, Defendants have unreasonably delayed issuance of a decision or determination on such request in violation of the APA.

## COUNT III

### DEFENDANTS' FAILURE TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION VIOLATES HEJEIJ'S CONSTITUTIONAL DUE PROCESS RIGHTS

64.     Hejeij re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

65.     Hejeij is granted the right to petition Defendants for administrative reconsideration of his designation pursuant to the APA and OFAC's delisting procedures.

66.     Consistent with this right to request administrative reconsideration of his OFAC designation, Hejeij has a constitutional due process right to adequate post-designation notice. That notice requires Defendants to provide Hejeij an adequate understanding as to the reasons for his designation. This includes, for instance, granting Hejeij sufficient access to the administrative record underlying his designation, providing sufficiently detailed unclassified summaries in lieu of the redacted portions of the administrative record, and granting Hejeij's cleared counsel access to the full unredacted administrative record.

67.     Defendants have failed to provide Hejeij with adequate notice as to the reasons for his designation under E.O. 13224 and have not offered any alternative mechanisms by which Hejeij may understand the reasons for OFAC's determination that he meets the legal criteria for

designation under that authority. Defendants' failure to provide Hejeij adequate notice as a matter of constitutional law inhibits his ability to contest OFAC's action in this instant lawsuit as, absent disclosure as to the agency's conclusions and findings in support of its determination, Hejeij is limited in his ability to challenge those conclusions and findings. For this reason, Defendants' failure to provide adequate notice violates Hejeij's constitutional due process rights under the Fifth Amendment to the U.S. Constitution.

**COUNT IV**

DEFENDANTS' FAILURE TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION VIOLATES HEJEIJ'S ADMINISTRATIVE DUE PROCESS RIGHTS

68.     Hejeij re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

69.     Hejeij is granted the right to petition Defendants for administrative reconsideration of his designation pursuant to the APA and OFAC's delisting procedures.

70.     Consistent with this right to request administrative reconsideration of his OFAC designation, Hejeij has an administrative due process right to adequate post-designation notice. That notice requires Defendants to provide Hejeij an adequate understanding as to the reasons for his designation. This includes, for instance, granting Hejeij sufficient access to the administrative record underlying his designation, providing sufficiently detailed unclassified summaries in lieu of the redacted portions of the administrative record, and granting Hejeij's cleared counsel access to the full unredacted administrative record.

71.     Defendants have failed to provide Hejeij with adequate notice as to the reasons for his designation under E.O. 13224 and have not offered any adequate alternative by which Hejeij may understand the reasons for his designation. Defendants' failure to provide Hejeij adequate

notice as a matter of administrative law has prevented Hejeij from successfully rebutting each of the allegations underlying OFAC's determination that he meets the criteria for designation.

## COUNT V

### DEFENDANTS' FAILURE TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE AS TO THE REASONS FOR THE DENIAL OF HIS DELISTING PETITION VIOLATES HEJEIJ'S CONSTITUTIONAL DUE PROCESS RIGHTS

72.     Hejeij re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

73.     Hejeij is granted the right to petition Defendants for administrative reconsideration of his designation pursuant to the APA and OFAC's delisting procedures at 31 C.F.R. § 501.807.

74.     Under the Fifth Amendment to the U.S. Constitution, Hejeij has a due process right to adequate post-designation notice. Sufficient notice requires Defendants to apprise Hejeij as to the reasons for OFAC's action, including its denial of his delisting petition. Sufficient notice involves, for instance, granting Hejeij adequate access to the administrative record underlying OFAC's denial decision, providing sufficiently detailed unclassified summaries in lieu of the redacted portions of the administrative record regarding the reasons for OFAC's denial decision, and granting Hejeij's cleared counsel access to the full unredacted administrative record.

