# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KASSEM HEJEIJ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:19-01921 (TFH) |
| ANDREA M. GACKI, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

On June 10, 2015, Kassem Hejeij, a prominent Lebanese banker and businessman, was designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") for allegedly providing material support to Hezbollah. Following Hejeij's initiation of an administrative reconsideration matter and his request for the administrative record underlying his designation, OFAC provided him with the administrative record, the substantive portions of which—including all portions describing the reasons for OFAC's action—were redacted. In response, Hejeij instituted a lawsuit challenging OFAC's failure to accord him notice of the reasons for its action against him. Instead of defending this lawsuit, OFAC provided Hejeij with unclassified summaries of the redacted administrative record but failed to clarify whether these summaries provided the full basis for its decision to designate him pursuant to E.O. 13224. Accordingly, while Hejeij returned to the delisting process to challenge his designation, he did so under the same conditions as before—without proper notice as to the reasons for OFAC's action and unable to meaningfully challenge its allegations.

On August 29, 2019, OFAC denied Hejeij's delisting petition, having determined that the evidence in its possession "establishes a reason to believe that the basis for Hejeij's designation continues to exist." Admin. R. ("AR") 0005. In support of this action, OFAC asserted that it "ha[d] reason to believe that [Hejeij] continues to maintain relationships with [Hizballah, and that [Hejeij] was not truthful with OFAC." AR 0007. Most of OFAC's findings in support of these conclusions are redacted in the version disclosed to Hejeij. For those findings that are disclosed in at least partial form, the administrative record evidences how OFAC reasoned backwards to produce a decision that had already been predetermined irrespective of any information Hejeij may have provided during his reconsideration matter.

Simultaneous with his delisting request, Hejeij submitted to OFAC a request to enter into a terms of removal agreement that would govern the rescission of his designation and his removal from OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"). This request included proposed terms for that agreement and sought OFAC's acceptance, rejection, or counter-offer. To date, OFAC has provided no substantive response to that request. Defendants' response is that OFAC collapsed that request into Hejeij's then-ongoing delisting request and OFAC's decision with respect to that latter request constituted a decision as to Hejeij's request to enter into a terms of removal agreement. Its legal basis for doing so remains unclear, and the record produced with respect to the denial of Hejeij's delisting request evidences no reasoning by OFAC as to the merits of the proposed terms of removal agreement and why OFAC did not respond to it. It is clearly evident that OFAC did not substantively engage with Hejeij's request—much less act as it was required to do and begin an agency proceeding under which it fairly considered the request. This failure merits a court order directing OFAC issue a decision on Hejeij's request and produce a record evidencing the agency's reasoning for that decision.

For these reasons, and those described in further detail below, this Court should grant summary judgment in favor of Hejeij on all counts.

## I.   DEFENDANTS' DENIAL OF HEJEIJ'S DELISTING PETITION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE APA

Defendants contend that "OFAC reasonably concluded that Hejeij should remain on the SDN List based on the evidence before the agency," and that "[t]his conclusion is entitled to substantial deference." Defs. Consolidated Opp. to Pl.'s Cross-Mot. for Summ. J. and Reply in Supp. of Defs. Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs. Opp.") at 2. Defendants allege that "Hejeij misapprehends the governing standard of review under the APA," and that "his

arguments . . . fail to undermine the reasonableness of OFAC's decision." *Id*. at 3. Defendants are wrong on all counts, as explained below.

First, Defendants argue that, "[u]nder the APA, . . . the Court does not evaluate whether an individual finding is 'arbitrary,'" but instead "'may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.'" Defs. Opp. at 3 (quoting *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007)). Yet, the APA itself requires that the courts "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Further, courts have adhered to this statutory instruction by "set[ting] aside agency findings unsupported by substantial evidence." *Throckmorton v. Nat'l Transp. Safety Bd.*, 963 F.2d 441, 444 (D.C. Cir. 1992). Under this test, the court "determine[s] only 'whether the agency . . . could fairly and reasonably find the facts as it did.'" *Id*. (quoting *Chritton v. NTSB*, 888 F.2d 854, 856 (D.C. Cir. 1989)). As Hejeij has previously explained, OFAC's findings in support of its denial decision fail to meet the substantial evidence test and thus render OFAC's ultimate decision arbitrary and capricious in violation of the APA. *See* Pl.'s Cross-Mot. for Summ. J. and Opp. to Defs. Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. ("Pl.'s Cross-Mot.") at 19-20.

In responding to Hejeij's claim that "OFAC provides no explanation as to how a person with knowledge of an organization's funding mechanisms and business connections would mean that person has access to that organization, much less the organization's senior elements," Defendants argue that Hejeij "demands too much under the APA." Defs. Opp. at 4.  Instead, OFAC claims that it "need only state the main reasons for its decision and indicate that it has considered the most important objections." *Id*. OFAC, however, is required to "articulate a satisfactory

explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Here, it marshalled its evidence that Hejeij "provided details on Hizballah funding mechanisms and business connections" in support of its finding that Hejeij "failed to provide sufficient evidence that he no longer provides support and services to Hizballah." AR 0001. OFAC "rationalized" the connection between the two by arguing that "*only* a person having intimate familiarity with and ongoing access to senior elements of Hizballah would possess this knowledge . . ." *Id.* That argument fails, however, as it evidences OFAC's "fail[ure] to consider an important aspect of the problem" or "consider[] the most important objections" to its finding. *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43; *Simpson v. Young*, 854 F.2d 1429, 1435 (D.C. Cir. 1988). Indeed, if "*only* a person having intimate familiarity with and ongoing access to senior elements of Hizballah would possess . . . details on Hizballah funding mechanisms and business connections," AR 0001, then OFAC's possession of such information would appear to implicate the agency in sanctionable conduct as well. If that conclusion is absurd, as Hejeij believes it to be, then it is OFAC's logic that is in error and that renders its finding as to Hejeij's ongoing provision of support and services to Hizballah irrational.

