**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KASSEM HEJEIJ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-01921 (TFH) |
| | ) |
| ANDREA M. GACKI, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## <u>**TABLE OF CONTENTS**</u>

INTRODUCTION ..................................................................................................................... 1

DISCUSSION ......................................................................................................................... 2

I.      OFAC's Decision Was Not Arbitrary Or Capricious ........................................................ 2

      A.      Hejeij's Familiarity With And Access To Senior Elements Of Hizballah ............. 4

      B.      Hejeij's Knowing Involvement With Hizballah ...................................................... 7

      C.      Hejeij's Commercial Ventures In Iraq ................................................................. 11

      D.      Audits Of MEAB ................................................................................................. 12

      E.      Harmless Error .................................................................................................... 14

II.     OFAC Has Not Unreasonably Delayed Any Action ...................................................... 15

III.    OFAC's Decision Comports With The Fifth Amendment ............................................... 20

      A.      Hejeij Cannot Assert Constitutional Rights ......................................................... 21

      B.      Hejeij's Due Process Claims Fail On The Merits ................................................. 26

            1.      Due Process Does Not Require OFAC To Produce Unclassified Summaries Or To Grant Cleared Counsel Access To The Classified Record ...................................................................................................... 27

            2.      OFAC Has Provided Hejeij A Basis From Which To Understand His Designation  ......................................................................................... 32

            3.      OFAC Has Provided Hejeij A Basis From Which To Understand The Denial Of His Delisting Petition ........................................................... 35

            4.      Hejeij Has Had A Meaningful Opportunity To Contest The Propriety And Adequacy Of The Evidence Relied On By OFAC ....................... 38

IV.    OFAC Has Provided Hejeij Sufficient Notice Under The APA ...................................... 39

CONCLUSION ...................................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**

*32 Cty. Sovereignty Comm. v. Dep't of State*,
   292 F.3d 797 (D.C. Cir. 2002) ............................................................ 24

*Airmotive Eng'g Corp. v. FAA*,
   882 F.3d 1157 (D.C. Cir. 2018) ............................................................ 3

*Al Haramain Islamic Foundation, Inc. v. U.S. Department of Treasury*,
   686 F.3d 965 (9th Cir. 2012) ............................................................ 31, 35

*Am. Hosp. Ass'n v. Burwell*,
   812 F.3d 183 (D.C. Cir. 2016) ............................................................ 19

*Bean Dredging, LLC v. United States*,
   773 F. Supp. 2d 63 (D.D.C. 2011) ............................................................ 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................ 22

*Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides v. Johnson*,
   407 F. Supp. 2d 38 (D.D.C. 2005) ............................................................ 20

*Commercial Drapery Contractors v. United States*,
   133 F.3d 1 (D.C. Cir. 1998) ............................................................ 25

*Ctr. for Sci. in the Pub. Interest v. U.S. FDA*,
   74 F. Supp. 3d 295 (D.D.C. 2014) ............................................................ 19

*D.C. Transit Sys., Inc. v. Wash. Metro. Area Transit Comm'n*,
   466 F.2d 394 (D.C. Cir. 1972) ............................................................ 9

*Ellsberg v. Mitchell*,
   709 F.2d 51 (D.C. Cir. 1983) ............................................................ 29

*Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*,
   857 F.3d 913 (D.C. Cir. 2017) ............................................................ 3

*Fares v. Smith*,
   249 F. Supp. 3d 115 (D.D.C. 2017)
   *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) ............................................................ *passim*

*FBME Bank Ltd. v. Lew*,
   125 F. Supp. 3d 109 (D.D.C. 2015) ............................................................ 28, 29

*Fla. Gas Transmission Co. v. FERC*,
   604 F.3d 636 (D.C. Cir. 2010) ............................................................ 7

*Friends of The Earth v. U.S. Dep't of Interior,*
    236 F.R.D. 39 (D.D.C. 2006) ............................................................................ 25

*Frizelle v. Slater,*
    111 F.3d 172 (D.C. Cir. 1997) ..................................................................... 4, 40

*Hamdan v. Rumsfeld,*
    548 U.S. 557 (2006) ............................................................................................ 5

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) .................................................................................... *passim*

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
    219 F. Supp. 2d 57 (D.D.C. 2002)
    *aff'd,* 333 F.3d 156 (D.C. Cir. 2003) ............................................................ *passim*

*Humane Soc'y of the U.S. v. Perdue,*
    935 F.3d 598 (D.C. Cir. 2019) .......................................................................... 23

*In re Barr Labs., Inc.,*
    930 F.2d 72 (D.C. Cir. 1991) ...................................................................... 19, 20

*In re People's Mojahedin Org. of Iran,*
    680 F.3d 832 (D.C. Cir. 2012) .......................................................................... 19

*Islamic Am. Relief Agency v. Gonzales,*
    477 F.3d 728 (D.C. Cir. 2007) .................................................................. 2, 6, 35

*Jifry v. FAA,*
    370 F.3d 1174 (D.C. Cir. 2004) ..................................................... 28, 31, 36, 38

*Johnson v. Eisentrager,*
    339 U.S. 763 (1950) ......................................................................................... 21

*Joumaa v. Mnuchin,*
    Civ. A. No. 17-2780 (TJK), 2019 WL 1559453 (D.D.C. Apr. 10, 2019) ......... *passim*

*Kadi v. Geithner,*
    42 F. Supp. 3d 1 (D.D.C. 2012) .............................................. 10, 22, 24, 39

*Kiareldeen v. Ashcroft,*
    273 F.3d 542 (3d Cir. 2001) ............................................................................ 29

*Liberty Fund, Inc. v. Chao,*
    394 F. Supp. 2d 105 (D.D.C. 2005) ................................................................ 19

*Mashpee Wampanoag Tribal Council, Inc. v. Norton,*
    336 F.3d 1094 (D.C. Cir. 2003) ...................................................................... 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................ 9, 40

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001) ......................................................................... *passim*

*Nat'l Shooting Sports Found., Inc. v. Jones*,
  716 F.3d 200 (D.C. Cir. 2013) ......................................................................... 40

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ........................................................................................... 17

*People's Mojahedin Org. of Iran v. Ashcroft*,
  327 F.3d 1238 (D.C. Cir. 2003) ....................................................................... 28

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999) ........................................................................... 23

*Safe Extensions, Inc. v. FAA*,
  509 F.3d 593 (D.C. Cir. 2007) ......................................................................... 3

*Sasol N. Am. Inc. v. Nat'l Labor Relations Bd.*,
  275 F.3d 1106 (D.C. Cir. 2002) ....................................................................... 9

*Siegel v. Secs. & Exch. Comm'n*,
  592 F.3d 147 (D.C. Cir. 2010) ......................................................................... 10

*Simpson v. Young*,
  854 F.2d 1429 (D.C. Cir. 1988) ....................................................................... 4

*Skalka v. Kelly*,
  246 F. Supp. 3d 147 (D.D.C. 2017)
  *appeal dismissed*, 2017 WL 4220432 (D.C. Cir. July 27, 2017) ...................... 20

*Stansell v. Revolutionary Armed Forces of Colombia*,
  771 F.3d 713 (11th Cir. 2014) ......................................................................... 5

*Sulemane v. Mnuchin*,
  Civ. A. No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019) .................... 14, 36, 39, 40

*Telecommunications Research & Action Center v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ........................................................................... 18, 19

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ..................................................................................... 6

*United States v. Atilla*,
  15 Cr. 867 (RMB) (S.D.N.Y. Feb. 7, 2018) ...................................................... 25

*United States v. Damrah*,
  412 F.3d 618 (6th Cir. 2005) ................................................................................. 5

*United States v. Tajideen*,
  319 F. Supp. 3d 445 (D.D.C. 2018)
  *appeal dismissed*, No. 18-3059, 2018 WL 7080502 (D.C. Cir. Dec. 31, 2018)................ 26, 27

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990)......................................................................................... 21, 22

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) ............................................................................ 22

*Zadvydas v. Davis*,
  533 U.S. 678 (2001)........................................................................................... 24

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*,
  750 F. Supp. 2d 150 (D.D.C. 2010) ....................................................................... 2

*Zevallos v. Obama*,
  10 F. Supp. 3d 111 (D.D.C. 2014)
  *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) .............................................................. *passim*

## Statutes

5 U.S.C. § 706.......................................................................................... 14, 16, 39

5 U.S.C. § 706(1) ............................................................................................ 15

5 U.S.C. § 706(2)(A).......................................................................................... 16

50 U.S.C. § 1702(c) ......................................................................................... 27

U.S.C. § 1702(a)(1)(B) ..................................................................................... 22

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................ 25

## Regulations

31 C.F.R. § 501.807 .......................................................................................... 13

## INTRODUCTION

Plaintiff Kassem Hejeij asks this Court to overturn the well-reasoned decision of the Office of Foreign Assets Control ("OFAC"), made in the context of national security and foreign affairs, that Hejeij is a supporter of terrorism whose assets should remain blocked pursuant to the International Emergency Economic Powers Act ("IEEPA") and Executive Order No. 13224 ("EO 13224"). As explained in Defendants' motion to dismiss or, in the alternative, for summary judgment, Hejeij cannot justify such judicial intervention based on either his substance- or process-related arguments. *See* Mem. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 17-36, ECF No. 8-1 ("Defs.' Mem."). Hejeij's response, though long on hyperbole, confirms as much. *See* Mem. of P.&A. in Supp. of Pl.'s Cross-Mot. for Summ. J. & in Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J., ECF No. 10; Pl.'s Cross-Mot. for Summ. J. and Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J., ECF No. 9 (collectively, "Pl.'s Opp.").

First, Hejeij claims that OFAC's decision is arbitrary and capricious, primarily because the evidence in the record can purportedly be viewed in a light more favorable to him. *Id.* at 19-25. This argument, however, misapprehends the applicable standard of review under the Administrative Procedure Act ("APA"). OFAC reasonably determined not only that Hejeij has continued to provide support or services to Hizballah, but also that he submitted false or misleading information to OFAC in connection with his delisting petition. Accordingly, in light of the record as a whole, including the credibility determinations made by OFAC that are entitled to substantial deference, Hejeij is unable to cast doubt on the reasonableness of OFAC's determination that he should remain on the list of Specially Designated Nationals and Blocked Persons ("SDN List").