75.     Defendants have failed to provide Hejeij with adequate notice as to the reasons for its denial of his delisting petition, as almost all substantive portions of the administrative record describing OFAC's reasons for the denial are redacted in the version provided to Hejeij. Moreover, Defendants have not offered any alternative mechanisms by which Hejeij may gain an understanding as to the reasons for OFAC's denial of his delisting petition. Defendants' failure to provide Hejeij adequate notice as a matter of constitutional law inhibits Hejeij's ability to contest OFAC's action in this instant lawsuit—as, absent disclosure as to the agency's conclusions and

findings in support of its denial decision, Hejeij is limited in his ability to challenge those

conclusions and findings—and his ability to utilize OFAC's delisting procedures in the future. For

this reason, Defendants' failure to provide adequate notice violates Hejeij's constitutional due

process rights under the Fifth Amendment to the U.S. Constitution.

**COUNT VI**

DEFENDANTS' FAILURE TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE AS TO THE
REASONS FOR THE DENIAL OF HIS DELISTING PETITION VIOLATES HEJEIJ'S
ADMINISTRATIVE DUE PROCESS RIGHTS

76.      Hejeij re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

77.      Hejeij is granted the right to petition Defendants for administrative reconsideration

of his designation pursuant to the APA and OFAC's delisting procedures. Hejeij is not limited in

the amount of times that he can petition OFAC to rescind his designation and remove his name

from the SDN List.

78.      Hejeij has an administrative due process right to adequate post-designation notice.

That notice requires Defendants to provide Hejeij an adequate understanding as to the reasons for

OFAC's action, including its denial of his delisting petition. Sufficient notice involves, for instance,

granting Hejeij adequate access to the administrative record underlying OFAC's denial decision,

providing sufficiently detailed unclassified summaries in lieu of the redacted portions of the

administrative record regarding the reasons for OFAC's denial decision, and granting Hejeij's

cleared counsel access to the full unredacted administrative record.

79.      Defendants have failed to provide Hejeij with adequate notice as to the reasons for

its denial of his delisting petition, as almost all substantive portions of the administrative record

describing OFAC's reasons for the denial are redacted in the version provided to Hejeij. Moreover,

Defendants have not offered any alternative mechanisms by which Hejeij may gain an understanding as to the reasons for OFAC's denial of his delisting petition. Defendants' failure to provide Hejeij adequate notice as a matter of administrative law inhibits Hejeij's ability to contest OFAC's action in this instant lawsuit—as, absent disclosure as to the agency's conclusions and findings in support of its denial decision, Hejeij is limited in his ability to challenge those conclusions and findings—and his ability to utilize OFAC's delisting procedures in the future. For this reason, Defendants' failure to provide adequate notice violates Hejeij's administrative due process rights under the APA.

## RELIEF REQUESTED

WHEREFORE, Hejeij respectfully requests that this Court:

A.   Declare and/or order Defendants to rescind Hejeij's designation under E.O. 13224 and remove his name from the SDN List;

B.   Declare and/or order Defendants to rescind OFAC's denial of Hejeij's delisting petition;

C.   Order Defendants to disclose a fully and sufficiently detailed statement of reasons as to OFAC's decision to designate Hejeij under E.O. 13224 so as to permit Hejeij a meaningful opportunity to challenge his designation;

D.   Order Defendants to disclose a fully and sufficiently detailed statement of reasons as to OFAC's decision to deny Hejeij's delisting petition so as to permit Hejeij a meaningful opportunity to challenge OFAC's decision and his continued designation under E.O. 13224;

E.   Order Defendants to provide Hejeij's cleared counsel access to the full unredacted administrative record created in support of OFAC's designation of Hejeij under

E.O. 13224, or a sufficiently detailed unclassified summary of the redacted portions of the record;

F.  Order Defendants to provide Hejeij's cleared counsel access to the full unredacted administrative record created in support of OFAC's denial of upon Hejeij's delisting petition, or a sufficiently detailed unclassified summary of the redacted portions of the record;

G.  Order Defendants to issue a written, reasoned decision on Hejeij's request to enter into a Terms of Removal Agreement;

H.  Grant an award to Hejeij of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

I.  Any other and further relief as the Court may deem proper.

Dated: October 11, 2019

Respectfully submitted,

/s/ Erich C. Ferrari, Esq.
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253

*Attorney for Plaintif*
*Kassem Hejeij*