Defendants contest Hejeij's argument that OFAC failed to explain how mere access to Hizballah "could be considered to equate to the provision of support or services," stating only that "the APA requires no such explanation." Defs. Opp. at 6. Again, this defies the relevant standard of review under which this Court is to judge the lawfulness of OFAC's action—a standard that expressly requires OFAC to "articulate a satisfactory explanation for its action" and "to consider [] important aspect[s] of the problem." *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43.

Defendants next dispute Hejeij's characterization of OFAC's decision, arguing that OFAC "did not deny Hejeij's petition simply because he failed to remember a single meeting with a Hizballah official." Defs. Opp. at 8. OFAC, however, denied Hejeij's delisting petition on the grounds he "submitted false or misleading information to OFAC in connection with his delisting petition." *Id*. In particular, OFAC cited Hejeij's "self-serving and unpersuasive" failure to recollect an alleged meeting with Hizballah finance official in 2013. AR 0014. As Hejeij noted, however, he argued during his delisting matter that no such meeting had taken place and that—if OFAC had evidence otherwise—the agency should provide it to permit Hejeij to submit rebuttal evidence. AR 0264. Defendants' citation to Hejeij's submission—wherein Hejeij stated that he "does not recall any interactions with any person holding themselves out to be an official representative of Hizballah"—does not change the fact of Hejeij's denial. This is because Hejeij was merely seeking from OFAC information regarding who they considered to be "a Hizballah finance official" that Hejeij met with for Hejeij had not met with any person who held themselves out as acting for or on behalf of Hizballah. OFAC's failure to apprehend the plain meaning of Hejeij's representations to the agency renders its conclusion that Hejeij lacks credibility arbitrary and capricious, as the factual predicate for this conclusion—i.e., that Hejeij "disingenuously" failed to recollect the meeting—was erroneous.

Defendants, staving off Hejeij's attack on its finding with respect to Global Cleaners, argues that "the totality of OFAC's evidence is unknown to Hejeij" and that OFAC's assessments as to the documents provided by Hejeij are "reasonabl[e]." Defs. Opp. at 11. But, as Hejeij noted, OFAC invented out of whole cloth the suggestion that Hejeij used a proxy on Global Cleaners' corporate documents, having neither evidence in support of this claim nor purporting to have such evidence. This was, as Hejeij implied, a necessary invention as Hejeij's provision of corporate

documents relating to Global Cleaners' past and current ownership would have otherwise required OFAC to reassess the evidence that it had brought to bear when initially designating Hejeij. Thus, OFAC arbitrarily determined that Hejeij used proxies to hold shares in Global Cleaners on his behalf despite having neither evidence of his doing so nor purporting to have evidence showing he did so.

Defendants also concede—for the first time in this matter—that they had other documents referenced by Hejeij in their possession but that they failed to assess those documents in connection with Hejeij's reconsideration matter. *See* Defs. Opp. at 13 n.4; Decl. of Ripley Quinby, ¶¶ 6-9. OFAC's failure to consider the documents—and its faulting Hejeij for failing to bring them to OFAC's attention (despite the fact that Hejeij had previously made clear that he could not access those documents)—casts OFAC's failure to assess the documents in an altogether different light.

Finally, Defendants argue that—even if its findings or conclusions are arbitrary and capricious in violation of the APA—the error is "harmless," as other findings made by the agency "are sufficient to sustain OFAC's decision." Defs. Opp. a 14. But in cases "[where] there is substantial doubt that the agency would have adopted the same disposition" absent inclusion of those findings deemed unlawful, *North Carolina v. FERC*, 730 F.2d 790, 795-96 (D.C. Cir. 1984), "the proper course . . . is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

In this case, there exists "substantial doubt" that OFAC would have reached the same conclusion regarding Hejeij's activities in the absence of the agency's findings that: (1) "[Hejeij's] support and services [to Hizballah] had not ceased," (2) Hejeij "downplayed his . . . involvement with Global Cleaners," (3) "as of 2018," Hejeij continued to act "on behalf of Hizballah," and (4) Hejeij's denials regarding his support to Hizballah "undermines his overall credibility." AR 0002-

0003. These specific findings provide critical support to OFAC's dual conclusion that "[t]he basis for Hejeij's designation continues to exist subsequent to his June 2015 designation by OFAC, and Hejeij was not truthful with OFAC." AR 0015. If this Court were to find OFAC's findings that Hejeij continued to act on behalf of Hizballah and that he lacked credibility to be arbitrary and capricious, then this would undermine an entire conclusion on which OFAC rests its determination that Hejeij continues to meet E.O. 13224's designation criteria—i.e., that Hejeij "was not truthful with OFAC." AR 0015. Under these conditions, affirming OFAC's denial decision on the grounds of harmless error risks "usurp[ing] an administrative function," which is the agency's weighing of the evidence before it to determine whether Hejeij continues to meet the criteria for designation under E.O. 13224. *Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913, 929 n.12 (D.C. Cir. 2017) (quoting *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 19 (1952)).