Second, Hejeij contends that the Court should compel OFAC to issue a decision on his request to begin discussing a Terms of Removal Agreement. Pl.'s Opp. at 25-30. But OFAC has effectively denied Hejeij's request that it agree to a settlement agreement, so the claim is moot; his wish that the agency had decided otherwise is irrelevant. Moreover, Hejeij has failed to identify a discrete, legally required agency action subject to compulsion under the APA.

Third, although Hejeij continues to press his claims under the Fifth Amendment, Pl.'s Opp. at 31-43, he fails to demonstrate that he has had any contact with the United States, let alone the substantial contact required for a foreign national to assert constitutional rights. Moreover, assuming *arguendo* that Hejeij had demonstrated such contact, his argument fails on the merits; OFAC adequately apprised Hejeij of the basis for its decisions, and Hejeij's insistence that he is entitled to access classified and law enforcement privileged materials finds no basis in law.

Defendants' motion to dismiss or for summary judgment should therefore be granted, and Hejeij's cross-motion should be denied.

## DISCUSSION

## I.   OFAC's Decision Was Not Arbitrary Or Capricious

As detailed in Defendants' motion, OFAC reasonably concluded that Hejeij should remain on the SDN List based on the evidence before the agency. Defs.' Mem. at 17-23. This conclusion is entitled to substantial deference. *E.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential." (citations omitted)); *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) ("[C]ourts owe a substantial measure of 'deference to the political branches in matters of foreign policy,' including cases involving blocking orders" (citation omitted)).

In response, Hejeij challenges OFAC's treatment of specific information in deciding to deny his delisting petition.  Pl.'s Opp. at 19-25.  But Hejeij misapprehends the governing standard of review under the APA.  Further, his arguments—which essentially ask the Court to view the evidence in a light more favorable to Hejeij—fail to undermine the reasonableness of OFAC's decision.

First, Hejeij confuses the applicable standard of review that this Court must apply to OFAC's decision.  According to Hejeij, "OFAC's findings and evidentiary support, as well as its reasoning from the evidence before it to reach its findings and conclusions, are arbitrary and capricious in violation of the APA."  *Id.* at 20.  Under the APA, however, the Court does not evaluate whether an individual finding is "arbitrary."  Rather, "[u]nder [the arbitrary and capricious] standard, [courts] 'may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.'"  *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007) (citation omitted).  Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion," *Airmotive Eng'g Corp. v. FAA*, 882 F.3d 1157, 1159 (D.C. Cir. 2018) (citation omitted), which "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence," *Epsilon Elecs., Inc. v. U.S. Dep't of the Treasury*, 857 F.3d 913, 925 (D.C. Cir. 2017) (citation omitted).  A court must ultimately uphold an agency's decision if "the evidence [the agency] relied upon *as a whole* 'adequately supports its ultimate decision.'"  *Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 n.9 (D.D.C. 2014) (emphasis added) (citation omitted), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015); *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 75 (D.D.C. 2002) ("[T]he purpose of the Court's inquiry is not to determine whether each and every piece of evidence in the record independently supports OFAC's determination.  . . .  Rather, its function is

3

to conduct a careful review of the entire administrative record and assess whether it demonstrates a reasonable basis for the agency's action."), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003).

With this standard in mind, Hejeij cannot persuasively argue that OFAC's denial decision is inconsistent with the APA's requirements.  Moreover, as explained below, his challenges to OFAC's specific determinations are without merit.

### A.      Hejeij's Familiarity With And Access To Senior Elements Of Hizballah

But Hejeij demands too much under the APA, pursuant to which an agency "need only state the main reasons for its decision and indicate that it has considered the most important objections."  *Simpson v. Young*, 854 F.2d 1429, 1435 (D.C. Cir. 1988); *see also Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) ("[A]n agency's decision [need not] be a model of analytic precision to survive a challenge[,]" and "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned" (citation omitted)).  For this reason, courts considering sanctions-related challenges

---

[1] Defendants respectfully refer the Court to the classified portions of the record for additional information regarding OFAC's decision to deny Hejeij's delisting petition.

have upheld OFAC's decisions without the type of analysis contemplated by Hejeij.  *E.g.*, *Joumaa v. Mnuchin*, Civ. A. No. 17-2780 (TJK), 2019 WL 1559453, at *8 (D.D.C. Apr. 10, 2019) (holding record demonstrated a sufficient nexus between the plaintiff's money laundering and narcotics trafficking, based in part on OFAC's finding that the plaintiff "is associated with a designated [] individual in the pick up of bulk drug proceeds in Europe to launder to Colombia"), *appeal filed*, 2019 WL 1559453 (D.C. Cir. June 6, 2019).  Thus, having set out and explained its findings and conclusions, based on its considered expertise, OFAC has satisfied the APA's requirements.

Moreover, it is self-evident that a foreign terrorist organization such as Hizballah is unlikely to widely publicize details of its nefarious operations.  *E.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 732 (11th Cir. 2014) ("[T]errorist organizations . . . operate in the shadows out of necessity."); *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) (noting "the secretive nature of terrorists").  *Cf. Hamdan v. Rumsfeld*, 548 U.S. 557, 705 (2006) (Thomas, J., dissenting) ("We are not engaged in a traditional battle with a nation-state, but with a worldwide, hydra-headed enemy, who lurks in the shadows[.]").  ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ And as the Supreme Court has explained, "[i]n this context [of national security and foreign policy], conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what [courts] may reasonably insist on from the Government."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010); *see also id.* at 35 ("The Government, when seeking to prevent imminent harms in the context of international affairs and national security, is not required to conclusively link all the pieces in the puzzle before we grant weight to

its empirical conclusions."). ████████████████████████████████████████

████████████████████████████████████████ *See also Trump v. Hawaii*, 138 S. Ct.

2392, 2422 (2018) ("[T]he Executive's evaluation of the underlying facts is entitled to

appropriate weight, particularly in the context of litigation involving 'sensitive and weighty

interests of national security and foreign affairs.'" (quoting *Humanitarian Law Project*, 561 U.S.

at 33-34)).

Nor should the Court credit Hejeij's argument that OFAC has not "attempt[ed] to explain

how such access could be considered to equate to the provision of support or services to the

organization." Pl.'s Opp. at 21; *see also id.* at 21-22 (arguing that "[a]ccess—in and of itself—

does not signify that a person is providing persons to whom they have access with support and

services made sanctionable under E.O. 13224").  Again, the APA requires no such explanation,

particularly in the context of a case implicating the Executive Branch's assessment of

information related to national security.  *See Islamic Am. Relief Agency*, 477 F.3d at 734 (holding

substantial evidence supported OFAC's designation decision, where "the unclassified record

evidence is not overwhelming" but "contain[ed] various types of evidence from several different

sources, and covering an extended period of time").  ████████████████████████

████████████████████████ but also "in light of other information available

to OFAC regarding [his] prior support for and services to Hizballah[.]"  A.R. at 0002.[2]  OFAC

may rationally (and appropriately) consider such evidence, including classified information, in

evaluating Hejeij's current involvement with Hizballah.  *Cf. Joumaa*, 2019 WL 1559453, at *8

---

[2] Accordingly, there is no merit to Hejeij's argument that ████████████████████████
████████████████████████████████████████████
████████████████████████████████ and thus could be considered to be
providing support and services to that organization."  Pl.'s Opp. at 21.  Were such circumstances
relevant to Hejeij's delisting petition, OFAC would consider such information.

(explaining that OFAC could permissibly consider historical conduct "to help it assess, and

provide context for, evidence of [the plaintiff's] more recent conduct—both its own evidence and

any purportedly exculpatory evidence provided by [the plaintiff]").

███████████████████████████████████

███████████████████████████████████

Notably, Hejeij does not point to any aspect of his prior submissions to OFAC that would

support an alternative explanation.  *See id.*  In any event, "[w]hen reviewing for substantial

evidence, [courts] do not ask whether record evidence could support the petitioner's view of the

issue, but whether it supports the [agency's] ultimate decision."  *Fla. Gas Transmission Co. v.

FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010).  Thus whether "there are other possible alternative

explanations," Pl.'s Opp. at 21, is irrelevant.

### B.      Hejeij's Knowing Involvement With Hizballah

As OFAC explained in its letter to Hejeij, the agency "has evidence in its possession that

undermines [his] claim that he has never knowingly had any sort of relationship with Hizballah."

A.R. at 0002.  OFAC specified that Hejeij "met with a Hizballah finance official in 2013 and

agreed to make changes to bank accounts held by individuals, entities, and charitable institutions

affiliated with Hizballah in order to hide the ties between money laundering activities and

Hizballah."  *Id.*  Although Hejeij denied any such involvement with Hizballah, OFAC found his

denials to be "disingenuous" and "undermin[ing] his overall credibility."  *Id.*[3]

Hejeij mounts a multi-faceted attack on OFAC's analysis.  Pl.'s Opp. at 22-23.  He

initially claims that OFAC impermissibly based its denial decision on the fact that Hejeij "failed

---

[3] As noted in Defendants' motion, Defs.' Mem. at 19 n.9, EO 13224 does not require OFAC to
find that an individual "knowingly" provided support and services to a designated entity.  *See* EO
13224, § 1(d).  Hejeij does not argue otherwise.  *See* Pl.'s Opp. at 19-25.

to recollect a meeting with a Hizballah official in mid-2013 and thus lacked credibility." Pl.'s Opp. at 22. This misconstrues OFAC's decision. OFAC did not deny Hejeij's petition simply because he failed to remember a single meeting with a Hizballah official. Rather, the agency based its decision on its conclusions that Hejeij continues to provide support and services to Hizballah, and that he submitted false or misleading information to OFAC in connection with his delisting petition. A.R. at 0001-03, 0007, 0015. In reaching these conclusions, OFAC appropriately considered the evidence submitted by Hejeij, as well as independent reporting, and reasonably found his denials "self-serving and unpersuasive given [his] stated ability to recall the details of his travel to Iraq in 2013." *Id.* at 0014.