For these reasons, Hejeij respectfully requests that this Court grant Count I in his favor and find that OFAC's denial decision, as well as the discrete findings and conclusions thereof, constitute arbitrary and capricious agency action under the APA and must be set aside.

## II.    DEFENDANTS HAVE FAILED TO ACT ON HEJEIJ'S REQUEST TO ENTER INTO A TERMS OF REMOVAL AGREEMENT

Defendants argue that Hejeij's claim that OFAC acted with unreasonable delay under 5 U.S.C. § 706(1) with respect to his request to enter into a terms of removal agreement is meritless, as, in Defendants' view, (1) OFAC has not delayed a decision on Hejeij's request; and (2) Hejeij, in any event, "has failed to identify a discrete, legally required action that OFAC has unreasonably delayed." Defs. Opp. at 15. On both counts, Defendants are wrong.

Defendants first contend that OFAC's decision with respect to Hejeij's delisting petition was also "a decision on Hejeij's request [to enter into a terms of removal agreement]," as "OFAC's denial decision expressly acknowledged Hejeij's [latter request]." Defs. Opp. at 15, 16. For this

reason, according to Defendants, "the Court can [] offer no meaningful relief," as a decision on the request has been rendered. Defs. Opp. at 16. But Defendants are in error.[1] The decision made was clearly a decision solely with respect to Hejeij's delisting request, and OFAC's mere notice in the record that Hejeij likewise requested entrance into a terms of removal agreement evidenced only OFAC's failure to accord this latter request the consideration that it deserved under the APA. Nowhere in the administrative record does OFAC deal substantively with Hejeij's request. This failure contradicts OFAC's obligations under 5 U.S.C. § 555(b) and (e) to "conclude a matter presented to it," including a request for a determination, and provide parties "[p]rompt notice" in case of "the denial in whole or in part of a written application, petition, or other request of an interested person…"

Defendants next argue that Hejeij "complain[s] about the substance of OFAC's decision, not OFAC's failure to reach a decision." Defs. Opp. at 16. Curiously, however, Defendants proceed to show why Hejeij's argument is procedural in nature, quoting Hejeij's contention that OFAC "'failed to demonstrate that a proceeding was established to consider the request' and 'failed to produce an administrative record for this Court regarding its consideration of that request.'" Defs. Opp. at 16. These errors are substantial for reasons Hejeij already explained. By failing to treat Hejeij's request to enter into a terms of removal agreement on its own terms, OFAC not only failed to independently consider the arguments that Hejeij brought to bear on the proposed

---

[1] Defendants also appear to contradict their position in separate litigation wherein they argue that the "administrative process" triggered by a request for reconsideration under 31 C.F.R. § 501.807 "is distinct from those SDGTs who seek a terms of removal agreement with OFAC." Defs. Statement of Points and Authorities in Support of Defs. Renewed Mot. for Summ. J. at 7, *Bazzi v. Gacki, et al.*, No. 19-cv-00484 (RM) (D.D.C. Jan. 31, 2020) (ECF No. 24). According to OFAC in the litigation, "requests for such agreements amount to a demand for settlement with the agency in which a SDGT asks that OFAC condition a rescission of designation on stipulations negotiated between the agency and the SDGT." *Id.*

agreement but also failed to outline the specific reasoning for its purported decision to deny that request. This failure effectively prevents Hejeij from challenging OFAC's purported denial of its request or from pursuing a new request before the agency, while also limiting this Court's consideration of any legal challenge posed to OFAC's alleged decision.

Defendants indicate that—to the extent that the Court believes OFAC erred in failing to respond to Hejeij's request to enter into a terms of removal agreement—such error was harmless. Defs. Opp. at 16. But Hejeij's claim is that OFAC has unreasonably delayed a decision on the request and that this delay harms Hejeij's interests insofar as OFAC's consideration of said request could lead to agreement between the parties under which Hejeij's designation would be rescinded. Hejeij thus requested that this Court order OFAC to issue a reasoned decision on his request to enter into a terms of removal agreement. Am. Compl., Requested Relief. Such an order would not invalidate OFAC's decision with respect to Hejeij's delisting request, as the two requests are separate and distinct but would require OFAC to issue decisions with respect to each of them. Moreover, absent such an order, the harm to Hejeij will compound over time, as he will remain identified on the SDN List so long as OFAC continues to delay, if not outright ignore, Hejeij's request and will be unable to challenge any unfavorable decision rendered by the agency.

Defendants argue that Hejeij "failed to establish that his § 706(1) claim pertains to a discrete, legally required agency action," because Hejeij "seeks only to begin a process of negotiating a potential settlement[] and OFAC is not required to engage in such a process." Defs. Opp. at 17. But, Defendants' argument "is entirely reliant on its erroneous characterization of Hejeij's request" and collapses upon fair inspection of the request at issue. Pl.'s Cross-Mot. at 29.