Second, Hejeij incorrectly suggests that OFAC mischaracterized his response to the agency regarding the 2013 meeting. Pl.'s Opp. at 22-23 ("OFAC's finding—i.e., that Hejeij failed to recollect the meeting and did not deny its occurrence—was erroneous."). OFAC expressly acknowledged Hejeij's claim that he "is unaware of the meeting OFAC is referring to," A.R. at 0014, which tracks precisely Hejeij's response to OFAC that he "is unaware of what particular meeting involving 'a Hizballah finance official' OFAC is referring to," *id.* at 0264. Further, as the record confirms, OFAC accurately captured Hejeij's assertion that he did not recall such a meeting taking place. *Compare id.* at 0014 ("[Hejeij] argues that due to a lack of specificity in OFAC's disclosure and the significant passage of time since an alleged mid-2013 meeting with a [Hizballah] finance official regarding hiding [Hizballah] activity at MEAB, [Hejeij] . . . cannot recall any interactions with official representatives of [Hizballah].") *with id.* at 0264 ("Given OFAC's lack of specificity and the significant passage of time since the purported meeting, Mr. Hejeij does not recall any interactions with any person holding themselves out to be an official representative of Hizballah[.]"). Moreover, as OFAC reasonably

8

concluded, "[Hejeij's] lack of recollection of a meeting with a [Hizballah] official does not mean that such a meeting did not occur[.]" *Id.* at 0014.

Hejeij further asserts that OFAC's analysis contravenes the APA because it did not provide additional details about the meeting. Pl.'s Opp. at 22. Hejeij speculates that he "may have met with an individual whom OFAC believed to be connected to Hizballah but that such a connection was unknown to Hejeij[,]" and "Hejeij was unable to explore this possibility, as OFAC disclosed no further information." *Id.* But, as explained in Section III.B, *infra*, OFAC has no obligation to furnish Hejeij with classified information to refresh his memory. More to the point, OFAC's decision must be evaluated based on "the evidence before the agency," not hypothetical evidence that Hejeij might have used to challenge OFAC's conclusion. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). And OFAC's conclusion regarding Hejeij's involvement with Hizballah is amply supported by the record. *See* A.R. at 0001-15, 0229, 0232.

Insofar as Hejeij's argument is construed as a challenge to how OFAC resolved any conflicting information about his relationship with Hizballah, *see* Pl.'s Opp. at 22-23, the Court should defer to OFAC's conclusions. Agencies may make credibility determinations when weighing evidence before them, and courts should accord particular deference to those determinations. *See D.C. Transit Sys., Inc. v. Wash. Metro. Area Transit Comm'n*, 466 F.2d 394, 414 (D.C. Cir. 1972) ("Credibility determinations within the agency's sphere of expertise are peculiarly within its province, and courts will upset them only if made irrationally."); *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 81 (D.D.C. 2011) ("[A]bsent clear error, 'an agency's credibility decision normally enjoys almost overwhelming deference.'" (quoting *Sasol N. Am. Inc. v. Nat'l Labor Relations Bd.*, 275 F.3d 1106, 1112 (D.C. Cir. 2002))). Credibility

9

determinations made by OFAC in the context of administering the government's sanctions program are no exception.  Thus in *Zevallos*, the district court and D.C. Circuit both declined to find OFAC's denial decision arbitrary and capricious where the agency made credibility determinations with which the plaintiff disagreed.  *Zevallos*, 793 F.3d at 114 ("[W]e agree that much of this evidence could be viewed in a light more beneficial to Zevallos.  However, when we evaluate agency action, we do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision."  (citation omitted)); *Zevallos*, 10 F. Supp. 3d at 123 n.9 ("Mr. Zevallos made these arguments to OFAC, and OFAC concluded that the evidence before it *was* credible, as it explained in its 2013 Evidentiary Memorandum.  It is not the province of this Court to reweigh the evidence and reconsider Mr. Zevallos's arguments on appeal." (citations omitted)).  Similarly, in *Kadi*, the court held that OFAC's designation decision was supported by substantial evidence, notwithstanding the plaintiff's argument that "the evidence underlying OFAC's decision is unreliable."  *Kadi v. Geithner*, 42 F. Supp. 3d 1, 12-23 (D.D.C. 2012) (emphasizing the "highly deferential review accorded to OFAC's decision").  While Hejeij may have his own views regarding the evidence before the agency, his disagreement fails to establish that OFAC's denial decision was arbitrary and capricious.  *See Zevallos*, 793 F.3d at 114; *see also Bean Dredging*, 773 F. Supp. 2d at 81 ("[T]he inquiry here is a limited one; it is not the reviewing court's role to evaluate credibility.  Even if the reviewing court could have made a different choice had the matter been before it *de novo*, it 'may not substitute its own judgment for the agency's choice between two fairly conflicting views.'" (quoting *Siegel v. Secs. & Exch. Comm'n*, 592 F.3d 147, 155 (D.C. Cir. 2010))).

10

### C.      Hejeij's Commercial Ventures In Iraq

In denying Hejeij's delisting petition, OFAC concluded that Hejeij "downplayed his commercial ventures in Iraq, including his involvement with Global Cleaners, S.A.R.L."  A.R. at 0002.  Hejeij challenges OFAC's finding with respect to Global Cleaners, claiming that OFAC failed to "reassess its own evidence of Hejeij's ownership in Global Cleaners in light of" the information he submitted.  Pl.'s Opp. at 23; *see also id.* (suggesting OFAC "swift[ly] dismiss[ed]" Hejeij's information about Global Cleaners).  But contrary to Hejeij's argument, OFAC reached its decision only after "carefully reviewing all available information, including . . . all of the arguments raised in [Hejeij's] written submissions and the material submitted by [him]."  A.R. at 0001; *see also id.* at 0007 ("OFAC has carefully considered the arguments and information submitted by [Hejeij].").  In fact, OFAC discussed the evidence regarding Global Cleaners at length in its evidentiary memorandum.  *Id.* at 0012-13.  That Hejeij disagrees with OFAC's treatment of that information does not demonstrate that OFAC failed to properly consider it.

Perhaps recognizing this point, Hejeij offers a fall-back argument, namely that "OFAC has no evidence supporting or even suggesting Hejeij used a proxy on the corporate documents, only its own speculation about the possible use of a proxy by a person other than Hejeij."  Pl.'s Opp. at 23.  But the totality of OFAC's evidence is unknown to Hejeij, given that some of it is classified.  Further, OFAC reasonably assessed Hejeij's representations in the context of Hizballah member Adham Tabaja's use of a proxy with respect to Global Cleaners.  A.R. at 0013; *see also Humanitarian Law Project*, 561 U.S. at 34-35.  And in any event, OFAC explained that "[Hejeij's] association with and provision of financial benefit to [Hizballah] via [Global Cleaners] is but one of many discrete pieces of evidence utilized to support [Hejeij's]

11

initial designation and is not determinative with respect to OFAC's conclusion whether [Hejeij]

should be removed from the SDN List."  A.R. at 0013; *see also Holy Land Found.*, 219 F. Supp.

2d at 75.  Indeed, other aspects of the record regarding Hejeij's commercial ventures go

unaddressed by Hejeij in his response to Defendants' motion.  *See* A.R. at 0229 ("As of late

2013, Kassem Hejeij was working on behalf of Hizballah to manage commercial ventures in Iraq

for various Lebanese companies[,]" including "various energy-related ventures in Iraq as well as

certain business activities in Africa and South America used to finance Hizballah."); *id.* at 0232

("He has provided support to [Hizballah] for a number of years through [MEAB], including by

investing in civilian infrastructure that [Hizballah] uses in Lebanon and Iraq.").  Thus, Hejeij

cannot seriously dispute that the record as a whole adequately supports OFAC's decision.

### D.      Audits Of MEAB

Hejeij next argues that OFAC "fail[ed] to consider all the evidence before it" with respect

to audits of MEAB.  Pl.'s Opp. at 24.  Here too his claim finds no basis in the record.

In his letter to OFAC, Hejeij claimed that he is "aware that MEAB has performed internal

and external audits since his resignation[,]" including "a financial audit undertaken by [two

firms], neither of which have indicated—as far as Mr. Hejeij is aware—that Mr. Hejeij nor any

other individual at MEAB engaged in the conduct alleged by OFAC."  A.R. at 0264.  In support

of this argument, Hejeij attached as Exhibit E to his letter a one-page "report" from these firms.

*Id.* at 0291-92.  That "report" opines only that "the accompanying financial statements present

fairly, in all material respects, the financial position of the Bank as of 31 December 2015, and its

financial performance and its cash flows for the year then ended in accordance with International

Financial Reporting Standards[.]"  *Id.* at 0292.  This one-page document does not mention

12

Hejeij, nor is it accompanied by any financial statements, nor does it include any other information regarding MEAB's operations.  *See id.*

OFAC considered this information in evaluating Hejeij's petition but found Hejeij's argument "unpersuasive."  *Id.* at 0002.  As OFAC explained, "[g]iven that the focus of the audits was on the financial position and performance of MEAB as of December 31, 2015, at a time when [Hejeij] allegedly had no relationship with MEAB, it is OFAC's position that the audit report did not assess [Hejeij's] behavior, and thus did not indicate that [Hejeij] did not engage in the conduct outlined by OFAC."  *Id.*  Accordingly, Hejeij's claim that OFAC disregarded his submission regarding the audits is without merit.