For purposes of the APA, Hejeij presented a new "matter" to OFAC when it submitted a document titled "Request to Enter into a Terms of Removal Agreement," which "would govern

the rescission of [Hejeij's] designation and the removal of his name from OFAC's [SDN List]." AR 0169. This document included terms for that agreement, including, for instance, Hejeij's offer to "sever[e], and refrain[] from ever again entering into, any dealings of any nature whatsoever with Adham Tabaja . . ., or any entities under [his] ownership or control" and to "not return to, or be employed in, any operational, executive, or managerial position in any financial institution for a five (5) year period." AR 0170-0171. Far from a mere proposal to begin negotiations with OFAC, Hejeij's request outlined the parameters for a terms of removal agreement, which OFAC— consistent with its obligations under the APA—was to either accept, reject, or counter-offer.

Hejeij's request sought OFAC's response one way or the other. Under the APA, as Hejeij has outlined, OFAC is obligated "to proceed to conclude a matter presented to it . . . within a reasonable time," and—in the case of a denial of such request—to provide "[p]rompt notice . . . of the denial," along with a statement of the grounds for its decision. 5 U.S.C. §§ 555(b), (e). Hejeij's request to enter into a terms of removal agreement—including his proposed terms under which such agreement could be made—was a "matter" for which OFAC was required to issue a decision "within a reasonable time." That decision would have constituted "agency action" for purposes of the APA. *See* 5 U.S.C. § 551(13).

Defendants selectively quote from Hejeij's request to argue that Hejeij "is asking this Court to compel not a discrete action but a nebulous 'process.'" Defs. Opp. at 18. But even if Hejeij's request both sought entry into a terms of removal agreement on the basis of the proposed conditions identified therein and provided notice that Hejeij was willing to negotiate those conditions should OFAC find the proposed terms insufficient, that would not change the nature of the request nor absolve OFAC of the requirement to issue a decision with respect to it. Defendants cannot escape their obligations under the APA simply because the request at issue stated Hejeij's willingness to

negotiate with OFAC. Finding otherwise would have the unintended consequence of hardening the positions of sanctioned parties when proposing such agreements, as the parties will be reluctant to signal their willingness to negotiate in future if OFAC can use that willingness to evade their obligation to decide on a terms of removal request.

Finally, Defendants analyze their ongoing delay in light of the factors set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), arguing that—measured against the *TRAC* factors—"there is no basis to find that any decision by OFAC has been unreasonably delayed." Defs. Opp. at 20. But, before refuting how Defendants measure their performance against these factors, Hejeij notes the anomaly of Defendants arguing that its delay is reasonable at the same time that they refuse to accept that they have any legal obligation to consider Hejeij's request and issue a decision at all. If, for instance, this Court were to find OFAC is obligated to issue a decision with respect to Hejeij's terms of removal agreement request, then OFAC's delay in issuing such decision is inherently "unreasonable." This is because OFAC has not even begun a proceeding under which it reviews the request; reasons why or why it should not accept the request; or issue a decision.

In any event, OFAC's failure also bears on consideration of the relevant *TRAC* factors. First, Defendants claim that a delay of 16 months is not unreasonable because "Congress has provided no indication of the speed with which it expects OFAC to resolve such requests" and "there is no other basis to discern a 'rule of reason' that the Court can apply." Defs. Opp. at 18. Taken to its logical conclusion, Defendants appear to imply that the Court is without power to order OFAC to act on any request, even if the Court is aware that OFAC is not acting on or otherwise processing the request by giving it due consideration. Defendants err on two grounds. Contrary to Defendants' argument, Congress has expressly held that OFAC must act on Hejeij's

request "within a reasonable time," 5 U.S.C. § 555(b), thereby setting clear "indication of the speed with which it expects OFAC to resolve such requests." Defs. Opp. at 18. If, after 16 months, OFAC fails to consider the request or assemble a record in support of a decision on the request, OFAC would not be acting on the request "within a reasonable time." Moreover, Defendants fail to find any case law in support of the proposition that this Court is unable to compel OFAC to act on the request. Defendants cite *Holy Land Found. v. Ashcroft* to argue that the Court "must defer to the Executive's discretion on the timing of [] foreign policy and national security decisions." *Holy Land Found.*, 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002). In doing so, however, Defendants omit the fact that the Court in that decision was referring to OFAC's timing on its decision *to impose sanctions in the first instance*, not its timing with respect to a petition for delisting or a request to enter into a terms of removal agreement. *Id*.