Nor can Hejeij establish that OFAC's decision is irrational on the ground that "[t]he audits *may* have undermined evidence of Hejeij's continued provision of support and services to Hizballah."  Pl.'s Opp. at 24 (emphasis added); *see id.* (speculating that "[i]f the audits show that MEAB did not engage in those activities . . . then that would have provided an indication as to Hejeij's own conduct and rendered suspect the evidence in OFAC's possession").  It is Hejeij who bears the burden of putting forth evidence that would negate the basis for his designation, 31 C.F.R. § 501.807, and he seeks to shift that burden to OFAC—a puzzling approach, given that Hejeij himself appears to have access to at least one audit yet chose not to submit the entire file.  *See* A.R. at 0291-92.[4]

---

[4] Prior to OFAC's August 29, 2019 denial decision, counsel for MEAB provided the Treasury Department's Office of Terrorist Financing and Financial Crimes ("TFFC") and OFAC's Policy Division two reports and accompanying documents compiled by a forensic accounting firm commissioned by MEAB.  Decl. of Ripley Quinby, attached hereto, ¶ 6.  MEAB did not provide these reports to TFFC in connection with Hejeij's delisting petition, and OFAC's Office of Global Targeting, the entity responsible for assessing all requests for reconsideration, did not review these reports prior to reaching its denial decision.  *Id.* ¶¶ 1, 8.  Following OFAC's denial of Hejeij's request for reconsideration, MEAB's counsel provided TFFC and OFAC's Policy

Hejeij also claims that OFAC's determination regarding the probative value of the audit "report" is inconsistent with the agency's conclusion that he has continued to oversee MEAB's operations.  Pl.'s Opp. at 24.  The crux of Hejeij's argument is difficult to discern.  He seems to only speculate about what the full audit report (which, again, he did not provide to OFAC) may say about Hejeij's conduct.  *See id.*  Nonetheless, Defendants refer the Court to the classified record for additional information regarding Hejeij's involvement with MEAB.

### E.    Harmless Error

As Defendants previously explained, Defs.' Mem. at 22, in light of the totality of evidence, any error by OFAC in its treatment of a discrete piece of information would be harmless pursuant to 5 U.S.C. § 706.  In response, Hejeij argues that "there is no basis in the administrative record from which to conclude that—even if certain findings and conclusions by OFAC must be set aside as arbitrary and capricious—OFAC would still have denied Hejeij's delisting petition and left his designation intact."  Pl.'s Opp. at 25.  But Hejeij's opposition brief does not address numerous findings made by OFAC, which are sufficient to sustain OFAC's decision.  For example, and as noted above, Hejeij does not challenge certain findings regarding his commercial ventures in Iraq and Lebanon.  Pl.'s Opp. at 19-25; *see* A.R. at 0002, 0013-14, 0229, 0232.  Hejeij likewise does not address OFAC's determinations regarding his relationship with Tabaja or his provision of false or misleading information with respect to his current role at MEAB.  Pl.'s Opp. at 19-25; *see* A.R. at 0002-03, 0006-07, 0010-11, 0013; *see also id.* at 0032 (explaining that the provision of such false or misleading information is itself a basis to deny his petition).  Thus, even if OFAC committed some error—which it did not—such error would be

---

Division another report.  *Id.* ¶ 7.  Since December 27, 2019, the Office of Global Targeting has reviewed these reports and has determined that they do not call into question OFAC's findings or conclusions.  *Id.* ¶ 9.

harmless, and the Court should not set aside the agency's denial decision.  *See Sulemane v. Mnuchin*, Civ. A. No. 16-1822 (TJK), 2019 WL 77428, at *6 (D.D.C. Jan. 2, 2019) ("[E]ven assuming their authenticity and completeness, these records do not have the capacity to meaningfully negate the other classified and law enforcement-privileged information in the record, including information referenced in OFAC's evidentiary memorandum, that suggested Sulemane's continued involvement in narcotics trafficking and justified the denial of his request for reconsideration.").[5]

Thus OFAC's denial decision is supported by substantial evidence.  The Court should therefore grant Defendants summary judgment on Count I of the Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.    OFAC Has Not Unreasonably Delayed Any Action

In their motion, Defendants explained that Hejeij cannot proceed with his claim under 5 U.S.C. § 706(1), because OFAC has not delayed any decision with respect to Hejeij's request to enter into a Terms of Removal Agreement, such that his claim is moot; and, in any event, Hejeij has failed to identify a discrete, legally required action that OFAC has unreasonably delayed. Defs.' Mem. at 23-26.  Hejeij's response to these points, Pl.'s Opp. at 25-30, is without merit.

First, Hejeij attempts to demonstrate that the Court has subject-matter jurisdiction over his claim because "Defendants have collapsed OFAC's decision with respect to Hejeij's reconsideration request onto Hejeij's entirely separate request to enter into a terms of removal agreement."  *Id.* at 28.  But OFAC's denial decision expressly acknowledged Hejeij's request to

---

[5] Hejeij has abandoned his argument, raised in his Amended Complaint and addressed by Defendants in their motion, that OFAC "reflexive[ly] dismiss[ed] . . . exculpatory information provided by Hejeij as being non-germane."  Am. Compl. ¶ 5, ECF No. 6; *see* Defs.' Mem. at 21-22.

enter into a Terms of Removal Agreement.  A.R. at 0007.  Having considered this request, *id.*, OFAC concluded that "the circumstances continue to warrant the blocking of his property and/or interests in property[,]" *id.* at 0015.  OFAC has thus rendered a decision on Hejeij's request; the Court can therefore offer no meaningful relief with respect to this claim.  *See Zevallos*, 10 F. Supp. 3d at 123 ("All this Court can do is 'compel agency action . . . unreasonably delayed,' i.e., compel OFAC to issue a decision—which it has already done.").[6]

Hejeij's secondary arguments confirm that he is in fact complaining about the substance of OFAC's decision, not OFAC's failure to reach a decision.  For instance, Hejeij contends that OFAC "failed to demonstrate that a proceeding was established to consider the request" and "failed to produce an administrative record for this Court regarding its consideration of that request[,]"  Pl.'s Opp. at 28; but that argument is more conducive to a claim under § 706(2) than § 706(1), *see* 5 U.S.C. § 706(2)(A), (D) (permitting court to set aside agency action found to be arbitrary and capricious, or "without observance of procedure required by law").[7]  Nor can Hejeij advance his argument by claiming that "OFAC is not aware of what arguments Hejeij may have brought to bear in the [Terms of Removal] proceeding if one had been established to fairly consider the request or what information may have come into the agency's own possession as it undertook its review."  Pl.'s Opp. at 28.  Contrary to Hejeij's argument, OFAC fully considered the information provided by Hejeij in both his request for reconsideration and his request to enter into a Terms of Removal Agreement.  *See* A.R. at 0007, 0033-88, 0167-72, 0256-91.  And

---

[6] Insofar as OFAC erred in not separately responding to Hejeij's request, such error is harmless. *See* 5 U.S.C. § 706.

[7] Defendants also disagree with the merits of Hejeij's assertion.  The administrative record before the Court evidences the "proceeding" in which Hejeij participated, and encompasses the reasons for OFAC's decision not to remove Hejeij from the SDN List.

Defendants are unable to imagine what additional information Hejeij would have provided in connection with his request to enter into a Terms of Removal Agreement, particularly as OFAC had previously asked for a broad range of information regarding, *inter alia*, Hejeij's relationship with Hizballah, Adham Tabaja, and financial institutions. *Id.* at 0030-31.[8] *See also* Pl.'s Opp. at 30 (acknowledging that "Hejeij's request even contained proposed terms for such a terms of removal agreement, including ones directly relevant to OFAC's decision to maintain Hejeij's designation").

Hejeij has similarly failed to establish that his § 706(1) claim pertains to a discrete, legally required agency action. As Defendants have explained, the specific response requested by Hejeij is not an "agency action" within the meaning of the APA, because Hejeij seeks only to begin a process of negotiating a potential settlement, and OFAC is not required to engage in such a process. Defs.' Mem. at 24-26. Hejeij does not respond to the latter point, Pl.'s Opp. at 29-30, and therefore concedes it, *see Joumaa*, 2019 WL 1559453, at *9. And as "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), this concession is fatal to Hejeij's claim of unreasonable delay.

Further, Hejeij cannot retreat from his own characterization of his request to the agency. As Hejeij's correspondence demonstrates, he merely sought "to enter into discussions regarding a proposed Terms of Removal Agreement with OFAC." A.R. at 0169; *see also id.* (suggesting that OFAC and Hejeij "[n]egotiat[e] the terms of such an agreement"); *id.* at 0170 ("[Hejeij] seeks to discuss with OFAC any proposed conditions that the agency deems necessary . . . ."); *id.*

---

[8] Indeed, if Hejeij withheld material information in his responses, OFAC would be justified in denying his delisting petition on that ground alone. A.R. at 0032.

at 0171 (request "to immediately be[gin] discussing the terms and scope of such agreement").

Indeed, Hejeij's response to Defendants' motion confirms that Hejeij is asking this Court to

compel not a discrete action but a nebulous "process." *See* Pl.'s Opp. at 27 ("This signals a far

broader problem, which is not that OFAC has merely delayed rendering a decision on Hejeij's

request but OFAC has also failed to begin a process through which a decision may be

forthcoming. Accordingly, any court order requiring an expedited process would have the

salutary effect of ensuring that an agency process is underway in the first instance."). Hejeij

therefore cannot proceed with his claim of unreasonable delay.

If more were needed, Hejeij's claim under § 706(1) fails in light of the factors set forth by

the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C.

Cir. 1984) ("*TRAC*"). Such factors include "any statutory timetable 'or other indication of the

speed with which [the Congress] expects the agency to proceed'; 'the nature and extent of the

interests prejudiced by delay,' with particular concern for matters of 'human health and welfare';

and 'the effect of expediting delayed action on agency activities of a competing or higher

priority.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir.

2003) (quoting *TRAC*, 750 F.2d at 80).