Second, Defendants claim that OFAC's consideration of Hejeij's request to enter into a terms of removal agreement is not a matter of "human health and welfare," arguing that finding otherwise would "eviscerate[] the distinction that the D.C. Circuit has drawn between economic and non-economic regulation." Defs. Opp. at 19. It is important to consider the scope of the sanctions imposed on Hejeij when considering whether these sanctions—and OFAC's failure to timely issue decisions on petitions for their removal—directly affect Hejeij's "human health and welfare." It is not just that Hejeij's property and interests in property are blocked and that U.S. persons are prohibited from engaging in dealings with him, which—in and of themselves—entail significant consequence. Instead, it is that all persons—U.S. and foreign—who support for, or services to or in support of, Hejeij are exposed to U.S. sanctions and risk designation themselves for providing support or services to him. This international boycott targeting Hejeij therefore not only denies him access to support and services, including those necessary to his health and welfare;

its very reason for being imposed is to impose consequences on anyone who may seek to do so. For Defendants to claim, then, that OFAC's failure to issue a decision with respect to Hejeij's request to enter into a terms of removal agreement does not impact "human health and welfare" ignores the clear import of its own sanctions on Hejeij—the consequences of which Defendants do not just well-understand but encourage. *See, e.g.*, Press Release, U.S. Government Sanctions Organizations and Individuals in Connection with an Iranian Defense Entity Linked to Iran's Previous Nuclear Weapons Efforts, U.S. Dep't of Treasury, Office of Foreign Assets Control (March 22, 2019) (stating that persons subject to U.S. sanctions face "professional, personal, and financial isolation" as a result).

Third, Defendants argue that "there is no basis for the Court to 'reorder[] [OFAC's] priorities,'" Defs. Opp. at 19 (quoting *In re Barr Labs, Inc.*, 903 F.2d 72, 76 (D.C. Cir. 1991)). Because, according to Defendants, "granting Hejeij's request would simply move him to the front of the line of SDGTs seeking similar relief, the delay is not of the type that the D.C. Circuit has recognized as pertinent to the *TRAC* analysis." Defs. Opp. at 20. Yet, Defendants contest that an agency proceeding is even required with respect to Hejeij's request to enter into a terms of removal agreement. Thus, a favorable decision for Hejeij would not reorder OFAC's priorities so much as it would ensure that OFAC adheres to its obligations under the APA to consider and issue a decision with respect to Hejeij's request in the first instance. In other words, what is significant is not that the Court would be "putting [Hejeij] at the head of the queue," but rather the Court would be placing Hejeij in the queue to begin with. *Id*. This is what distinguishes Hejeij's cases from those cited by Defendants. In these latter matters, parties sought expedited consideration of their varying applications before the relevant agencies, hoping to leapfrog others. In this case, Hejeij has waited 16 months for a decision with respect to his request to enter into a terms of removal

agreement, only to learn through this litigation that OFAC has no intention of treating that request as it is required to do.

III.   **DEFENDANTS FAILED TO PROVIDE HEJEIJ NOTICE OF THE REASONS EITHER FOR HIS DESIGNATION OR FOR OFAC'S DENIAL OF HIS DELISTING PETITION CONSISTENT WITH ITS OBLIGATIONS UNDER THE DUE PROCESS CLAUSE**

A.   **Hejeij Has Constitutional Due Process Rights With Respect to OFAC's Blocking of His Property**

Defendants allege that Hejeij "fails to allege the sort of 'substantial connections' with the United States necessary for Hejeij . . . to be entitled to the full protections of the U.S. Constitution." Defs. Opp. at 21. According to Defendants, Hejeij's complaint "is devoid of any factual allegations that could plausibly support a finding that Hejeij has property within the United States," which— in their view—is a necessary predicate to Hejeij's assertion of constitutional protections. *Id*. at 22. For these reasons, Defendants ask the Court to "dismiss [Hejeij's] Fifth Amendment claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1)." *Id*.

Hejeij's Amended Complaint, however, fairly alleged that—as a direct result of OFAC's designation action—"all property in which Hejeij has an interest that is subject to U.S. jurisdiction is blocked . . ." Am. Compl. ¶ 12. Similarly, the Amended Complaint further alleged that Hejeij's "property and interests in property within U.S. jurisdiction [were] blocked . . . [a]s a result of [his] designation." *Id*. at ¶ 15. Defendants contend that "[w]hile this allegation accurately captures the legal consequences of OFAC's decision, it does not adequately establish that Hejeij in fact has property subject to blocking." Defs. Opp. at 22. But all that is required at this stage of the proceedings is that Hejeij set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "a well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'"). Hejeij has met this burden by alleging that his designation resulted in the blocking of his property within U.S. jurisdiction.

Any blocked property would provide a clear basis under which to find that Hejeij is entitled to constitutional due process protections, at least with respect to that property. This Court has considered "the presence of property" as the "benchmark for satisfying the 'substantial connections' test, and whether a party has the ability to raise constitutional claims . . ." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 26 (D.D.C. 2012). By accepting Hejeij's factual allegations as true for purposes of the pending motions, Hejeij has satisfied this standard and can fairly assert a right to constitutional due process with respect to OFAC's blocking action.

Defendants claim that the relevant precedent "establishes only that aliens have received constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." Defs. Opp. at 22 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)). But, as the D.C. Circuit observed in *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, nothing in *Verdugo-Urquidez* "purports to establish whether aliens who have entered the territory of the United States and developed connections with this country but not substantial ones are entitled to constitutional protections." *Nat'l Council of Resistance*, 251 F.3d 192, 202 (D.C. Cir. 2001). In other words, while *Verdugo-Urquidez* clarifies those situations where foreign nationals merit constitutional protection, the case does not establish the bounds by which persons are disentitled to those protections. And, as evidenced by *Kadi*, the mere presence of property in the United States may well provide constitutional protection with respect to that property. *Kadi*, 42 F. Supp. 3d at 26.