First, Hejeij suggests, without support, that waiting 16 months for OFAC to act on his

request to enter into a Terms of Removal Agreement is unreasonable. Pl.'s Opp. at 26. But

Congress has provided no indication of the speed with which it expects OFAC to resolve such

requests. And there is no other basis to discern a "rule of reason" that the Court can apply,

particularly as requests to enter into settlements and remove individuals from the SDN List are

highly discretionary decisions made by OFAC, based on its expertise in the realms of national

security and foreign policy. *Holy Land Found*., 219 F. Supp. 2d at 74 n.28 ("Executive Branch

decisions to designate an entity as a terrorist are complex and involve significant political ramifications.  Accordingly, the Court must defer to the Executive's discretion on the timing of those foreign policy and national security decisions.").  Thus "the first and most important of the *TRAC* factors," *In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 837 (D.C. Cir. 2012) (citation omitted), weighs in favor of OFAC.  *See also Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 115 (D.D.C. 2005) ("[C]ases in this Circuit have made clear that measuring the delay by years alone cannot establish unreasonable delay." (citations omitted)).

Additionally, Hejeij's request that OFAC consider a Terms of Removal Agreement is not, under relevant Circuit precedent, a matter of "human health and welfare."  *See TRAC*, 750 F.2d at 80 (contrasting delays "in the sphere of economic regulation" with those affecting human health); *compare Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 193 (D.C. Cir. 2016) (recognizing impact on human health and welfare where hospital's operations were jeopardized).  Hejeij's claim that "the implications of an OFAC designation affect Hejeij's livelihood and portend serious consequences for Hejeij's health and welfare," Pl.'s Opp. at 26, eviscerates the distinction that the D.C. Circuit has drawn between economic and non-economic regulation; by Hejeij's reasoning, *any* economic regulation could be construed as threatening human health and welfare.  Moreover, Hejeij has failed to support his theory with any evidence in the record suggesting that Hejeij's health and welfare are in jeopardy.  *See* Pl.'s Opp. at 26-27.

Further, there is no basis for the Court to "reorder[] [OFAC's] priorities."  *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).  "Due to its expertise, [OFAC] must be permitted flexibility in navigating the tough choices that come along with" evaluating whether the information available to the agency warrants the removal of a particular Specifically Designated Global Terrorist ("SDGT") from the SDN List.  *Ctr. for Sci. in the Pub. Interest v. U.S. FDA*, 74

F. Supp. 3d 295, 305 (D.D.C. 2014); *see also Humanitarian Law Project*, 561 U.S. at 33-34

(explaining that in the realm of national security and foreign affairs, the "evaluation of the facts

by the Executive . . . is entitled to deference").  And as granting Hejeij's request would simply

move him to the front of the line of SDGTs seeking similar relief, the delay is not of the type that

the D.C. Circuit has recognized as pertinent to the *TRAC* analysis.  *Beyond Pesticides/Nat'l Coal.*

*Against the Misuse of Pesticides v. Johnson*, 407 F. Supp. 2d 38, 40-41 (D.D.C. 2005) ("In fact,

our Circuit Court has held that the impact of the delay is irrelevant where 'putting [the plaintiff]

at the head of the queue simply moves all others back one space and produces no net gain.'"

(quoting *In re Barr Labs., Inc.*, 930 F.2d at 75)); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153

(D.D.C. 2017) ("Where the agency action sought is one of many similar adjudications that the

agency must complete, the court should be even more cautious before intervening."), *appeal*

*dismissed*, No. 17-5102, 2017 WL 4220432 (D.C. Cir. July 27, 2017).  Under these

circumstances, there is no basis to find that any decision by OFAC has been unreasonably

delayed.[9]

     The Court should therefore dismiss Count II of the Amended Complaint under Rule

12(b)(1) or 12(b)(6) or, in the alternative, grant summary judgment to Defendants pursuant to

Rule 56.

## III.     OFAC's Decision Comports With The Fifth Amendment

     Hejeij contends that OFAC's decision to designate him as a SDGT and to deny his

delisting petition violated his purported rights under the Fifth Amendment's Due Process Clause,

---

[9] "[T]he sixth *TRAC* factor allows the Court to weigh any alleged impropriety against the other factors in the test."  *Beyond Pesticides/Nat'l Coal. Against the Misuse of Pesticides*, 407 F. Supp. 2d at 41.  Hejeij here does not allege any bad faith by OFAC.  *See also id.* (referencing "the well established presumption that public officials . . . act in good faith and are conscientiously proper in the discharge of their duties." (citation omitted)).

primarily because the administrative record contains redactions of classified information used to

support OFAC's decisions.  Pl.'s Opp. at 30-43.  But as in his Amended Complaint, Hejeij's

opposition brief fails to identify any property or presence in the United States, even though such

information is presumably known to Hejeij.  Accordingly, the Court should reject Hejeij's

constitutional claims out of hand, as a foreign national without sufficient contacts with the

United States cannot cloak himself in the protections of the Fifth Amendment.  Moreover,

Hejeij's claims fail on the merits.  Not only has the D.C. Circuit made clear that OFAC may rely

on classified and law enforcement privileged information to support a designation decision, but

the unclassified and non-privileged portions of the record alone provide a sufficient basis for

OFAC's decisions under the governing APA standard.

### A.       Hejeij Cannot Assert Constitutional Rights

As Defendants explained in their motion, Hejeij's Amended Complaint fails to allege the

sort of "substantial connections" with the United States necessary for Hejeij, as a foreign

national, to be entitled to the full protections of the U.S. Constitution.  *See* Defs.' Mem. at 27-28;

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (constitutional protections may

apply when foreign nationals "have come within the territory of the United States and developed

substantial connections with this country"); *Johnson v. Eisentrager*, 339 U.S. 763, 770-71 (1950)

(non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth

Amendment protections).

In response, Hejeij asserts that "[c]ourts have repeatedly held that foreign nationals may

be owed constitutional protection."  Pl.'s Opp. at 40 (citations omitted).  Notably, however, the

six cases cited by Hejeij in support of this proposition are precisely the same six cases

distinguished by the Supreme Court in *Verdugo-Urquidez*.  *Compare* Pl.'s Opp. at 40 *with*

*Verdugo-Urquidez*, 494 U.S. at 271.  As the Supreme Court there explained, "[t]hese cases . . . establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."  *Id.*

Nor has Hejeij established such contacts.  Hejeij contends that he "has alleged that he is a foreign national resident in Lebanon and that his property and interests in property within U.S. jurisdiction are blocked as a result of Defendants' actions."  Pl.'s Opp. at 41 (citing Am. Compl. ¶¶ 10, 12).  But the Amended Complaint is devoid of any factual allegations that could plausibly support a finding that Hejeij has property within the United States.  Paragraph 10, for example, states that "Kassem Hejeij is and was at all times relevant to this complaint a citizen of Lebanon" who "currently resides at Rouche District, Albahri Building, Beirut, Lebanon[,]" thereby confirming that he is not a citizen or resident of the United States.  Am. Compl. ¶ 10.  Paragraph 12 summarizes OFAC's designation decision and states that "all property in which Hejeij has an interest that is subject to U.S. jurisdiction is blocked, and U.S. persons are generally prohibited from engaging in any dealings or transactions with him."  *Id.* ¶ 12.  While this allegation accurately captures the legal consequences of OFAC's decision, *see* 50 U.S.C. § 1702(a)(1)(B); EO 13224, § 1(d), it does not adequately establish that Hejeij in fact has property subject to blocking.  *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (explaining that "conclusory statements and legal conclusions are insufficient to state a plausible basis for standing"); *Kadi*, 42 F. Supp. 3d at 8 (stating that a "plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to survive a Rule 12(b)(6) motion to dismiss (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007))).

These pleading deficiencies are all the more pronounced given the cross-motions for summary judgment now pending before the Court.  To proceed with his Fifth Amendment claim,

Hejeij should be able to identify portions of the record that support a finding of sufficient contacts with the United States.  *Cf. Humane Soc'y of the U.S. v. Perdue*, 935 F.3d 598, 602 (D.C. Cir. 2019) ("Now, on summary judgment, the plaintiffs must prove injury in fact with 'specific facts' in the record.").  Yet he makes no effort to do so.  Pl.'s Opp. at 40-43.  And for good reason: while the record is replete with submissions by Hejeij to OFAC, none demonstrates that he has a presence or property in this country.  *See* A.R. at 0033-88, 0256-91; *see also id.* at 0141.

Hejeij attempts to compensate for these critical omissions by claiming that "Defendants over-interpret the relevant case law[.]"  Pl.'s Opp. at 41.  According to Hejeij, *Verdugo-Urquidez* does not stand for the proposition that foreign nationals must develop substantial connections with the United States in order to avail themselves of the Fifth Amendment.  *Id.* at 41-42. Rather, in Hejeij's view, *Verdugo-Urquidez* requires the Court "to take a more scrutinizing look at whether Hejeij's purported connections to the United States merit constitutional protection." *Id.* at 42.  But even if so, that "scrutinizing look" must be guided by Circuit precedent applying *Verdugo-Urquidez*, which to date has recognized constitutional protections for foreign nationals only if they had substantial connections with the United States, defined as presence or property in this country.  *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise."); *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 201-02 (D.C. Cir. 2001) (holding that entity was entitled to Fifth Amendment protections because it "ha[s] come within the territory of the United States and developed substantial connections with this country," as evidenced by its "overt presence within the National Press Building in Washington, D.C." and its "claim[] [of] an interest in a small bank

account");[10] *32 Cty. Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002) (rejecting argument that entities had constitutional rights, where they did not establish that they "possessed any controlling interest in property located within the United States, nor do they demonstrate any other form of presence here"); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that" the "Fifth Amendment's protections" are "unavailable to aliens outside of our geographic borders.").  As Hejeij has failed to establish any presence or property within the country—and has likewise failed to demonstrate alternative bases for invoking the Fifth Amendment—the Court should not entertain his constitutional due process claims.