Moreover, in the context of an OFAC designation, no court has before tested whether a foreign national whose property is subject to blocking merits constitutional protection with respect to that blocked property. *See, e.g.*, *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017) ("[T]he Court . . . does not reach the antecedent question of whether Plaintiffs are entitled to the protections of the Due Process Clause."); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 28 (D.D.C. 2012) (holding that "the issue of standing need not be conclusively resolved . . . if the jurisdictional facts 'are inextricably intertwined with the merits of the case.'"). Contrary to Defendants' representations, the question as to whether a foreign national may have constitutional due process protections with respect to the blocking of his property does not have an obvious answer.

> **B.      Due Process Requires OFAC Set Out the Full Scope of Reasons for Its Decision to Designate Hejeij or Deny Hejeij's Delisting Petition**

Defendants contend that the International Emergency Economic Powers Act ("IEEPA")— the statutory authority underlying E.O. 13224—"expressly permits the Executive Branch to rely on classified information" when designating parties pursuant to authorities issued thereunder. Defs. Opp. at 27. Further, Defendants assert that IEEPA "does not require that the government to summarize or allow third parties to access classified information in connection with an administrative or judicial proceeding." *Id*. In addition, according to Defendants, "the D.C. Circuit has never concluded that OFAC must provide a SDGT 'all of the reasons supporting [a] determination'" that a person meets the criteria for designation. *Id*. Instead, Defendants argue, the D.C. Circuit "has repeatedly held that there is no due process violation when a federal agency makes a decision based on classified information not disclosed to a foreign national." *Id*. Defendants arguments are unavailing.

Defendants are correct that IEEPA "does not require [OFAC] to summarize or allow third parties to access classified information in connection with an administrative or judicial

proceeding." Defs. Opp. at 27. However, Hejeij does not, and has not, argued otherwise. Instead, Hejeij argues that the Due Process Clause requires OFAC to provide the reasons for its decision to designate him, including the findings and conclusions underlying the agency's action. This view is supported by the relevant case law in the D.C. Circuit, including, most recently, the Court of Appeals' decision in *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018). In that case, as Hejeij previously detailed, the Court stated that, "in [the] narrow category of cases" where courts have "countenanced" disclosure of only the unclassified administrative record, courts have required the government to "ensure a designee's notice and process via alternative means." *Fares*, 901 F.3d at 319, 324. These alternative means include "strictly necessary adaptations of ordinary administrative and judicial process," and may include the provision of "sufficiently specific 'unclassified summaries . . . [that] provide [plaintiffs] with the 'who,' 'what,' 'when' and 'where' of the allegations.'" *Id*. at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)). Defendants' claim, therefore, that OFAC is not required to provide the reasons for its decision to designate Hejeij is in error, as *Fares* makes clear.

Defendants contend that Hejeij's "reliance on *Fares v. Smith* . . . is misplaced," arguing that *Fares* "affirmed the ability of the Executive Branch to rely on classified and law enforcement privileged information that is not disclosed to a designated individual." Defs. Opp. at 29. Defendants, however, conflate two distinct issues. As noted above, while OFAC may rely on classified and law enforcement privileged information when designating an individual, *Fares* nevertheless held that OFAC is required to ensure the designated person has adequate notice of the reasons for their designation through alternative means. This includes, *contra* Defendants' position, all of the reasons for a designation, as "disclosure of some but not all of the allegations

17

against [a designee] impairs their ability to fully clear their names for delisting . . ."[2] *Fares*, 901 F.3d at 322 (citing *Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012) (finding OFAC's notice to be inconsistent with due process where OFAC disclosed "only one of three reasons for its investigation and designation.")). Accordingly, while OFAC may not be required to disclose the classified and privileged portions of the record, OFAC's failure to disclose the reasons for designating him—whether through declassification, unclassified summaries, or counsel's access to the record—implicates due process, as evident by *Fares*.

For these same reasons, Defendants' claim that the provision of unclassified summaries are not required by the Due Process Clause is beside the point. *See* Defs. Opp. at 30. While *Fares* did not mandate provision of unclassified summaries, Defendants ignore the fact that *Fares* found that—in those circumstances where OFAC could not disclose all the reasons for a designation via declassification of the administrative record—OFAC must "ensure a designee's notice and process via alternative means." *Fares*, 901 F.3d at 319, 324. This could include by "strictly necessary adaptations of ordinary administrative and judicial process," which may include provision of unclassified summaries. *Id*. Accordingly, while *Fares* did not dictate the means by which OFAC must provide notice, it nevertheless mandated OFAC take adequate steps to ensure constitutionally adequate notice. Defendants have no response to the clear import of the *Fares* decision for reasons that are obvious: the notice provided to Hejeij does not accord with OFAC's due process obligations.

---

[2] Defendants argue that the Court of Appeals—in rendering this line—merely observed "what a designated individual may argue" but did not "establish a bright-line rule that OFAC must disclose each and every reason for its designation decisions." Defs. Opp. at 30. Yet, Defendants ignore that the Court issued this line in admonishment of the *Fares* plaintiffs for failing to request relief that the Court was within its power to grant. Indeed, the Court of Appeals cited case law—including within the D.C. Circuit—in support of the proposition that OFAC's failure to disclose "all of the allegations against [a designee]" constituted a due process violation. *Fares*, 901 F.3d 322 (citing *Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015)).