For the same reason, Hejeij cannot persuasively argue that he may assert constitutional rights because "mere property ownership" entitles a plaintiff to do so.  Pl.'s Opp. at 42; *see also id.* at 40-41.  *Kadi*—the sole case that Hejeij relies on, *id.*—confirms that property ownership is relevant only insofar as it pertains to analyzing whether a SDGT has substantial connections with the United States.  *Kadi*, 42 F. Supp. 3d at 25-26.  Moreover, Hejeij cannot avail himself of the standard he has proposed; for the reasons described above, neither the Amended Complaint nor the administrative record permits a conclusion that Hejeij has any property within the United States.[11]

---

[10] The court in *National Council of Resistance of Iran* left open the possibility that "aliens who have entered the territory of the United States and developed connections with this country but not substantial ones" may avail themselves of the Fifth Amendment.  251 F.3d at 202.  However, it declined to specify under what conditions that standard could be met.  *See id.*  And in any event, Hejeij cannot rely on this dicta, as the record does not support a finding that he has either entered this territory or developed any connections with the United States whatsoever.

[11] Hejeij suggests that "the question of whether [he] has property or an interest in property blocked in the United States or by a U.S. person, wherever located, may be an issue fit for discovery."  Pl.'s Opp. at 41 n.2.  But Hejeij has cross-moved for summary judgment—

Hejeij also fails to advance his argument by suggesting that there is an "apparent incongruity in Defendants' position." Pl.'s Opp. at 42.  Specifically, Hejeij contends that "[i]n Defendants' view, Hejeij may have requisite nexus to the United States to warrant potential criminal prosecution by U.S. authorities but not sufficient nexus to provide any constitutional protection with respect to his blocked property." *Id.* at 43.  To support this argument, Hejeij cites only an excerpt from a decision and order in a criminal matter issued by the U.S. District Court for the Southern District of New York. *Id.* (citing Decision and Order, No. 493, *United States v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. Feb. 7, 2018)).  After a trial, the defendant in that case was convicted of conspiracy to violate IEEPA.  Decision and Order at 1.  Previously, the district court had rejected Atilla's attacks on its jurisdiction, finding that (1) "the Indictment reflects the elements of each count . . . and establishes a sufficient nexus between Mr. Atilla and his coconspirators' conduct and the United States[,]" and (2) "the Indictment here alleges a domestic nexus between the defendant [Atilla] and his co-conspirators' conduct and the United States[.]" *Id.* at 7-8.

*Atilla*, however, does not buttress Hejeij's argument.  Unlike Atilla, Hejeij is not under indictment.  Further, the court in *Atilla* emphasized his connections to the United States, while here, Hejeij shows no such connections.  And in any event, IEEPA applies extra-territorially.

---

indicating he believes "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a)—and he has not made a request for discovery pursuant to Rule 56(d).  Hejeij also elides the fact that "[i]n this Circuit, discovery is normally unavailable in an APA case, 'except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Friends of The Earth v. U.S. Dep't of Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006) (quoting *Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)); *see also* Pl.'s Opp. at 18 (acknowledging that "[w]hen a court reviews agency action under the APA, '[t]he entire case on review is a question of law, and only a question of law'" (quoting *Zevallos*, 10 F. Supp. 3d at 117)).  And as a practical matter, Hejeij should not need discovery to know whether he has blocked property.

*United States v. Tajideen*, 319 F. Supp. 3d 445, 457 (D.D.C. 2018), *appeal dismissed*, No. 18-3059, 2018 WL 7080502 (D.C. Cir. Dec. 31, 2018) ("[T]he plain language of several provisions of the IEEPA unambiguously indicate that the IEEPA applies extraterritorially.").  Accordingly, it is entirely consistent for the government to take the position that IEEPA subjects a foreign national to potential criminal liability, and that foreign national wishing to raise a due process challenge to an IEEPA designation must have substantial contacts with the United States to do so.  Otherwise, by Hejeij's reasoning, anyone who may be in violation of U.S. law and subject to criminal penalties could assert constitutional rights, yielding a result irreconcilable with *Verdugo-Urquidez* and its progeny.

Hejeij has therefore not demonstrated that he can assert any rights under the Constitution, and the Court should dismiss his Fifth Amendment claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

**B.      Hejeij's Due Process Claims Fail On The Merits**

Even if the Court were to reach the merits of Hejeij's Fifth Amendment claims, it should reject his argument that OFAC's procedures fail to satisfy due process.  According to Hejeij, Defendants violated his purported due process rights because they considered classified and law enforcement privileged information but did not utilize "other procedural safeguards" to inform Hejeij of the basis for their designation decisions.  Pl.'s Opp. at 31-40.  Such safeguards, Hejeij contends, include requiring OFAC to produce unclassified summaries of classified information and allowing his counsel to access the classified materials.  *Id.*  This argument, however, ignores relevant caselaw and elides the actual process that Hejeij received.

1.     **Due Process Does Not Require OFAC To Produce Unclassified Summaries Or To Grant Cleared Counsel Access To The Classified Record**

As an initial matter, Hejeij's insistence that OFAC disclose "all of the reasons for" OFAC's designation decisions, Pl.'s Opp. at 33, must give way to the text of IEEPA, which expressly permits the Executive Branch to rely on classified information and submit that information to a court for *ex parte* and *in camera* review, 50 U.S.C. § 1702(c).  That provision, moreover, does not require the government to summarize or allow third parties to access classified information in connection with an administrative or judicial proceeding.  *See id.*  In other words, IEEPA contemplates that the government may designate a person based on classified information that the SDGT never sees.  *Id.*

Additionally, contrary to Hejeij's argument, the D.C. Circuit has never concluded that OFAC must provide a SDGT "all of the reasons supporting OFAC's determination."  *See* Pl.'s Opp. at 34; *see also id.* at 30, 34-35 (similarly suggesting that OFAC must disclose each and every reason for its decision).  Instead, and consistent with the text of IEEPA, the Court of Appeals has repeatedly held that there is no due process violation when a federal agency makes a decision based on classified information not disclosed to a foreign national, and that it is entirely proper for a court to take this classified information into account during its *ex parte* and *in camera* review of the agency's action.  *See* Defs.' Mem. at 33 (citing cases).  In *Jifry v. FAA*, for example, the D.C. Circuit held that the government satisfied the notice requirements of due process by informing foreign pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat"; the court reached its decision even though the notice of that revocation "did not include the factual basis for" that determination, "which was based on classified information," and plaintiffs had argued that "without knowledge

27

of the specific evidence on which TSA relied, they [were] unable to defend against the charge

that they are security risks."  370 F.3d 1174, 1178, 1184 (D.C. Cir. 2004) (noting that D.C.

Circuit "rejected the same argument" that an agency is not permitted to rely on undisclosed

classified information with respect to the designations of foreign terrorist organizations in *Nat'l*

*Council of Resistance of Iran* and *People's Mojahedin Org. of Iran*).  Similarly, in *Holy Land*

*Foundation*, the D.C. Circuit held that due process permitted the government, pursuant to

IEEPA, to rely on classified information submitted *ex parte* and *in camera* to support the

designation of a domestic entity as a SDGT, finding unpersuasive the argument "that due process

prevents its designation based upon classified information to which it has not had access[.]"  333

F.3d at 164.

The D.C. Circuit has also made clear that "'due process require[s] the disclosure of *only*

the unclassified portions of the administrative record.'"  *Id.* (quoting *People's Mojahedin Org. of*

*Iran v. Ashcroft*, 327 F.3d 1238, 1242 (D.C. Cir. 2003)); *see also Nat'l Council*, 251 F.3d at 208-

09 (holding that under the Due Process Clause, the agency "need not disclose the classified

information to be presented *in camera* and *ex parte* to the court," and that "[t]his is within the

privilege and prerogative of the executive, and we do not intend to compel a breach in the

security which that branch is charged to protect").[12]  Thus the relevant question is not whether

---

[12] Hejeij focuses his arguments on the redaction of classified information.  Pl.'s Opp. at 31-40.
Insofar as he raises the same arguments with respect to redactions of law enforcement privileged
information, *see id.*, such arguments are similarly unpersuasive.  *See Joumaa*, 2019 WL
1559453, at *10 n.14 (holding plaintiff "has no right to classified evidence that OFAC relies on
for his designation, nor to law-enforcement privileged evidence OFAC relies on when he fails to
assert any distinction between the two." (citing *Fares v. Smith*, 901 F.3d 315, 323-24 (D.C. Cir.
2018))); *see also FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 118-19 (D.D.C. 2015)
("[A]mple precedent" allows agencies to "use certain sensitive information, without disclosing it,
in proceedings imposing targeted financial measures on persons and organizations.").

OFAC has provided Hejeij "all of the reasons supporting OFAC's determination[,]" *see* Pl.'s

Opp. at 34, but rather whether OFAC has disclosed the unclassified record, and whether that

record provided Hejeij "a basis from which to understand his designation, and thereby offer

rebuttal arguments and evidence in response[,]" *Zevallos*, 10 F. Supp. 3d at 131.[13]  For the

reasons discussed in Defendants' motion and *infra*, OFAC has satisfied this standard.

Notably, the specific "alternative mechanim[s]" proposed by Hejeij, Pl.'s Opp. at 31—

requiring OFAC to produce unclassified summaries and to grant his counsel access to the

classified materials, *id.* at 31-33—have never been mandated by any court in this Circuit

considering a designation action.  Rather, courts have observed that while "unclassified

summaries of classified information on which an agency relied may be helpful to litigants, they

are not required." *FBME Bank Ltd.*, 125 F. Supp. 3d at 119 n.2.  Hejeij also has no answer to the

decisions cited by Defendants that have rejected requests by a plaintiff or his counsel to access

classified materials.  *Compare* Defs.' Mem. at 34 *with* Pl.'s Opp. at 31-40; *see, e.g.*, *Ellsberg v.

Mitchell*, 709 F.2d 51, 61 (D.C. Cir. 1983) ("[O]ur nation's security is too important to be

entrusted to the good faith and circumspection of a litigant's lawyer (whose sense of obligation

to his client is likely to strain his fidelity to his pledge of secrecy) or to the coercive power of a

protective order.").