### C.      Defendants Failed to Provide Notice of the Reasons for Hejeij's Designation

Defendants contend that OFAC's unclassified administrative record and its provision of unclassified summaries "more than adequately apprise [Hejeij] of the basis for OFAC's decision to designate him as a SDGT." Defs. Opp. at 32. Fair inspection of the relevant documents, however, provides clear indication that the notice provided Hejeij of the reasons for his designation are inconsistent with OFAC's obligations under the Due Process Clause.

Defendants argue that—while the evidentiary memorandum may be heavily redacted—it is "redacted only insofar as it contains classified information, which . . . OFAC need not disclose." *Id*. Moreover, according to Defendants, OFAC's press release and its provision of unclassified summaries adequately "explain OFAC's determination that Hejeij" meets the designation criteria under E.O. 13224. *Id*. The unclassified summaries, according to Defendants, "demonstrate that OFAC provided Hejeij with the '"who," "what," "when," and "where" of the allegations,'" fully consistent with its notice obligations under the Due Process Clause.

As Hejeij has already noted, OFAC "redacted the entire section of the record describing the basis for the agency's determination that [he] met the criteria for designation under E.O. 13224." Pl.'s Cross-Mot. at 33-34. This includes "[a]ll relevant agency findings and conclusions in support of OFAC's determination that Hejeij 'provides financial, material, or technological support for, or financial or other services to or in support of, Hizballah, a person designated pursuant to E.O. 13224.'" *Id*. In addition, despite its provision of unclassified summaries, OFAC failed to clarify "whether the allegations contained in [those] summaries represent findings or conclusions in support of the agency's determination," as well as "how the agency reasoned from the evidence in its possession to reach [its] findings or conclusions." *Id*. OFAC has likewise remained silent as to whether the unclassified summaries constitute the full sum of reasons for

OFAC's determination that Hejeij meets the criteria for designation under E.O. 13224. This means that even if Hejeij were to rebut each of OFAC's allegations contained in the unclassified summaries, he would be without confidence that those rebuttals will prove sufficient to negate the basis for his designation. *Id*.

These failures implicate Hejeij's due process rights, as designated parties must have a meaningful opportunity to present rebuttal evidence or otherwise counter those allegations offered in support of a determination that the person meets the criteria for designation. *See, e.g.*, *Nat'l Council of Resistance*, 251 F.3d at 209. This necessarily requires disclosure of all the reasons for a designation, as "disclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting." *Fares*, 901 F.3d at 322. Even where OFAC attempts to remedy its failure to disclose the substantive portions of the administrative record through provision of unclassified summaries, the agency must ensure that those summaries are sufficiently detailed to provide designated parties "with the 'who,' 'what,' 'when,' and 'where' of the allegations." *Id*. at 324.

Defendants make no attempt to show how the allegations in the unclassified summaries suffice for purposes of the Due Process Clause. Instead, Defendants merely argue that "Hejeij's suggestion that he is unable to grasp the basis for his designation strains credulity." Defs. Opp. at 34. For instance, Defendants cite OFAC's allegation that "Hejeij has maintained ties with senior elements in [Hizballah], [Hizballah] elements in Iraq, among others," and "has provided support to [Hizballah] for a number of years," including by "investing in civilian infrastructure that [Hizballah] uses in Lebanon and Iraq." *Id*.; AR 0232. Defendants' recourse to this allegation as evidence of the sufficiency of OFAC's disclosures, however, underscores only how OFAC fails to apprehend the scope of its notice obligations under the Due Process Clause, as these allegations

are so general that they effectively deny Hejeij a meaningful opportunity to provide rebuttal evidence. How, for instance, is Hejeij supposed to provide contrary evidence to the agency to rebut its allegations if Hejeij lacks any knowledge as to the "senior elements" in Hizballah or the "[Hizballah] elements" in Iraq to whom he is alleged to have maintained ties. Similarly, so long as Hejeij is unaware of what "civilian infrastructure" in Lebanon OFAC believes is used by Hizballah, Hejeij cannot rebut the allegation by providing information showing that Hizballah does not make use of such infrastructure or by that Hejeij did not invest in such infrastructure. The lack of specific identifying information, as required by *Fares*, undermines Hejeij's position to make meaningful use of OFAC's delisting procedures and challenge the basis for his continued designation.

### D.    Defendants Failed to Provide Notice of the Reasons for Its Denial of Hejeij's Delisting Petition

Defendants argue that the unredacted portions of the evidentiary memorandum outlining the reasons for OFAC's denial decision "are at least as informative as the notice deemed sufficient by the D.C. Circuit in *Jifry*." Defs. Opp. at 36. Further, according to Defendants, OFAC's letter noticing Hejeij of its decision "sets forth six unclassified grounds for OFAC's decision, including information that summarizes evidence redacted in the agency's memorandum." *Id*. at 37. Neither of these documents, however, provide notice sufficient to satisfy OFAC's due process obligations.