Hejeij's reliance on *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018), is misplaced.  *See*

Pl.'s Opp. at 32-35, 37-38.  First, the D.C. Circuit in that case did not "require[] that OFAC

disclose all of the reasons for a designation[,]" *id.* at 35; rather, the court in *Fares* affirmed the

---

[13] Indeed, Hejeij's argument conflicts with the well-recognized principle that the government
may "supply privileged information in *summary form*," *Fares v. Smith*, 249 F. Supp. 3d 115, 128
(D.D.C. 2017) (emphasis added), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018), and it is hardly surprising
when "summaries [are] not highly fact-specific [to] ensur[e] that neither . . . sources nor national
security [are] compromised," *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001).

ability of the Executive Branch to rely on classified and law enforcement privileged information

that is not disclosed to a designated individual, *see Fares*, 901 F.3d at 324.  Further, while that

court, in dicta, *permitted* the reliance on summaries of protected information to support a

designation, it did not hold that such summaries are *required* by the Due Process Clause.  *Id.* at

324-25.  Similarly, the court in *Fares* noted, again in dicta, that "effective judicial review may

necessitate examination of the full administrative record *in camera*, either *ex parte* or with the

designee's lawyer present as cleared counsel (able to verify the government's grounds but not

report them back to the client)," but it did not specify when a court would be unable to

effectively examine the record on its own, and it did not in fact order that the plaintiffs' counsel

be permitted access to the record.  *Id.* at 322-23.  And Hejeij's suggestion that, per *Fares*,

"[d]isclosure of some but not all of the allegations against [a designee] impairs their ability to

fully clear their names for delisting[,]" Pl.'s Opp. at 33, is at best inaccurate; rather, the D.C.

Circuit, in explaining why the plaintiffs' legal theory was unusual in the sanctions context, stated

that "[d]esignees can contest that agency disclosure of some but not all of the allegations against

them impairs their ability to fully clear their names for delisting, leaving them 'stumbl[ing]

towards a moving target.'" *Fares*, 901 F.3d at 322 (quoting *Zevallos*, 793 F.3d at 118).  An

observation about what a designated individual may argue plainly does not establish a bright-line

rule that OFAC must disclose each and every reason for its designation decisions.

Nor did the district court in *Zevallos*, as Hejeij suggests, hold that unclassified summaries

of classified information are required under the Due Process Clause.  *See* Pl.'s Opp. at 32, 35

(citing *Zevallos*, 10 F. Supp. 3d at 131).  Rather, the court merely stated, relying on the "helpful

analogy" of IEEPA designations, that due process "required OFAC to promptly provide the

unclassified administrative record on which it relied in taking its blocking action." *Zevallos*, 10

F. Supp. 3d at 129.  Here, Hejeij does not claim that OFAC failed to promptly provide him the unclassified record.  *See* Pl.'s Opp. at 31-40.  Thus *Zevallos* is of no assistance to Hejeij.

Hejeij fares no better in relying on the Ninth Circuit's decision in *Al Haramain Islamic Foundation, Inc. v. U.S. Department of Treasury*, 686 F.3d 965 (9th Cir. 2012).  *See* Pl.'s Opp. at 33, 35-36.  While that court opined on the potential utility of unclassified summaries or access for cleared counsel, *Al Haramain*, 686 F.3d at 982, it did not hold that such measures are always required; in fact, the Ninth Circuit acknowledged that "an unclassified summary may not be possible because, in some cases, the subject matter itself may be classified and cannot be revealed without implicating national security."  *Id.* at 983.  Moreover, the persuasive value of the Ninth Circuit's dicta is limited, given that (1) *Al Haramain*—unlike this case—involved a domestic entity, and thus due process protections that do not apply here, *id.* at 979; and (2) the Ninth Circuit's due process analysis conflicts with the aforementioned decisions in this Circuit upholding the use of classified information, where the D.C. Circuit did not suggest that due process requires the government to summarize such information, *see Jifry*, 370 F.3d at 1183-84; *Holy Land*, 333 F.3d at 164; *Nat'l Council*, 251 F.3d at 208-09.  Additionally, *Al Haramain* involved a "significantly untimely and incomplete notice" that provided "only one of three reasons for [the agency's] investigation and designation," *Al Haramain*, 686 F.3d at 986, whereas here OFAC has provided Hejeij ample information from which to understand the basis for OFAC's decisions.  *See* Defs.' Mem. at 29-32 & *infra.*  Hejeij is thus "unlike the plaintiff[] in *Al Haramain* . . . who w[as] left in the dark as to the reasons for [its] designation[]."  *See Fares*, 249 F. Supp. 3d at 127; *see also Zevallos*, 793 F.3d at 117 (distinguishing *Al Haramain* on similar grounds).

### 2. OFAC Has Provided Hejeij A Basis From Which To Understand His Designation

Yet the Court need not reach the question of whether unclassified summaries are always required or whether OFAC must employ "[o]ther alternative procedural safeguards" when relying on classified information. Pl.'s Opp. at 32. OFAC here decided to disclose to Hejeij unclassified summaries of otherwise classified information considered by the agency, and those summaries, in conjunction with the rest of the administrative record provided to Hejeij, more than adequately apprise him of the basis for OFAC's decision to designate him as a SDGT. *See Fares*, 249 F. Supp. 3d at 125-28 (holding that "the total body of information provided by OFAC to Plaintiffs"—which included the redacted administrative record, press release, and non-privileged summaries of law enforcement sensitive information—"satisfie[d] due process").

Hejeij's arguments to the contrary are without merit. He first suggests that OFAC's evidentiary memorandum is too heavily redacted to allow him to understand the reasons for his 2015 designation. Pl.'s Opp. at 33-38. But that memorandum is redacted only insofar as it contains classified information, *see* A.R. at 0002-12, which, as discussed above, OFAC need not disclose. Additionally, the unclassified evidence provided to Hejeij—including that disclosed in OFAC's press release and the unclassified summaries of otherwise classified information, *id.* at 0020-21, 0229, 0232—explains OFAC's determination that Hejeij "provides financial, material, or technological support for, or financial or other services to or in support of, Hizballah," *id.* at 0142; *see also* EO 13224, § 1(d). Specifically, OFAC's press release explained that Hejeij is a "Lebanese businessman that maintains direct ties to Hizballah organizational elements," and that "[i]n addition to his support to Adham Tabaja and his affiliated companies in Iraq, Hejeij has helped open bank accounts for Hizballah in Lebanon and provided credit to Hizballah procurement companies." A.R. at 0021. Moreover, "Hejeij has . . . invested in infrastructure

that Hizballah uses in both Lebanon and Iraq."  *Id.*  In its unclassified summaries, OFAC also

explained, *inter alia*:

- "As of early[] 2014, Kassem Hejeij and an individual whom OFAC has reason to believe

  is Adham Tabaja, were responsible for transferring funds from Hizballah companies in

  Iraq to Hizballah."  *Id.* at 0229.

- "As of mid-2014, Kassem Hejeij was an owner of Global Cleaners which provided

  millions of dollars per year to Hizballah.  As OFAC noted in October 2016, Global

  Cleaners obtained lucrative contracts to provide sanitation services in Baghdad, Iraq."

  *Id.*

- "As of late 2013, Kassem Hejeij was working on behalf of Hizballah to manage

  commercial ventures in Iraq for various Lebanese companies.  These contracts included

  various energy-related ventures in Iraq as well as certain business activities in Africa and

  South America used to finance Hizballah.  The revenues were then remitted to Hizballah

  using accounts at various banks, and Hejeij was working to open [MEAB] branches in

  Iraq for Hizballah."  *Id.*

- "In mid-2013, a Hizballah finance official met with Kassem Hejeij, and Hejeij agreed to

  make changes to bank accounts held by individuals, entities, or charitable institutions

  affiliated with Hizballah so as to hide ties between money laundering and Hizballah.

  Specifically, Hejeij agreed to begin transferring accounts at MEAB that were registered

  to Hizballah-affil[i]ated individuals or entities to new accounts under different names."

  *Id.*[14]

---

[14] Hejeij suggests that he cannot respond to this finding without knowing the identity of the
Hizballah finance official.  Pl.'s Opp. at 35-36.  But that information is classified, and there is no

- "Kassem Hejeij has maintained direct ties with senior elements in [Hizballah], [Hizballah] elements in Iraq, among others.  He has provided support to [Hizballah] for a number of years through [MEAB], including by investing in civilian infrastructure that [Hizballah] uses in Lebanon and Iraq."  *Id.* at 0232.

Given these summaries, Hejeij's suggestion that he is unable to grasp the basis for his designation, Pl.'s Opp. at 34, strains credulity.  *See Joumaa*, 2019 WL 1559453, at *11 ("[T]he Court struggles to see how Joumaa could fail to understand the connection between the specific information about his alleged laundering of drug proceeds in the summary, . . . and OFAC's conclusion that 'he continue[d] to meet the criteria [for designation].'" (citation omitted)).  Indeed, although OFAC was not required to do so, these summaries demonstrate that OFAC provided Hejeij with the "'who,' 'what,' 'when,' and 'where' of the allegations," as he repeatedly requests.  *See* Pl.'s Opp. at 32, 35, 37 (citation omitted).