Defendants argue that OFAC's statement that "[d]etailed information provided by Hejeij during a FBI interview demonstrates that he made false statements to OFAC and maintains an ongoing relationship with Hizballah" "provides useful information for Hejeij to understand the basis for OFAC's denial decision." *Id*. But that is, at best, a conclusion generated on the basis of findings that remain undisclosed to Hejeij and one that Hejeij has no opportunity to rebut in a meaningful way. Indeed, it is useful to consider what information Hejeij would need to

meaningfully rebut this conclusion. That information would necessarily include, for instance, what statements made by Hejeij OFAC regards as "false," as Hejeij would need to know these statements in order to substantiate them. Moreover, Hejeij would need to know OFAC's basis for finding these statements false, so that Hejeij could provide information and documents that counter that basis. Finally, Hejeij would need clarification as to OFAC's basis for assessing that he maintains an ongoing relationship with Hizballah. While OFAC's record discloses that Hejeij's "detailed knowledge of 'Hizballah funding mechanisms and business connections,' as well as 'multiple Hizballah-affiliated bankers and money launderers,'" served to inform OFAC's conclusion, Hejeij can only offer rebuttal evidence if he understands the funding mechanisms and business connections on which OFAC relies. *Id.*  Anything less than these disclosures effectively prevent Hejeij from meaningfully rebutting OFAC's conclusion and the findings from which it was generated.

The same is true for OFAC's other conclusions disclosed in the evidentiary memorandum, such as its conclusion that "Hejeij provided false or misleading information to the agency." *Id.* at 38. Here, again, Hejeij would necessarily require notice as to the basis for OFAC's determination that the information provided to it was "false" or "misleading," as, absent such notice, Hejeij is in no position to provide rebuttal evidence. This is a problem of significant import because OFAC's conclusion may persist in error so long as Hejeij is unable to rebut evidence that has been rendered obscure to him. For all those reasons discussed above, OFAC's failure to accord Hejeij with notice of the agency's conclusions and findings in support of its denial of Hejeij's delisting petition constitutes a constitutional due process violation.

IV. **DEFENDANTS FAILED TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE OF THE REASONS FOR HIS DESIGNATION OR OFAC'S DENIAL DECISION CONSISTENT WITH THE REQUIREMENTS OF THE APA**

Defendants attack Hejeij's notice-based claim under the APA, arguing that Hejeij "is not entitled to access classified and law enforcement privileged materials simply because he has alleged a cause of action under 5 U.S.C. § 706." Defs. Opp. at 39. Hejeij, however, has not claimed that he is entitled to access classified and law enforcement privileged materials. Instead, Hejeij argues that the APA requires OFAC "to set forth its reasons for a decision," Pl.'s Cross-Mot. at 43, and that OFAC has failed to do so, as "[m]ost, if not all, substantive portions of [the] administrative records underlying OFAC's actions were redacted in the records disclosed to Hejeij." *Id*. at 44. This failure undermines Hejeij's ability to utilize OFAC's delisting procedures, as—"[a]bsent a clear idea of the reasons for his designation under E.O. 13224 and OFAC's denial of his delisting petition"—Hejeij lacks any "reasonable opportunity to meet his burden under [those] procedures." *Id*.

Defendants muster a single bare response to Hejeij's substantive claims in this regard, contending that Hejeij's assertion that he "'is in no position to meaningfully the reconsideration procedures provided to him as a matter of law' . . . is belied by his prior fulsome submissions to OFAC." Defs. Opp. at 40. It is unclear on what basis Defendants characterize Hejeij's prior submissions to OFAC as "fulsome," as Hejeij noted throughout his reconsideration matter that he lacked a full understanding as to the reasons for his designation and that this inhibited his ability to rebut the basis for his designation. *See, e.g.*, AR 0161-0165, 0262, 0293-0295, 0370-0373.

Defendants make no attempt to refute the operative law—i.e., that an agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious agency action for purposes of the APA. *See Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (citing *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). Nor do Defendants dispute the operative considerations underlying that law—i.e., that by requiring agencies to identify the reasons for their

decisions, deprived parties are afforded the opportunity to address any agency errors and courts are able to fairly review the matter if the agency persists in its wrongful decision. *Id*. Instead, Defendants solely claim that by disclosing the unclassified, non-privileged material in the records underlying the designation and denial decisions, Hejeij has received all that he is entitled to. Defendants mistake their burden, however, as it is OFAC's obligation under the APA to ensure that Hejeij understands the reasons for its action even if that means utilizing alternative means such as unclassified summaries; an unclassified statement of reasons; or permitting Hejeij's cleared counsel to access the full record. OFAC's failure to provide Hejeij a full understanding of its actions against him constitutes arbitrary and capricious agency action for this reason and violates the agency's obligations under the APA.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Hejeij and enter judgment in favor of Hejeij on all counts.


January 31, 2019                                    Respectfully submitted,

                                                    /s/ Erich C. Ferrari
                                                    Erich C. Ferrari, Esq.
                                                    FERRARI & ASSOCIATES, P.C.
                                                    1455 Pennsylvania Avenue, NW
                                                    Suite 400
                                                    Washington, D.C. 20004
                                                    Telephone: (202) 280-6370
                                                    Fax: (877) 448-4885
                                                    Email: ferrari@falawpc.com
                                                    D.C. Bar No. 978253


                                                    *Counsel for Plaintiff*
                                                    *Kassem Hejeij*