Further, Hejeij's efforts to discount the summaries are unavailing.  First, according to Hejeij, "[t]he relevance of the allegations contained in the summaries [is] unclear, as OFAC provided no clarification as to whether the summaries relate to background material or to the bases for designation found in the evidentiary memorandum."  *Id.* at 34; *see also id.* at 35.  But Hejeij need only look to OFAC's letters transmitting the unclassified summaries to find the answer to his question.  As OFAC explained, it was disclosing "the non-privileged and unclassified summary of information *regarding the basis for Mr. Hejeij's designation*."  A.R. at 0227 (emphasis added); *see also id.* at 0230 (same).  Second, Hejeij contends that "it is likewise

---

discernable way that OFAC can summarize that information without compromising national security and intelligence sources and methods.  And in any event, OFAC has provided substantial detail about other aspects of the meeting, including the time period, role of Hejeij's interlocutor, and scheme.

unclear whether the allegations contained in those summaries represent findings or conclusions in support of the agency's determination, nor how the agency reasoned from the evidence in its possession to reach those findings or conclusions."  Pl.'s Opp. at 34.  The unclassified summaries, however, are plainly based on factual reporting obtained by OFAC, *see* A.R. at 0229, 0232, which it considered in determining that Hejeij warrants designation pursuant to EO 13224, *see id.* at 0141 ("Evidence presented in this memorandum and related exhibits provide reason to believe that [Hejeij] meets the criteria for designation as set forth in E.O. 13224.").  And Hejeij's sweeping assertion that OFAC should explain how the government obtains or assesses classified intelligence goes well beyond any requirement courts have imposed, particularly in cases implicating national security or foreign policy determinations.  *E.g.*, *Humanitarian Law Project*, 561 U.S. at 35; *Islamic Am. Relief Agency*, 477 F.3d at 734.

Thus Hejeij can hardly complain that he has been "left in the dark as to the reasons for [his] designation[], and . . . could not meaningfully refute the evidence against [him]."  *Zevallos*, 10 F. Supp. 3d at 131.  Rather, "the total body of information provided by OFAC to [Hejeij] satisfies due process."  *Fares*, 249 F. Supp. 3d at 127; *see also Joumaa*, 2019 WL 1559453, at *10-11.[15]

### 3.     OFAC Has Provided Hejeij A Basis From Which To Understand The Denial Of His Delisting Petition

Hejeij's arguments regarding the notice related to OFAC's denial of his delisting petition are similarly unpersuasive.  His claim that OFAC's denial decision violated his purported constitutional rights because it "contains heavy redactions," Pl.'s Opp. at 38, fails for the reasons

---

[15] In any event, any error associated with the notice provided by OFAC would be harmless, given that the administrative record amply supports OFAC's decision.  *See Zevallos*, 793 F.3d at 117. *Accord Al Haramain*, 686 F.3d at 979, 989-90.

discussed above.  To reiterate, OFAC redacted only classified and privileged information, and

OFAC has no obligation to produce that information to any plaintiff, let alone a foreign national

who is a demonstrated supporter of terrorism. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ *Cf. Sulemane*, 2019

WL 77428, at *7 ("But especially given OFAC's determination that he remained a significant

foreign narcotics trafficker, it is quite obvious why it did not provide him this information, which

could reveal the government's sources and methods.").[16]  Moreover, Hejeij fails to acknowledge

the unredacted portions of the evidentiary memorandum describing the reasons for OFAC's

decision.  A.R. at 0008 ███████████████████████; *id.* at 0010-11

(explaining that OFAC obtained additional information about Hejeij's relationship with MEAB

and his support or services to Hizballah, and concluding that Hejeij submitted false information

to OFAC); *id.* at 0011-14 (considering and rejecting Hejeij's other arguments).  These excerpts

are at least as informative as the notice deemed sufficient by the D.C. Circuit in *Jifry*.  *See Jifry*,

370 F.3d at 1178, 1183-84.

Further, the Court should not heed Hejeij's hyperbole that OFAC's August 29, 2019

letter explaining its denial decision merely "replicates the conclusions found in the evidentiary

memorandum supporting OFAC's decision but provides none of the agency's findings nor the

---

[16] Hejeij suggests that OFAC improperly classified a series of paragraphs in its evidentiary
memorandum.  *See* Pl.'s Opp. at 38 n.1. ███████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████  But Hejeij offers only speculation about the substance of those paragraphs, which are
appropriately classified at the highest level based on the information contained therein.  *See* A.R.
at 0017.

evidentiary support from which it reasoned to reach those conclusions."  Pl.'s Opp. at 39; *see also id.* at 39-40 (claiming Hejeij "is in no better position than he was prior to his delisting petition to provide rebuttal evidence" and "lacks *any* information as to what evidentiary support OFAC is marshalling to reach its conclusion" (emphasis added)).  Contrary to Hejeij's assertion, that letter sets forth six unclassified grounds for OFAC's decision, including information that summarizes evidence redacted in the agency's memorandum.  *See* A.R. at 0001-14.[17] ▮

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████

And in its letter, OFAC explained the additional bases for its decision:

- In light of the evidence before the agency, OFAC did not credit Hejeij's claim "that he has never knowingly had any sort of relationship with Hizballah."  *Id.* at 0002 (noting finding that Hejeij met with Hizballah finance official in 2013 and helped Hizballah obscure its money laundering activities); *see also id.* at 0010.

- The audits of MEAB relied on by Hejeij were not exculpatory.  *Id.* at 0002.

---

[17] Accordingly, Hejeij is mistaken in claiming that "OFAC provides no unclassified summaries" in connection with its denial decision.  Pl.'s Opp. at 38; *see also id.* at 39 (claiming, incorrectly, that "OFAC has not supplemented this disclosure with any unclassified summaries").

- The agency rejected Hejeij's characterization of his commercial ventures in Iraq,
  including Global Cleaners.  *Id.*; *see also id.* at 0013-14.

- Hejeij facilitated a relationship and collaborated with Tabaja for the benefit of Hizballah.
  *Id.* at 0002; *see also id*. at 0013.

- Hejeij provided false or misleading information to the agency, specifically with respect to
  Hejeij's role at MEAB and his current relationship with the bank.  *Id.* at 0003, 0006,
  0010-11; *see also id.* at 0032 (notifying Hejeij that providing such information would
  constitute a basis to deny his petition).

The unclassified portions of the record thus provide Hejeij "a basis from which to
understand his designation," *Zevallos*, 10 F. Supp. 3d at 131, consistent with any obligations
OFAC may owe Hejeij under the Fifth Amendment.

### 4.      Hejeij Has Had A Meaningful Opportunity To Contest The Propriety And Adequacy Of The Evidence Relied On By OFAC

In their motion, Defendants explained that OFAC's decision also comports with due
process because the agency provided Hejeij a meaningful opportunity to contest his designation.
Defs.' Mem. at 34-35 (describing Hejeij's multiple submissions to OFAC and continued ability
to challenge the agency's decision).  In response, Hejeij relies primarily on his notice-based
arguments, *see* Pl.'s Opp. at 34-36, which fail for the reasons described above.  The fact remains
that Hejeij may attempt to rebut any of the findings disclosed in the evidentiary memoranda, the
underlying exhibits, the unclassified summaries, or OFAC's letter.  For example, Hejeij could
explain to OFAC the basis for his intimate familiarity with Hizballah's funding mechanisms, *see*
A.R. at 0002, as he has attempted to do in his brief, *see* Pl.'s Opp. at 21 (suggesting Hejeij
"might have received such knowledge wholly as a result of his high-profile position in
Lebanon's financial and commercial sectors").  And he can be forthcoming about his current

relationship with MEAB, particularly now that he knows OFAC has information that he "continues to oversee the day-to-day operations at [the bank]." A.R. at 0003. Further, Hejeij may "fil[e] new delisting requests, meaning that he can make any new arguments that occur to him and reiterate and expand any arguments he felt received short shrift on Treasury's last review." *See Zevallos*, 793 F.3d at 116-17. Due process, as Hejeij seems to acknowledge, requires nothing more. *See* Pl.'s Opp. at 33 ("Due process requires that designated parties have an opportunity to present rebuttal evidence or otherwise negate claims that they meet the legal criteria for designation." (citing *Nat'l Council of Resistance of Iran*, 251 F.3d at 209)).

Thus, even if the Court were to reach the merits of Count III and Count V of the Amended Complaint, it should grant summary judgment in favor of Defendants pursuant to Rule 56.

## IV.    OFAC Has Provided Hejeij Sufficient Notice Under The APA

Hejeij recasts his notice-based argument as claims under the APA, Pl.'s Opp. at 43-45, suggesting that he is entitled to a "full understanding as to the factual bases for his designation and for OFAC's denial decision[,]" including classified and privileged information, *id.* at 44. However, a plaintiff is not entitled to access classified and law enforcement privileged materials simply because he has alleged a cause of action under 5 U.S.C. § 706. *See, e.g.*, *Holy Land Found.*, 333 F.3d at 162, 164 (rejecting claim that re-designation decision was arbitrary and capricious, and affirming that agency need not disclose classified information); *Sulemane*, 2019 WL 77428, at *7 ("The [APA] does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting those grounds [for denying his delisting petition.]"); *Kadi*, 42 F. Supp. 3d at 24 (holding substantial evidence supported OFAC's decision, and affirming that designated individual was not entitled to classified information).

Instead, the APA requires only that an agency "'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made' to allow [a reviewing court] to evaluate the agency's decision-making process." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013) (quoting *State Farm*, 463 U.S. at 43). "[A]n agency's decision [need not] be a model of analytic precision to survive a challenge," and "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Frizelle*, 111 F.3d at 176 (citations omitted). OFAC has more than met this requirement, for the reasons discussed in Section III.B, *supra*. And Hejeij's assertion that he "is in no position to meaningfully utilize the reconsideration procedures provided to him as a matter of law and to challenge his designation or the denial of his delisting petition[,]" Pl.'s Opp. at 44-45, is belied by his prior fulsome submissions to OFAC, A.R. at 0033-88, 0256-91, as well as persuasive precedent, *Sulemane*, 2019 WL 77428, at *7 (holding OFAC's three-page letter—which "included four paragraphs describing the reasons for OFAC's decision"—provided adequate notice under the APA, notwithstanding agency's refusal to disclose classified or law enforcement privileged information).

The Court should therefore dismiss Count IV and Count VI of the Amended Complaint pursuant to Rule 12(b)(6) or, in the alternative, grant summary judgment to Defendants pursuant to Rule 56.

## CONCLUSION

For the foregoing reasons, the Court should deny Hejeij's cross-motion and grant Defendants' motion to dismiss or, in the alternative, for summary judgment, and enter judgment in favor of Defendants on all claims.

Dated January 3, 2020                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

Counsel for Defendants