**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KASSEM HEJEIJ,    ) | |
| )  | |
| )  | |
| Plaintiff,    )  | |
| )  | |
| v.    )   | Civil Action No. 1:19-01921 (TFH) |
| )   | |
| ANDREA M. GACKI, *et al.*,    )  | |
| )  | |
| Defendants.    )  | |
| )  | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………………...1

BACKGROUND …………………………………………………………………………3

    I.     Statutory and Regulatory Background ……………………………………………3

    II.    Statement of Facts …………………………………………………………...6

        A.    Hejeij's Designation by OFAC ……………………………………………...6

        B.    Hejeij's Delisting Petition …………………………………………………...7

        C.    Hejeij's Complaint …………………………………………………………10

        D.    OFAC's Denial of Hejeij's Delisting Petition ……………………………10

        E.    OFAC's Provision of the Administrative Record …………………………..12

        F.    Hejeij's Amended Complaint ………………………………………………17

LEGAL STANDARDS …………………………………………………………………18

    I.     Summary Judgment Standard ………………………………………………18

    II.    Motion to Dismiss Standard …………………………………………………18

DISCUSSION …………………………………………………………………………...19

    I.     Defendants' Denial of Hejeij's Delisting Petition Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act …...19

    II.    Defendants' Failure to Issue a Decision on Hejeij's Request to Enter into a Terms of Removal Agreement Constitutes Unreasonable Delay in Violation of the Administrative Procedure Act …………………………………………...25

    III.   Defendants Failed to Provide Hejeij with Adequate Notice of the Reasons for His Designation Under E.O. 13224 or the Reasons for OFAC's Denial of His Delisting Petition in Violation of His Due Process Rights Under the Fifth Amendment to the U.S. Constitution …………………………………………………...30

        A.    Defendants Violated Hejeij's Due Process Rights by Failing to Provide Adequate Notice of Their Decisions to Designate Him Under E.O. 13224 and to Deny His Delisting Petition ………………………………………31

    i.  Defendants Failed to Provide Adequate Notice of the Reasons for Their Designation of Hejeij Under E.O. 13224 …………………..33

    ii.  Defendants Failed to Provide Adequate Notice of the Reasons for Their Denial of Hejeij's Delisting Petition ………………………38

  B.  Hejeij Has Alleged Sufficient Contacts to the United States to Merit a Constitutional Right to Due Process …………………………………..40

IV. Defendants Failed to Provide Hejeij with Sufficient Notice of the Reasons for His Designation Under E.O. 13224 or the Reasons for OFAC's Denial of His Delisting Petition in Violation of the Administrative Procedure Act ………………………43

CONCLUSION ……………………………………………………………………………45

# TABLE OF AUTHORITIES

**CASES**                                                 **PAGE(S)**

*Aktieselskabet v. Fame Jeans*, 525 F.3d 8 (D.C. Cir. 2008) ………………………………………19

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,

    686 F.3d 965 (9th Cir. 2012) …………………………………………………………..33, 35, 36

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ………………………………………...18

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) ……………………………………………18

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,

    419 U.S. 281 (1974) …………………………………………………………………...19

*Bridges v. Wixon*, 326 U.S. 135 (1945) ………………………………………………………..40

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) …………………………………………..18

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) …………………………..19

*Carter v. George Washington Univ.*, 387 F.3d 872 (D.C. Cir. 2004) ……………………………18

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ………………………………19

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) ……………………………………………..25

*Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) …………………………………..31, 32, 33, 35, 37

*Fares v. Smith*, 249 F. Supp. 3d 115 (D.D.C. 2017) …………………………………………...31

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017) …………………………………………18

*Holy Land Found. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) …………………………………20

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012) ………………………………………18, 40, 42

*Kiareldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001) …………………………………………...32, 37

*King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*,

    330 F. Supp. 3d 477 (D.D.C. 2018) ……………………………………………………18

*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) ……………………………………………40

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,

    826 F.3d 492 (D.C. Cir. 2016) ……………………………………………………....18

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ……………………………………………………31

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

    463 U.S. 29 (1983) ……………………………………………………………19, 22, 24

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*,

    251 F.3d 192 (D.C. Cir. 2001) ……………………………………31, 33, 34, 40, 42

*Plyler v. Doe*, 457 U.S. 202 (1982) ……………………………………………………………40

*Roelofs v. Sec. of the Air Force*, 628 F.2d 594 (D.C. Cir. 1980) …………………………………43

*Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) …………………………………40

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) …………………………………………………20

*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006) ………………………………....19

*Telecommunications Research Action v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ………………25, 26

*Tourus Records v. DEA*, 259 F.3d 731 (D.C. Cir. 2001) …………………………………....43, 44

*Williams-Jones v. LaHood*, 656 F. Supp. 2d 63 (D.D.C. 2009) …………………………………..18

*Wong Wing v. United States*, 163 U.S. 228 (1896) ……………………………………………40

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ……………………………………………………40

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014),

    *aff'd* 793 F.3d 106 (D.C. Cir. 2015) …………………………………....18, 28, 29, 32, 35

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) ……………………………………………36

**STATUTES**

50 U.S.C. § 1701 …………………………………………………………………………..3

50 U.S.C. § 1702 …………………………………………………………………………..3

**REGULATIONS**

31 C.F.R. § 501.807 …………………………………………………………..5, 6, 7, 43, 44

31 C.F.R. § 594.101 ……………………………………………………………………….5

31 C.F.R. § 594.201 …………………………………………………………4, 5, 6, 26, 27

31 C.F.R. § 594.204 …………………………………………………………...5, 6, 26

**RULES**

Fed. R. Civ. P. 12(b)(6) …………………………………………………………..18

Fed. R. Civ. P. 56(a) ……………………………………………………….......17

**OTHER AUTHORITIES**

Exec. Order 13224 ……………………………………………………….*passim*

# INTRODUCTION

Kassem Hejeij is a reputable Lebanese businessman who was designated by the United States Department of the Treasury's Office of Foreign Assets Control's ("OFAC") decision to designate him pursuant to Executive Order ("E.O.") 13224. That designation turned Hejeij into an international pariah overnight. Prior to the designation, Hejeij successfully led a number of commercial ventures, including Middle East and Africa Bank ("MEAB"), a private Lebanese financial institution. As a result of his designation, however, Hejiej was forced to divest his ownership in his own companies and renounce his ownership and control over MEAB.

In hopes of mitigating the substantial harm done from OFAC's erroneous designation, Hejeij sought administrative reconsideration of his designation arguing that there was an insufficient basis for his designation, and that the circumstances had changed so as to negate the basis for his designation. Specifically, and because his designation appeared to be wholly based on his relationship with MEAB, Hejeij contended that his divestment from MEAB and his resignation as its chief officer evidenced a fundamental change in circumstances negating the basis for designation. Hejeij sought to answer any questions posed by OFAC regarding his purported relationships with certain individuals and entities, including through supporting documentation. Where Hejeij believed that he lacked sufficient understanding as to the reasons for his designation, he requested that OFAC disclose the administrative record underlying the designation, as well as any additional material that would help him gain a full understanding as to OFAC's allegations. And, in a show of good-faith, Hejeij sought to enter into a terms of removal agreement with OFAC under which he proposed measures he would undertake in exchange for a rescission of his designation and the removal of his name from the OFAC sanctions list.

For years, the sole notice afforded to Hejeij as to the reasons for his designation came in the form of OFAC's press release announcing the designation—a document whose purpose is to provide notice to affected parties. When requested to release the administrative record underlying the designation, OFAC delayed its disclosure, only issuing an unclassified version of that record under threat of litigation. When it did finally release the record, all substantive portions of the administrative record relating to the reasons for Hejeij's designation—including the agency's findings, conclusions, and supporting evidence—were entirely redacted. OFAC's subsequent provision of unclassified summaries of classified or otherwise privileged information contained in the administrative record was similarly unavailing, as these summaries failed to disclose whether the allegations they contained related to the bases for Hejeij's designation or whether they constituted the sum of the reasons for his designation.

Despite having an incomplete understanding as to the reasons for his designation, Hejeij provided information and supporting documentation showing that his designation was without merit or that there had been a change in circumstances. OFAC failed to render a decision in light of that information. Indeed, it was only following institution of this instant lawsuit that OFAC finally took action and denied Hejeij's delisting petition.

OFAC's denial decision, however, is fatally flawed. First, OFAC redacted substantial portions of this administrative record as well, including those identifying the reasons for OFAC's determination that Hejeij's delisting petition should be denied. These redactions—without alternative mechanisms by which to provide Hejeij notice of OFAC's action—inhibit, if not entirely bar, Hejeij from meaningfully contesting OFAC's denial decision, as Hejeij lacks any meaningful access to OFAC's findings, conclusions, and supporting evidence in support of the decision. Second, based on what limited disclosures have been made to Hejeij, OFAC's bases for

its denial decision appear to constitute arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"). Specifically, OFAC's denial decision discounts countervailing evidence on the most spurious of bases, while simultaneously crediting OFAC's own evidence in favor of denial without any reasoned basis to do so.

Finally, OFAC failed to respond to Hejeij's request to enter into a terms of removal agreement or to even treat that request as one triggering an agency proceeding under which OFAC was obliged to render a decision and an administrative record in support of that decision.

For these reasons, and those discussed below, the Court should grant summary judgment in favor of Hejeij and deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

#### A.   *International Emergency Economic Powers Act*

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, is the statutory basis for most U.S. economic sanctions administered by Defendants, including those imposed under E.O. 13224 and the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594. IEEPA authorizes the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). IEEPA provides the President the power to "regulate, . . . prevent or prohibit, . . . [any] dealing in, . . . or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

3

B.      *Executive Order 13224*

On September 23, 2001, in response to the September 11 attacks on the United States, the President issued Executive Order 13224 to deal with "grave acts of terrorism and threats of terrorism committed by foreign terrorists . . . and the continuing and immediate threat of further attacks on United States nationals or the United States." Exec. Order 13224, 66 FED. REG. 49079 (Sept. 23, 2001). E.O. 13224 imposed blocking sanctions on the foreign persons identified in its Annex. *Id*., § 1(d)(1). It also authorized designation of persons determined, *inter alia*, "to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to [E.O. 13224] or determined to be subject to [E.O. 13224]." *Id*., § 1(d)(2). This included authorizing designation of persons determined to be "otherwise associated" with persons subject to sanctions under E.O. 13224. *Id*. These sanctions block (or "freeze") all property subject to U.S. jurisdiction in which a person designated under E.O. 13224 has an interest, and U.S. persons are generally prohibited from engaging in transactions with these blocked persons. *Id*. § 1(c).

C.      *Global Terrorism Sanctions Regulations*

The Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, implement the provisions of E.O. 13224 and provide additional rules, definitions, and interpretive guidance regarding the scope of E.O. 13224's prohibitions. The GTSR impose blocking sanctions on any person determined, *inter alia*, "to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, . . . any person whose property or interests in property are blocked pursuant to [31 C.F.R. § 594.201(a)]." 31 C.F.R. § 594.201(a)(4)(i)(B). It further imposed blocking sanctions on any person "otherwise associated" with a person whose property and interests in property are blocked by the GTSR. *Id*., at § 594.201

4

(a)(4)(ii). Under the GTSR, U.S. persons are prohibited from engaging in transactions or dealings involving blocked property, including, for instance, by providing funds, goods, or services to or for the benefit of a blocked person or by receiving funds, goods, or service from a blocked person. 31 C.F.R. § 594.204(a), (b).

Persons designated under E.O. 13224 are known as Specially Designated Global Terrorists and are identified on OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List") with the program tag "[SDGT]." NOTE 2 to 31 C.F.R. § 594.201(a). Designated or blocked persons can seek administrative reconsideration of their designations pursuant to OFAC's delisting procedures, which are incorporated into the GTSR by 31 C.F.R. § 594.101. *See* NOTE 3 to 31 C.F.R. § 594.201(a). The GTSR also incorporate the recordkeeping and reporting requirements and license application and other procedures identified in the Reporting, Procedures and Penalties Regulations, 31 C.F.R. Part 501. 31 C.F.R. § 594.101.

### D.    OFAC's Delisting Procedures

OFAC publishes procedures by which parties identified on the SDN List can seek delisting. 31 C.F.R. § 501.807. Under these procedures, designated persons may seek administrative reconsideration of their designation or argue that the circumstances resulting in the designation are no longer applicable and can seek rescission of their designation. *Id*. To do so, designated parties "may submit arguments or evidence that the person establishes that insufficient basis exists for the designation" and can also "propose remedial steps . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a).

OFAC will review information provided by the designated person, and OFAC has the discretion to request "clarifying, corroborating, or other additional information" relevant to its

reconsideration of the person's designation. 31 C.F.R. § 501.807(b). Following this review, OFAC will provide a written decision to the designated person. 31 C.F.R. § 501.807(d).

## II.   STATEMENT OF FACTS

### A.   *Hejeij's Designation by OFAC*

On June 10, 2015, OFAC designated Hejeij pursuant to E.O. 13224 for allegedly providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah, an entity blocked by E.O. 13224. Notice, Sanctions Actions Pursuant to Exec. Order 13224, U.S. Dep't of Treasury, Office of Foreign Assets Control, 80 FED. REG. 34791 (June 17, 2015). OFAC issued a press release announcing the designation. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Hizballah Front Companies and Facilitators in Lebanon and Iraq (June 10, 2015); Admin. Record ("AR") 0020-0021. This press release alleged Hejeij "maintains direct ties to Hizballah organizational elements." OFAC;s allegations of Hejeij's direct ties to Hizballah organization elements included "his support to Adham Tabaja and his affiliated companies in Iraq," his assistance "open[ing] bank accounts for Hizballah in Lebanon and provid[ing] credit to Hizballah procurement companies," and "invest[ment] in infrastructure that Hizballah uses in both Lebanon and Iraq." *Id.*

As a result of his designation, all of Hejeij's property and interests in property subject to U.S. jurisdiction are blocked. 31 C.F.R. § 594.201. All entities in which Hejeij owns a 50 percent or greater interest are also blocked. 31 C.F.R. § 594.412. U.S. persons are also prohibited from transacting or dealing with Hejeij or entities in which Hejeij maintains a 50 percent or greater ownership interest. 31 C.F.R. § 594.204. In addition, persons determined to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or

services to or in support of, Hejeij are subject to blocking sanctions under E.O. 13224, as amended by E.O. 13886. *See* Exec. Order 13886, 84 FED REG. 48041 (Sept. 9, 2019).

      B.      *Hejeij's Delisting Petition*

On October 2, 2017, Hejeij filed a request for reconsideration with OFAC seeking the rescission of his designation under E.O. 13224 and the removal of his name from the SDN List. AR 0022-0026. This delisting request was made pursuant to 31 C.F.R. § 501.807. AR 0022. On October 11, 2017, OFAC sent notice that it had received this delisting request and had assigned the matter Case ID SDGT-12284. AR 0027-0028.

In order to rebut those allegations serving as a basis for designation, Hejeij simultaneously requested that OFAC disclose the administrative record underlying its decision to designate Hejeij pursuant to E.O. 13224. AR 103-109. Hejeij noted that OFAC was obliged to disclose—at the very least—the unclassified administrative record on which it relied in taking its designation action. AR 104. Further, to the extent that the unclassified administrative record failed to adequately apprise Hejeij as to the full bases for his designation, Hejeij requested an unclassified summary of classified or otherwise privileged information contained in the administrative record or his counsel's review of the full administrative record. AR 105-107. OFAC acknowledged receipt of this request for the administrative record on October 11, 2017 and assigned the matter the same Case ID SDGT-12284. AR 0027.

On March 12, 2018, OFAC sent Hejeij a questionnaire seeking information and documents relevant to its reconsideration of Hejeij's designation. AR 0029-0032. On June 8, 2018, Hejeij submitted responses to OFAC's questionnaire, including supporting documentation evidencing those responses. AR 0033-0088. In this response, Hejeij noted that he had tendered his resignation in MEAB and divested his ownership interests therein. AR 0044. Hejeij stated that he no longer

held a relationship with MEAB and that all communications with the bank occur through legal representatives. AR 0045. Hejeij further noted that—following his designation—Hejeij divested from all companies in which he maintained an ownership interest. AR 0045. Hejeij stated that he believed his designation was based on his ties to MEAB and that—as a result—his resignation from, and the divestment of his interests in, MEAB effectuated a change in circumstances meriting rescission of his E.O. 13224 designation. AR 0052-0053.

On April 19, 2018, OFAC sent Hejeij the unclassified administrative record underlying his E.O. 13224 designation. AR 0309-0315, 0387-0512. This unclassified administrative record redacted all substantive portions of the administrative record, including those sections of the record outlining the basis for Hejeij's designation. *See* AR 0311-0314, 0391-0394. The sole information relevant to Hejeij's delisting request disclosed by the unclassified administrative record was the legal criterion under which Hejeij was designated. AR 0394. For this reason, Hejeij sent a letter to OFAC on June 11, 2018 requesting disclosure of an unclassified summary of classified or otherwise privileged information contained in the record, including specific information regarding the bases for his designation. AR 0161, 0163-0165.

On June 11, 2018, Hejeij sent OFAC a letter requesting entrance into a terms of removal agreement that would condition OFAC's rescission of Hejeij's designation on any number of negotiated stipulations. AR 0167, 0169-0172. OFAC did not respond to this request.

On October 18, 2018, OFAC sent Hejeij a non-privileged and unclassified summary of information regarding the basis for Hejeij's designation. AR 0027-0029, 0377-0379. On November 28, 2018, OFAC supplemented this unclassified summary with additional information regarding the basis for Hejeij's designation. AR 0230-0232, 0374-0376.

8

On February 22, 2019, Hejeij provided OFAC with supplemental responses to its March 12, 2018 Questionnaire, including information and documents responsive to OFAC's unclassified summaries. AR 0256-292. In this submission, Hejeij stated while MEAB had provided banking facilities to Global Cleaners during his tenure as the bank's chairman, Hejeij did not otherwise have any relationship with Global Cleaners, including as an owner of Global Cleaners as alleged by OFAC. AR 0259-0260. In support of this, Hejeij provided OFAC with commercial registry document evidencing all of Global Cleaners' current and historical shareholders, as well as the minutes from a board meeting of Global Cleaners in August 2013. Both documents were obtained from the Commercial Register in the District of Mount Lebanon, and neither evidenced Hejeij's name as a shareholder or otherwise. AR 0268-0278; AR 0280-0282. In addition, Hejeij noted that his relationship with Adham Tabaja was limited to "facilitating a customer relationship . . . on behalf of MEAB" while he was chairman of MEAB and that this relationship had terminated by virtue of the fact that he was no longer involved with MEAB. AR 0262-0263.

On March 13, 2019, Hejeij sent OFAC a letter seeking clarification from OFAC regarding disclosures made in its unclassified summaries so that he fully understands the bases for his designation and is in a position to meaningfully respond to it. AR 0293-0295, 0370-0373. OFAC responded to this letter by noting that the information disclosed to Hejeij constituted all "releasable information contained in the administrative record" at the time. AR 0338, 0369.

C.    *Hejeij's Complaint*

Due to OFAC's failure to issue a decision on his delisting petition, Hejeij filed a complaint challenging OFAC's unreasonable delay under the APA. 5 U.S.C. § 706(1); Compl., ¶ 29-32. In addition, the Complaint alleged that OFAC's maintenance of Hejeij's designation constituted arbitrary and capricious agency action under the APA and that OFAC's failure to apprise Hejeij

as to the reasons for his designation violated his Fifth Amendment right to due process. Compl., ¶ 33-39.

The Complaint sought declaratory and injunctive relief from this Court. Requested relief included, *inter alia*, an order rescinding Hejeij's designation under E.O. 13224; an order requiring OFAC issue a written decision with respect to Hejeij's delisting request; and an order requiring Defendants to disclose an unclassified summary of classified or otherwise privileged information contained in the administrative record. Compl., Relief Requested.

D.    *OFAC's Denial of Hejeij's Delisting Petition*

On August 29, 2019, prior to filing a responsive pleading to Hejeij's complaint, OFAC issued a decision on Hejeij's delisting petition. AR 0001-0003. OFAC denied Hejeij's request for the rescission of his designation and removal from the SDN List, finding that Hejeij "ha[d] not put forth arguments or evidence establishing that an insufficient basis exists for his designation or that the circumstances resulting in the designation are no longer applicable." AR 0001. OFAC identified a series of grounds for its denial decision. AR 0001-0003.

First, OFAC stated its determination that Hejeij "failed to provide sufficient evidence that he no longer provides support and services to Hizballah." AR 0001. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████    For this reason, OFAC held that it had "reason to believe that [Hejeij's] support and services [to Hizballah] had not ceased." AR 0002.

Second, OFAC stated that it had "evidence in its possession that undermines [Hejeij's] claim that he has never knowingly had any sort of relationship with Hizballah." AR 0002. OFAC

10

found that Hejeij "met with a Hizballah finance official in 2013 and agreed to make changes to bank accounts held by individuals, entities, and charitable institutions affiliated with Hizballah in order to hide the ties between money laundering activities and Hizballah." *Id*. According to OFAC, Hejeij's denials as to his alleged support to Hizballah "undermines his overall credibility." *Id*.

Third, OFAC found Hejeij's claims regarding audits conducted at Middle East Africa Bank "unpersuasive," as those audits focused "on the financial position and performance of MEAB . . . at a time when [Hejeij] allegedly had no relationship with MEAB." *Id*. For this reason, according to OFAC, the audit reports "did not assess [Hejeij's] behavior, and thus did not indicate that [Hejeij] did not engage in the conduct outlined by OFAC." *Id*.

Fourth, OFAC concluded that Hejeij had "downplayed his commercial ventures in Iraq, including his involvement with Global Cleaners S.A.R.L." AR 0002. While acknowledging that Hejeij's name did not appear on the corporate record documents for Global Cleaners, OFAC stated that it had information indicating that Hejeij "was an owner of Global Cleaners [], which provided millions of dollars per year to Hizballah." *Id*. In addition, OFAC disputed Hejeij's claims that MEAB opened branches in Iraq for purely commercial purposes, arguing that it had "reason to believe that [Hejeij] opened the Iraqi MEAB branches for reasons other than advancing innocuous commercial interests." *Id*.

Fifth, despite Hejeij's claims that his relationship with Adham Tabaja was an indirect business relationship while he was head of MEAB, OFAC stated that this "does not diminish the fact that he was personally involved in facilitating a customer relationship with Adham Tabaja" and instead "demonstrate that [Hejeij] collaborated closely with Adham Tabaja, a Hizballah member and financier, for the benefit of Hizballah . . ." AR 0002. OFAC stated that it had reached

this conclusion notwithstanding Hejeij's claims that his relationship with Tabaja was strictly professional and occurred prior to Tabaja's designation under E.O. 13224. *Id*.

Sixth and finally, OFAC stated that it "ha[d] reliable evidence in its possession contradicting [] assertions" that his position with MEAB "was mostly ceremonial" and that Hejeij "did not have authority to extend credit unilaterally at the institution." AR 0003. Further, OFAC stated that it had information in its possession contradicting Hejeij's claims that he no longer has a relationship with MEAB and has not had such relationship since the time of his designation, including information that, "as of 2018, [Hejeij] continued to use MEAB on behalf of Hizballah." *Id*. In addition, according to OFAC, Hejeij "continues to oversee the day-to-day operations at MEAB" and that the alleged change in management was "designed to circumvent sanctions." *Id*.

### E.    *OFAC's Provision of the Administrative Record*

On October 4, 2019, Defendants provided Hejeij with an unclassified administrative record underlying its decision to deny Hejeij's delisting petition. AR 0001-0512. This record included, *inter alia*, a redacted version of the evidentiary memorandum relied upon by OFAC in denying Hejeij's delisting petition, as well as exhibits attached to that memorandum. *Id*. OFAC's evidentiary memorandum states that the information contained therein "establishes a reason to believe that the basis for Hejeij's designation continues to exist and, therefore, the circumstances continue to warrant the blocking of Hejeij's property and/or interests in property." AR 0005.

Section III of the evidentiary memorandum is titled "Basis for Denial of Request" and provides OFAC's reasons for denying Hejeij's delisting petition. AR 0007. Due to the reasons discussed in Section III of the evidentiary memorandum, OFAC states that it "has reason to believe that Hejeij continues to maintain relationships with Hizballah, and that Hejeij was not truthful with OFAC when he claimed to have distanced himself from dealings with MEAB." *Id*. For this reason,

according to OFAC, the agency "has reason to believe that the circumstances which led to Hejeij's designation continue to exist." *Id*.

OFAC's evidentiary memorandum identifies a number of bases for this conclusion. ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Thirteen of the fourteen paragraphs identifying OFAC's findings and/or evidence with respect to this conclusion are redacted in the version provided to Hejeij. AR 0008-0010. The sole unredacted portion of this subsection states that the redacted portions "demonstrate that Hejeij was untruthful with OFAC" when he stated that "he 'does not have and has never knowingly had a relationship with Hizballah.'" AR 0010.

Second, OFAC's evidentiary memorandum identified "[a]dditional information on Hejeij's continued relationship with MEAB and [his] provision of financial, material, or technological support for, or financial or other services to or in support of, Hizballah." AR 0010. Five of the six paragraphs identifying OFAC's related findings and evidence are entirely redacted in the version of the administrative record provided to Hejeij. AR 0010-0011. The sole unredacted portion of this subsection states that the information provided therein "shows that Hejeij was not truthful with OFAC when Hejeij stated that he 'does not maintain any current relationship with [MEAB]' and that 'upon his resignation and the transfer of his ownership interest in MEAB, he ceased his relationship with the bank.'" AR 0011. Further, the sole unredacted portion of this subsection states that the information provided therein "demonstrates that Hejeij continued to provide financial, material, or technological support for, or financial or other services to or in support of, Hizballah subsequent to his designation on June 10, 2015." *Id*.

Third, OFAC's evidentiary memorandum dismisses "[o]ther arguments raised by Hejeij" to show why it determined that the rescission of his designation is not warranted. AR 0011-0014. OFAC responds to these arguments in the following manner:

- In response to Hejeij's argument that OFAC failed to provide him a meaningful opportunity to respond to the allegations underlying his designation, OFAC states that it "provided Hejeij with a non-privileged, unclassified summary of the classified and/or privileged information contained in his administrative record over the course of two letters," which included information from each exhibit forming the basis for his designation. AR 0011. OFAC further states that these summaries "constituted the extent of the releasable information contained in the administrative record." AR 0011-0012.

- With respect to Hejeij's argument that he could not unilaterally extend credit to because MEAB's credit committee and compliance department would vet and approve loan applications prior to Hejeij's final approval, OFAC states that "knowledge of . . . MEAB's operating procedures are not germane to the basis for th[e] denial…" AR 0012. OFAC then states that the basis of the denial is "predicated on 1) Hejeij's ongoing provision of financial, material, or technological support for, or financial or other services to or in support of, Hizballah . . . and 2) Hejeij's provision of false information regarding his relationship with MEAB." *Id.*

- OFAC views as "not germane to the basis for th[e] denial" the fact that MEAB terminated loans to certain U.S.-designated parties immediately following their designations by OFAC and that MEAB's provision of such loans did not constitute sanctionable activity at the time in which those loans were extended. *Id.* According

14

to OFAC, however, these loans "did not factor into any part of the basis for Hejeij's initial designation" and further "do not comprise any part of the basis for this denial." *Id*.

- OFAC states that Hejeij's provision to OFAC of a corporate registry document and board meeting minutes relating to Global Cleaners does not demonstrate that OFAC's claims regarding Hejeij's ties to Global Cleaners are erroneous. AR 0012-0013. According to OFAC, the August 2013 board meeting minutes "are not germane to the use of information regarding Hejeij's affiliation with Global Cleaners in the basis for Hejeij's initial designation." AR 0013. In addition, OFAC contends that the corporate registry document "does not correctly reflect 'all persons that have maintained an ownership share in, or a formal position with' the company," as Adham Tabaja's name does not appear in the document even though—in OFAC's view—Tabaja is known to have held a stake in Global Cleaners. *Id*. Further, OFAC states that the apparent use of a proxy for Tabaja "casts doubt on Hejeij's claim that no individual on the document acted as an agent or nominee for Hejeij." *Id*. In any event, OFAC finds that "Hejeij's association with and provision of financial benefit to Hizballah via Global Cleaners is but one of many discrete pieces of evidence utilized to support Hejeij's initial designation and is not determinative" as to whether Hejeij continues to meet E.O. 13224's designation criteria. *Id*.

- With respect to Hejeij's contention that his relationship with Adham Tabaja "was solely through Hejeij's role as MEAB chairman and that MEAB only provided Tabaja and Tabaja's companies banking facilities consistent with MEAB's internal

procedures," OFAC states that "the precise nature of Hejeij's relationship with Tabaja is irrelevant…" AR 0013. This is because, according to OFAC, Hejeij's purported admission of a relationship "demonstrate[s] that Hejeij collaborated closely with Tabaja. . ." AR 0013.

- With respect to Hejeij's arguments that his travel to Iraq was for the purpose of overseeing the opening of MEAB branches in Baghdad and Basra to serve an expanding customer base in Iraq, OFAC redacted all of its reasons for dismissing those arguments. AR 0013-0014.

- OFAC states that Hejeij's failure to recollect an alleged meeting with a Hizballah official in mid-2013 "does not mean that such a meeting did not occur." AR 0014. Further, OFAC stated that it regards Hejeij's failure to recollect the purported meeting as "self-serving and unpersuasive given Hejeij's stated ability to recall the details of his travel to Iraq in 2013." *Id*.

- With respect to Hejeij's assertion of a change of circumstances negating the basis for his designation, OFAC states that information contained in the record "contradicts both Hejeij's assertion that he has distanced himself from MEAB and that circumstances have changed such that the basis for Hejeij's designation has been negated." *Id*. According to OFAC, Hejeij "continue[s] to be involved with MEAB" and "continued to provide support or services to Hizballah subsequent to his designation." *Id.*

      F.    *Hejeij's Amended Complaint*

Following OFAC's denial of his delisting petition and its release of the administrative record underlying that decision, Hejeij filed an Amended Complaint challenging Defendants'

actions. Am. Compl., ECF No. 6. The Amended Complaint challenged Defendants' denial of Hejeij's delisting petition as constituting arbitrary and capricious agency action in violation of the APA. Am. Compl., ¶ 56-59. Hejeij's Amended Complaint also challenged Defendants' failure to respond to Hejeij's request to enter into a Terms of Removal Agreement, alleging that this constituted unreasonable delay in violation of the APA. Am. Compl. ¶ 60-63. In addition, the Amended Complaint alleged that Defendants' failure to provide Hejeij with adequate notice of the reasons for his designation under E.O. 13224 or the reasons for their denial of his delisting petition violated his constitutional and administrative due process rights. Am. Compl., ¶ 64-79.

Hejeij's Amended Complaint sought declaratory and injunctive relief from the Court. Am. Compl., Requested Relief. The requested relief included, *inter alia*, an order requiring Defendants to rescind Hejeij's designation under E.O. 13224 and remove his name from the SDN List; an order requiring Defendants to rescind their denial of Hejeij's delisting petition; an order requiring Defendants to disclose a detailed statement of reasons regarding OFAC's decision to designate Hejeij under E.O. 13224 and to deny Hejeij's delisting petition or provide Hejeij's counsel access to the full administrative record behind both agency decisions; and an order requiring Defendants to issue a written decision with respect to Hejeij's request to enter into a terms of removal agreement. *Id*.

### III.   LEGAL STANDARDS

#### A.    *Summary Judgment Standard*

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the non-moving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v.*

17

*U.S. Dep't of Health and Human Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court may grant summary judgment if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the APA, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd* 793 F.3d 106 (D.C. Cir. 2015). Thus, summary judgment "serves as the mechanisms for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

### B.    Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Courts "must treat the complaint's factual allegations—including mixed questions of law and facts—as true and draw all reasonable inferences therefrom in the plaintiff's favor" when resolving a Rule 12(b)(6) motion. *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 67 (D.D.C. 2009). In order to survive a motion to dismiss, a complaint must state a facially plausible claim for relief. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007). A court "must not make any judgment about the probability

of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is remote

and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008).

## DISCUSSION

I.   **DEFENDANTS' DENIAL OF HEJEIJ'S DELISTING PETITION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

Courts reviewing agency action are required to set aside and hold unlawful agency action,

findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law. 5 U.S.C. § 706(2)(A). In reviewing agency action under the APA, a court

must determine, as a matter of law, whether "the evidence in the administrative record permitted

the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C.

2006). This includes, for instance, determining whether the agency "examine[d] the relevant data

and articulate[d] a satisfactory explanation for its action including a 'rational connection between

the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut.

Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371

U.S. 156, 168 (1962)). Even though an agency's decision may be entitled to a "presumption of

regularity," a court must conduct a "thorough, probing, in-depth review." *Citizens to Preserve

Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

When applying the "arbitrary and capricious" standard of review, a court must determine

whether "the agency relied on factors which Congress has not intended it to consider, entirely

failed to consider an important aspect of the problem, [or] offered an explanation for its decision

that runs counter to the evidence before the agency . . ." *Motor Vehicle Mfrs. Assn.*, 463 U.S. at

43. In conducting this review, a court "may not supply a reasoned basis for the agency's action

that the agency itself has not given." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,

419 U.S. 281, 285-86 (1974). Instead, a court must limit itself to judging the agency's action solely on the basis of the explanation offered by the agency itself. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that the court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). Courts apply this same standard of review to cases involving U.S. national security or foreign policy decisions, including OFAC designation actions. *See, e.g.*, *Holy Land Found. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (finding that a court must "review the agency record to determine whether the agency's decision was supported by a rational basis.").

OFAC concluded that "[t]he basis for Hejeij's designation continues to exist subsequent to his June 2015 designation by OFAC, and Hejeij was not truthful with OFAC when he stated that he ceased his relationship with MEAB." AR 0015. For this reason, OFAC determined that "the circumstances continue to warrant the blocking of his property and/or interests in property." *Id*. However, OFAC's findings and evidentiary support, as well as its reasoning from the evidence before it to reach its findings and conclusions, are arbitrary and capricious in violation of the APA.

OFAC first determined that Hejeij "failed to provide sufficient evidence that he no longer provides support and services to Hizballah" because—in a voluntary interview with U.S. law enforcement—Hejeij "provided details on Hizballah funding mechanisms and business connections," which "only a person having intimate familiarity with and ongoing access to senior elements of Hizballah would possess . . ." AR 0001. On this basis, OFAC determined that it had "reason to believe that [Hejeij's] support and services [to Hizballah] had not ceased." AR 0002. OFAC's line of reasoning, however, is nothing short of bizarre: ███████████████████████ ████████████████████████████████████████████████████ he "failed to provide sufficient evidence that he no longer provides support and services to Hizballah." AR

0001. The logical connection between these two findings is at best tenuous, entirely reliant on

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (emphasis added). ███████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████ ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

     However, ████████████████████████████████████████████████████████

████████████████████████████████████████████████ For example, Hejeij—

as founder and a former executive of a Lebanese financial institution—might have received such

knowledge wholly as a result of his high-profile position in Lebanon's financial and commercial

sectors. ███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

     In addition, even assuming *arguendo* that OFAC's assumption were a fair one (it is not), it

is unclear how "ongoing access to senior elements of Hizballah" rationally supports a

determination that Hejeij "failed to provide sufficient evidence that he no longer provides support

and services to Hizballah." AR 0001-0002. Access—in and of itself—does not signify that a

person is providing persons to whom they have access with support and services made sanctionable

under E.O. 13224, and OFAC provides no explanation as to how it can fairly equate such access with conduct made sanctionable under E.O. 13224. Where OFAC fails to "articulate[] a satisfactory explanation for its action," including findings and conclusions reached by the agency, it has acted arbitrary and capriciously in violation of the APA. *Motor Vehicle Mfrs. Assn. of U.S., Inc.*, 463 U.S. at 43.

OFAC also determined that Hejeij's denials regarding his alleged support to Hizballah "undermines his overall credibility," as OFAC has "evidence in its possession that undermines [Hejeij's] claim that he has never knowingly had any sort of relationship with Hizballah." AR 0002. In particular, according to OFAC, Hejeij "met with a Hizballah finance official in 2013 and agreed to make changes to bank accounts held by individuals, entities, and charitable institutions affiliated with Hizballah in order to hide the ties between money laundering activities and Hizballah." *Id*. OFAC stated that Hejeij's failure to recollect the purported meeting was "self-serving and unpersuasive given Hejeij's stated ability to recall the details of his travel to Iraq in 2013." AR 0014. Yet, Hejeij argued that no such meeting had occurred in fact and that—to the extent that OFAC had information indicating otherwise—OFAC should provide details of the purported meeting so that Hejeij could either confirm the meeting or offer rebuttal evidence demonstrating that no meeting had occurred. AR 0264. Hejeij sought that information because, for instance, Hejeij may have met with an individual whom OFAC believed to be connected to Hizballah but that such a connection was unknown to Hejeij. But Hejeij was unable to explore this possibility, as OFAC disclosed no further information. In any event, OFAC's finding that Hejeij's delisting petition should be denied because he failed to recollect a meeting with a Hizballah official in mid-2013 and thus lacked credibility is arbitrary and capricious, insofar as the factual predicate underlying OFAC's finding—i.e., that Hejeij failed to recollect the meeting and did not deny its

occurrence—was erroneous. In reviewing agency action under the APA, a court must determine whether "the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club*, 459 F. Supp. 2d at 90. Here, the evidence did not permit OFAC to make a finding regarding Hejeij's lack of credibility as OFAC failed to apprehend Hejeij's claim regarding the meeting with a purported Hizballah official for the purposes alleged by OFAC.

OFAC further found that Hejeij "downplayed his commercial ventures in Iraq, including his involvement with Global Cleaners []" AR 0002. OFAC stated that—despite Hejeij's provision of corporate record documents for Global Cleaners—it had information that nevertheless indicated that Hejeij "was an owner of Global Cleaners [], which provided millions of dollars per year to Hizballah." *Id*. In other words, OFAC received information and official documentation that evidenced Hejeij's lack of ownership, current or historical, in Global Cleaners and his lack of involvement otherwise with the company. AR 0012-0013. Rather than reassess its own evidence of Hejeij's ownership in Global Cleaners in light of this information, OFAC summarily concluded that its evidence supports its finding that Hejeij has "downplayed his . . . involvement with Global Cleaners." AR 0002.

Further, in its swift dismissal of the Global Cleaners documentation provided by Hejeij, OFAC states that because another individual may have used a proxy on the corporate documents, this "casts doubt on Hejeij's claim that no individual on the document acted as an agent or nominee for Hejeij." AR 0013. OFAC has no evidence supporting or even suggesting Hejeij used a proxy on the corporate documents, only its own speculation about the possible use of a proxy by a person other than Hejeij. In other words, OFAC concluded that because they believe someone else used a proxy that Hejeij also likely used a proxy and that rank speculation outweighs any official government documentation evidencing that Hejeij did not have any ownership or control over

Global Cleaners. By engaging in this speculation, OFAC views the absence of Hejeij's name on the corporate documents as not merely inconclusive with respect to Hejeij's involvement in Global Cleaners, but entirely irrelevant to the analysis. This summary disposal of evidence contradicting OFAC's allegations constitutes the essence of arbitrary and capricious agency action, as OFAC failed to "examine[] the relevant data and articulate[] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc.*, 463 U.S. at 43.

OFAC's findings also appear to contradict each other on occasion. For instance, OFAC found that "as of 2018, [Hejeij] continued to use MEAB on behalf of Hizballah." AR 0003. Yet, OFAC simultaneously found that Hejeij's provision of audit documents conducted at MEAB were "unpersuasive," as they focused "on the financial position and performance of MEAB . . . at a time when [Hejeij] allegedly had no relationship with MEAB." AR 0002. These audit documents should have been considered by OFAC if—irrespective of Hejeij's claims—OFAC believed Hejeij retained a position at MEAB and continued to use MEAB to support Hizballah. The audits may have undermined evidence of Hejeij's continued provision of support and services to Hizballah, as OFAC appears to allege that MEAB is the conduit through which Hejeij continues to provide that support and services. If the audits show that MEAB did not engage in those activities, however, then that would have provided an indication as to Hejeij's own conduct and rendered suspect the evidence in OFAC's possession. OFAC's failure to consider all the evidence before it and its contradictory findings regarding Hejeij's conduct constitute arbitrary and capricious agency action in violation of the APA. Indeed, OFAC has "entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency . . ." *Motor Vehicle Mfrs. Assn.*, 463 U.S. at 43.

Defendants argue that, "even if OFAC erred in its analysis of some of the evidence before it, . . . such error was [not] prejudicial." Def.'s Mot. at 22. Yet, there is no basis in the administrative record from which to conclude that—even if certain findings and conclusions by OFAC must be set aside as arbitrary and capricious—OFAC would still have denied Hejeij's delisting petition and left his designation intact. At the very least, the proper recourse is to remand the issue back to the agency so that it can make a determination as to whether any remaining findings or conclusions can lawfully sustain a denial of Hejeij's delisting petition.

## II.   DEFENDANTS' FAILURE TO ISSUE A DECISION ON HEJEIJ'S REQUEST TO ENTER INTO A TERMS OF REMOVAL AGREEMENT CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

Under the APA, agencies are obligated to render decisions on matters presented to them within a reasonable time. 5 U.S.C. § 555(b). If agencies unlawfully withhold or unreasonably delay agency action, including a decision on lawfully-made petitions, courts are required to compel the agency to take an action. 5 U.S.C. § 706(1). The APA grants jurisdiction to the courts to review such matters in order to ensure that agencies do not sit on petitions before them or fail to act altogether, as such failure only ensures "that the benefits of agency expertise and creation of a record will not be realized . . ." *Telecommunications Research Action v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984). Indeed, absent the APA's provision for review, "agencies could effectively prevent judicial review . . . by simply refusing to take final action." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).

When reviewing an unreasonable delay claim under the APA, the D.C. Circuit has set forth a multi-factor test to determine whether the complained-of agency inaction is contrary to the APA. *See Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001); *Telecommunications Research Action v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). This test demands: 1) that the time agencies take to make

decisions be governed by a "rule of reason;" 2) that if Congress has provided a timetable by which it expects agencies to act, this timetable give content to the "rule of reason;" 3) that delays affecting human health and welfare be "less tolerable" than those "in the sphere of economic regulation;" 4) that the consequence of "expediting delayed action on agency activities of a higher or competing priority" be considered; 5) that the nature of the interests prejudiced by agency delay be likewise taken into account; and 6) that the court have no need to find any "impropriety" by the agency in order to find that agency action has been unreasonably delayed. *Telecommunications Research Action*, 750 F.2d at 80 (internal citations omitted). While this standard is "hardly ironclad, . . . it nevertheless provides useful guidance in assessing claims of agency delay." *Id*.

In this case, application of the multi-factor test clearly shows that OFAC has acted with unreasonable delay in processing Hejeij's request to enter into a terms of removal agreement. First, OFAC was required to render a decision on Hejeij's request "within a reasonable time" under the APA, as Hejeij had requested "determination of an issue, request, or controversy in a proceeding" before the agency. 5 U.S.C. § 555(b). Hejeij petitioned OFAC to enter into a terms of removal agreement in June 2018—more than sixteen months prior to the date of the Amended Complaint. OFAC failed to issue a decision on Hejeij's request during that time.

Second, the implications of an OFAC designation affect Hejeij's livelihood and portend serious consequences for Hejeij's health and welfare. As a result of his designation, all of Hejeij's property and interests in property in the United States are blocked, and U.S. persons are prohibited from engaging in dealings with him. 31 C.F.R. §§ 594.201 and 594.204. Even more critically, all persons—U.S. or foreign—who assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, or are otherwise associated with, Hejeij fall within the scope of the criteria for designation and are thus themselves subject to risk

of being sanctioned. 31 C.F.R. § 594.201(a)(4)(i)(B) and (ii). This would capture any provision of services to Hejeij in Lebanon or elsewhere, rendering him a social and commercial pariah globally, including in his own country and community. As OFAC itself has stated with respect to designations, persons subject to U.S. sanctions face "professional, personal, and financial isolation" as a result. Press Release, U.S. Government Sanctions Organizations and Individuals in Connection with an Iranian Defense Entity Linked to Iran's Previous Nuclear Weapons Efforts, U.S. Dep't of Treasury, Office of Foreign Assets Control (March 22, 2019). These repercussions far surpass mere "economic regulation" and have dire impact on Hejeij's health and welfare.

Third, any order requiring OFAC to expedite its review of Hejeij's request would not cause undue impacts on the agency in the administration of its duties. As far as Hejeij is aware, OFAC has not even started a proceeding in which it may fairly consider Hejeij's request, including by requesting additional information from Hejeij; responding to his proposed terms for a terms of removal agreement; or identifying reasons why or why not the proposed agreement is acceptable at this time. Instead OFAC appears to have incorporated Hejeij's request into its consideration of his delisting petition—although OFAC likewise failed to identify why Hejeij's request was without merit in the administrative record assembled in support of its decision to deny Hejeij's delisting petition. This signals a far broader problem, which is not that OFAC has merely delayed rendering a decision on Hejeij's request but OFAC has also failed to begin a process through which a decision may be forthcoming. Accordingly, any court order requiring an expedited process would have the salutary effect of ensuring that an agency process is underway in the first instance. Together, these considerations demonstrate clearly that OFAC has acted with unreasonable delay in processing Hejeij's request to enter into a terms of removal agreement and that any prejudice to OFAC from a court order compelling a decision would be minimal.

27

Defendants' counter-arguments are unavailing. First, Defendants appear to argue that because OFAC denied Hejeij's delisting petition, OFAC "has not delayed any decision with respect to Hejeij's request." Def.'s Mot. at 23. According to Defendants, OFAC's decision to deny Hejeij's delisting petition evidences "OFAC's position that Hejeij should remain on the SDN List," thereby rendering his claim that OFAC has failed to act in a timely manner on his request to enter into a terms of removal agreement "at best moot." *Id*. Defendants cite *Zevallos* where this court held that Zevallos' claim of unreasonable delay under § 706(1) was moot because OFAC had, in fact, issued a decision by the time of its consideration. *Id*. at 23-24 (citing *Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014)).

But Defendants have collapsed OFAC's decision with respect to Hejeij's reconsideration request onto Hejeij's entirely separate request to enter into a terms of removal agreement. Hejeij concedes that OFAC issued a decision on his delisting petition, as it was required to do pursuant to 5 U.S.C. § 555(b). OFAC, however, made no decision with respect to Hejeij's request to enter into a terms of removal agreement. Indeed, it failed to respond to Hejeij's request, failed to demonstrate that a proceeding was established to consider the request, and failed to produce an administrative record for this Court regarding its consideration of that request. Defendants cannot excuse these failures by prejudicially arguing that OFAC's conclusion that Hejeij should remain on the SDN List renders moot his § 706(1) unreasonable delay claim with respect to his request to enter into a terms of removal agreement. OFAC is not aware of what arguments Hejeij may have brought to bear in the proceeding if one had been established to fairly consider the request or what information may have come into the agency's own possession as it undertook its review. Moreover, Defendants' appeal to *Zevallos* is without merit, as *Zevallos* merely held that where a decision on a petition has been rendered, a § 706(1) unreasonable delay claim with respect to that

28

petition is moot. *Zevallos*, 10 F. Supp. 3d at 123. That is not the case here, as OFAC has only issued a decision on a delisting petition and Hejeij's claim is with respect to an entirely different petition.

The rule is clear. OFAC is required "to proceed to conclude a matter presented to it . . . within a reasonable time," and—in the case of a denial—is obligated to provide "[p]rompt notice . . . of the denial," along with a statement of the grounds for its decision. 5 U.S.C. §§ 555(b) and (e). OFAC failed to issue a decision with respect to the matter before it—i.e., Hejeij's request to enter into a terms of removal agreement—and Defendants' request that the Court substitute a decision rendered in a distinct agency proceeding for a decision with respect to Hejeij's request to enter into a terms of removal agreement is inappropriate and legally impermissible.

Defendants further argue that Hejeij "failed to state a claim under § 706(1)," as "[j]udicial review is limited to final agency action" and Hejeij has not demonstrated that OFAC failed to take an action that it was required, as a matter of law, to take. Def.'s Mot. at 24. Specifically, Defendants contend Hejeij "merely sought to begin discussions with OFAC regarding a potential settlement," and "discussion and negotiation cannot reasonably be viewed" as "agency action" under the APA. *Id*. at 24-25. For this reason, according to Defendants, "Hejeij cannot demonstrate that OFAC was required to respond to his request, let alone within a specific period of time." *Id*. at 26.

Defendants' argument, however, is entirely reliant on its erroneous characterization of Hejeij's request, which they view as merely a request to negotiate rather than a request to enter into a terms of removal agreement. But the very title of the document at issue is "Request to Enter into an Agreement for Removal from OFAC's SDN List," which clearly indicates that Hejeij requested OFAC take a discrete agency action—i.e., the issuance of a "rule," "order," "license," or "relief" with respect to his designation. AR 0167. This was also distinguishable from his

delisting petition, as Hejeij argued in the latter that he did not meet the criteria for designation under E.O. 13224 or, in the alternative, that circumstances had changed to negate the basis for designation. In the request at issue, on the other hand, Hejeij requested OFAC "to enter into a Terms of Removal Agreement that would govern the rescission of [Hejeij's] designation and the removal of his name from OFAC's [SDN List]." AR 0169. Indeed, Hejeij expressly noted that a terms of removal agreement "would obviate the need for the continuous back and forth of the reconsideration process," as "th[e] proposed agreement would condition OFAC's rescission of [Hejeij's] designation on any number of stipulations . . ." *Id.*

Hejeij's request even contained proposed terms for such a terms of removal agreement, including ones directly relevant to OFAC's decision to maintain Hejeij's designation. AR 0170-0171 (where Hejeij proposed "severing, and refrain from ever again entering into, any dealings of any nature whatsoever with Adham Tabaja . . ., or any entities under [his] ownership or control" and "to not return to, or be employed in, any operational, executive, or managerial position in any financial institution for a five (5) year period"). OFAC failed to issue a decision with respect to these proposed terms, which—if decided on—would have produced an "agency action" within the meaning of the APA. OFAC's belated efforts to recharacterize the nature of Hejeij's request fail when any scrutiny is given to the document at issue, as it is clear that Hejeij requested OFAC take an agency action involving the removal of his name from the SDN List. AR 0167-0172.

For these reasons, Defendants acted with unreasonable delay in rendering a decision on Hejeij's request to enter into a terms of removal agreement in violation of the APA. This Court should grant summary judgment in favor of Hejeij and deny Defendants' motion for summary judgment as to Count II of the Amended Complaint.

### III. DEFENDANTS FAILED TO PROVIDE HEJEIJ WITH ADEQUATE NOTICE OF THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 OR THE REASONS FOR

### OFAC's Denial of His Delisting Petition in Violation of His Due Process Rights Under the Fifth Amendment to the U.S. Constitution

Defendants' failure to provide Hejeij with adequate notice of the reasons for their decision to designate him under E.O. 13224 or their decision to deny his delisting petition violated their obligations under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Hejeij respectfully requests that the Court grant summary judgment in his favor as to Counts III and IV. In doing so, Hejeij requests that the Court issue an order directing Defendants to disclose detailed unclassified summaries of classified or otherwise privileged information contained in the administrative records regarding Hejeij's designation and the denial of his delisting petition or to provide an alternative mechanism by which Hejeij may understand the reasons for Defendants' decisions and have a meaningful opportunity to contest those decisions.

> A.     *Defendants Violated Hejeij's Due Process Rights by Failing to Provide Adequate Notice of the Reason for Their Decisions to Designate Him Under E.O. 13224 and to Deny His Delisting Petition*

Before the government can deprive persons of a constitutionally protected liberty or property interest, they must be provided notice and a hearing. *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (finding this requirement to be a "fundamental norm of due process clause jurisprudence") (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). Due process is a "flexible" concept, requiring only "such procedural protections as the particular situation demands." *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S. at 334-35). Yet a key attribute is that due process requires that deprived persons be afforded a meaningful opportunity to be heard, which includes notice of the grounds upon which the government acts. *Mathews*, 424 U.S. at 333 (1976). This procedural protection is as applicable in cases involving

foreign nationals challenging their OFAC designation as elsewhere. *See Fares*, 901 F.3d at 323 (noting that "[t]o determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard— courts weigh [the] three factors under the familiar *Mathews v. Eldridge* balancing test…").

While the D.C. Circuit has held that—with respect to foreign terrorist organizations—it has tolerated an approach under which due process solely requires disclosure of the unclassified portions of the administrative record, this approach has only been "countenanced . . . in very limited, statutorily recognized circumstances . . ." *Fares*, 901 F.3d at 319. "[I]n [this] narrow category of cases" where the government may disclose only the unclassified portions of the administrative record, the D.C. Circuit has ensured that other procedural safeguards exist to provide meaningful due process protections, including, for instance, by authorizing "strictly necessary adaptations of ordinary administrative and judicial process." *Id.* at 319, 324. These "necessary adaptations" may include requiring the government to provide designated parties "with sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations'" otherwise withheld from disclosure. *Id.* at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *see also Zevallos v. Obama*, 10 F. Supp. 3d 111, 131 (D.D.C. 2014) (stating that where the classified record provides essential support to OFAC's determination, the government may be required to make disclosures that provide the designee with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence."); *see also Kiareldeen*, 273 F.3d at 552 (finding that "[i]nformation contained in the unclassified summaries was ultimately sufficient to assist [plaintiff] in mounting a defense to the [government's] allegations."). Other alternative procedural safeguards—which are undertaken in lieu of providing designees with the full unredacted administrative record on which

the government bases its action—include authorizing designee's cleared counsel to access the full administrative record in order to "verify the government's grounds . . ." *See Fares*, 901 F.3d at 323; *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 982 (9th Cir. 2012) (noting that "to the extent that it is feasible to permit a lawyer with security clearance to view the classified information, the value of those methods seems undeniable.").

These procedural protections are designed to ensure that a person understands all of the reasons for their OFAC designation and to prevent partial disclosure of the factual bases for the designation. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ."). For this reason, where OFAC disclosed "only one of three reasons for its . . . designation," the Ninth Circuit held such partial notice to be "incomplete" and inconsistent with OFAC's due process obligations. *Al Haramain*, 686 F.3d at 986. Due process requires that designated parties have an opportunity to present rebuttal evidence or otherwise negate claims that they meet the legal criteria for designation. *Nat'l Council of Resistance of Iran*, 251 F.3d at 209. That opportunity is present only when a designee understands all of the reasons supporting OFAC's determination.

      i.     Defendants Failed to Provide Adequate Notice of the Reasons for Their Designation of Hejeij Under E.O. 13224

Defendants have failed to provide Hejeij with fair notice of the reasons for his designation under E.O. 13224 consistent with their obligations under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. As evident from the administrative record underlying his designation—attached as an exhibit to the administrative record docketed in this action— Defendants redacted the entire section of the record describing the basis for the agency's determination that Hejeij met the criteria for designation under E.O. 13224. AR 0142-0145. All relevant agency findings and conclusions in support of OFAC's determination that Hejeij

"provides financial, material, or technological support for, or financial or other services to or in support of, Hizballah, a person designated pursuant to E.O. 13224" were thus entirely obscured from Hejeij's view. AR 0142. Accordingly, OFAC's provision of the redacted administrative record provided neither actual nor constructive notice to Hejeij as to the reasons for his designation and afforded him no meaningful opportunity to contest his designation.

In lieu of disclosing the full administrative record, OFAC provided two unclassified summaries of classified or privileged information contained in the administrative record. AR 0229, 0232. In aggregate, these unclassified summaries total seven "paragraphs," although some are a mere sentence in length. *Id*. The relevance of the allegations contained in the summaries are unclear, as OFAC provided no clarification as to whether the summaries relate to background material or to the bases for designation found in the evidentiary memorandum. In addition, it is likewise unclear whether the allegations contained in those summaries represent findings or conclusions in support of the agency's determination, nor how the agency reasoned from the evidence in its possession to reach those findings or conclusions. Finally, OFAC provides no indication whether the summaries total the full sum of reasons underlying OFAC's determination that Hejeij meets the criteria for designation under E.O. 13224. Thus, even if Hejeij rebutted each of the allegations contained in the unclassified summaries, whether OFAC may still maintain his designation on some factual basis undisclosed to him by those summaries or otherwise.

These deficiencies have serious due process implications. As discussed above, OFAC is obligated to ensure that designated parties have an opportunity to present rebuttal evidence or otherwise negate claims that they meet the legal criteria for designation—an opportunity which is only present when a designee is provided all of the reasons supporting OFAC's determination. *See Nat'l Council of Resistance of Iran*, 251 F.3d at 209. Because "disclosure of some but not all of

the allegations against [a designee] impairs their ability to fully clear their names for delisting," courts have required that OFAC disclose all of the reasons for a designation. *Fares*, 901 F.3d at 322; *Al Haramain*, 686 F.3d at 986. Where full disclosure of an unredacted administrative record is not possible, the D.C. Circuit has required other procedural protections to ensure OFAC meets its notice obligations, including, for instance, through use of unclassified summaries. *Fares*, 901 F.3d at 324; *Zevallos*, 10 F. Supp. 3d at 131. Unclassified summaries must be sufficiently detailed and provide designated parties, at the very least, "with the 'who,' 'what,' 'when,' and 'where' of the allegations.'" *Fares*, 901 F.3d at 324. If OFAC elects not to utilize unclassified summaries, then it must find alternative methods to provide notice to the designee, as the onus is on OFAC to ensure designated parties have sufficient notice to understand the reasons for their designation. *Id*.

Here, OFAC failed to provide Hejeij with sufficient notice of the bases for his designation, as OFAC redacted all relevant portions of the administrative record and provided less than detailed unclassified summaries which are of unclear relevance to the basis for Hejeij's designation. This deficient notice has inhibited Hejeij from meaningfully contesting all of OFAC's allegations against him and from fairly challenging OFAC's designation or its denial decision through this litigation. For instance, OFAC alleges that, "[i]n mid-2013, a Hizballah finance official met with Kassem Hejeij, and Hejeij agreed to make changes to bank accounts held by individuals, entities, or charitable institutions affiliated with Hizballah so as to hide ties between money laundering and Hizballah." AR 0229. Hejeij has denied engaging in that activity and has requested additional information from OFAC so as to allow him a meaningful opportunity to rebut this allegation, including, for instance, the name of the person with whom Hejeij is alleged to have met. AR 0264. In providing that information, Hejeij would be able to determine whether that meeting indeed took place; whether it took place in that individual's capacity as a Hizballah finance official or in his

personal capacity; and whether Hejeij ordered bank officials to take any action in response to the meeting. If Hejeij determined that the meeting had not taken place or that OFAC had drawn erroneous conclusions from the meeting, Hejeij would be able to provide evidence, including documentation, showing either that the meeting did not take place or that it was of a different nature than alleged. Yet OFAC has rejected Hejeij's request for additional disclosures and stated that the information provided thus far constitutes the extent of the releasable information. AR 0230. Accordingly, Hejeij is barred from meaningfully contesting a factual basis for his designation, as OFAC has failed to provide enough information related to the allegation to allow him an opportunity to rebut it. This is clearly contrary to OFAC's due process obligations to ensure designated parties have a meaningful opportunity to rebut allegations underlying their designation.

Defendants misconstrue the relevant legal standard against which the adequacy of their disclosures must be judged and—for this reason—fail to grasp the shortcomings inherent in the disclosure made in the instant case. According to Defendants, "due process mandates only that OFAC (1) provide Hejeij 'with the unclassified evidence on which it relied to designate him[,]' (2) allow Hejeij the opportunity 'to contest the propriety and adequacy of that evidence[,]' and (3) permit him 'to continue contesting his designation by filing new delisting requests . . .'" Def's Mot. at 29 (quoting *Zevallos*, 793 F.3d at 116-17.

Defendants' reliance on *Zevallos* is wholly misplaced. According to the *Zevallos* court, "Zevallos was fully equipped to rebut Treasury's rationale by the time it finished disclosing information to him in September 2005 . . . [u]nlike the petitioners in *Al Haramain* and *KindHearts* who never fully understood why they had been designated." *Zevallos*, 793 F.3d at 117. "Because Zevallos knew the basis for his designation," the court did not find any "comparable due process violation" as evident in those other cases. *Id.* at 117. It is this factual context that provides the basis

for the legal standard set forth in *Zevallos*: the unclassified evidence disclosed to Zevallos all of the reasons for his designation, leaving him in a position to contest OFAC's allegations and seek the rescission of that designation.

It is certainly not the case that OFAC is solely required to disclose only the unclassified record where the substantive portions of the record are entirely redacted. In *Fares*, for instance, the D.C. Circuit made clear that where the unclassified record failed to disclose the reasons for a designation, the court has authorized "strictly necessary adaptations of ordinary administrative and judicial process…" *Id*. at 319, 324 (quoting *Kiareldeen*, 273 F.3d at 548). This includes by requiring OFAC to provide designated parties "with sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations'" not otherwise disclosed. *Id*. These "strictly necessary adaptations of ordinary administrative and judicial process" would be superfluous if OFAC were merely required to provide the unclassified evidence underlying its designation decision. Indeed, *Fares* makes clear that disclosure of only the unclassified portions of the administrative record has been "countenanced . . . in very limited, statutorily recognized circumstances . . .," and only where other procedural protections provide an understanding of the reasons for the government's action. *Fares*, 901 F.3d at 319.

Having failed to comprehend the relevant legal standard against which their disclosures are to be judged, it is thus no surprise that Defendants believe themselves compliant with their due process obligations. Defendants argue, for instance, that "OFAC has described to the extent possible . . . the specific evidence it relied on in determining that Hejeij meets the criteria for designation under § 1(d) of EO 13224," which is a characterization of the disclosure, not an evaluation of its legal sufficiency. Def.'s Mot. at 30. Defendants make no effort to identify whether OFAC's disclosures include all of the agency's findings and conclusions in support of Hejeij's

designation or whether OFAC's unclassified summaries are sufficiently detailed to suffice for due process purposes in accordance with *Fares*. These are telling omissions that underscore how fatally deficient OFAC's disclosures have been with respect to Hejeij's E.O. 13224 designation.

> ii.   Defendants Failed to Provide Adequate Notice of the Reasons for Their Denial of Hejeij's Delisting Petition

Compounding the issue, Defendants have likewise failed to provide Hejeij with fair notice of the reasons for OFAC's denial of his delisting petition in violation of their due process obligations under the Fifth Amendment to the U.S. Constitution. As identified above, the administrative record compiled in support of OFAC's denial decision contains heavy redactions in the version disclosed to Hejeij. AR 0004-0015. For instance, in that section of the evidentiary memorandum outlining the reasons for OFAC's denial decision, ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Yet all of the findings and evidentiary support for this conclusion are redacted in the version disclosed to Hejeij.[1] These findings and evidentiary support appear substantial, as this portion of the memorandum contains fourteen paragraphs—thirteen of which are entirely redacted, including supporting footnotes. AR 0008-0010. OFAC provides no unclassified summaries to mitigate the problems associated with these redactions to the factual bases for its denial decision.

Similarly, the next section of the evidentiary memorandum purports to identify "[a]dditional information on Hejeij's continued relationship with MEAB and provision of

---

[1] OFAC's classification markings identify the material as SECRET, although—based on the sub-heading of this section of the record—it would appear that OFAC's supporting evidence stems from ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

financial, material, or technological support for, or financial or other services to or in support of, Hizballah." AR 0010. Yet, all of OFAC's findings and evidentiary support are redacted in the version disclosed to Hejeij, including five of the six paragraphs comprising this section. AR 0010-0011. OFAC has not supplemented this disclosure with any unclassified summaries or other alternative procedural mechanisms by which Hejeij can gain an understanding as to all of the reasons for the denial decision. This is clearly inconsistent with OFAC's due process obligations under the Fifth Amendment to the U.S. Constitution, as it leaves Hejeij in the position of being wholly unable to meaningfully contest his designation through the provision of rebuttal evidence.

Defendants argue that the disclosures made in OFAC's August 29, 2019 letter informing Hejeij of OFAC's decision to deny his delisting petition suffice for due process purposes, as they "set forth six bases for [OFAC's] decision." Def's Mot. at 31-32. Yet, the August 29, 2019 letter replicates the conclusions found in the evidentiary memorandum supporting OFAC's decision but provides none of the agency's findings nor the evidentiary support from which it reasoned to reach those conclusions. For instance, Defendants believe it sufficient for OFAC to merely disclose that the agency "rejected Hejeij's characterization of his commercial ventures in Iraq, including Global Cleaners." Def's Mot. at 32. But this blanket statement as to the agency's conclusion (if that statement can reasonably be said to constitute a "conclusion" at all) provides no information to Hejeij as to the factual basis for OFAC's rejection of Hejeij's characterization of his commercial ventures in Iraq. For example, it does not identify on what basis it determined that Hejeij's statements as to his ventures in Iraq were untrue; what information it had in its possession disputing Hejeij's characterization; and whether OFAC rejected all of Hejeij's characterizations as to his commercial ventures in Iraq or only portions of those characterizations. Thus, Hejeij is in no better position than he was prior to his delisting petition to provide rebuttal evidence demonstrating that

OFAC's claims as to his conduct in Iraq are in error. This is because Hejeij lacks any information as to what evidentiary support OFAC is marshalling to reach its conclusion and to reject his efforts to contest that conclusion.

> B.       *Hejeij Has Alleged Sufficient Contacts to the United States to Merit a Constitutional Right to Due Process*

Courts have repeatedly held that foreign nationals may be owed constitutional protection. *See, e.g.*, *Plyler v. Doe*, 457 U.S. 202 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953); *Bridges v. Wixon*, 326 U.S. 135 (1945); *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931); *Wong Wing v. United States*, 163 U.S. 228 (1896); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). For instance, foreign nationals are owed "constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).

This Court has not identified all of the specific factual circumstances under which foreign nationals may lawfully seek the protections of the U.S. Constitution. *See, e.g.*, *Nat'l Council of Resistance of Iran*, 251 F.3d at 201-202. Nor has this Court set forth criteria by which to determine whether a foreign national outside the United States satisfies the "substantial connections" test or is otherwise able to assert constitutional standing with respect to the blocking of their property. *See Kadi*, 42 F. Supp. 3d at 25. In *Kadi*, this Court noted that the D.C. Circuit had failed to "address[] whether such [constitutional] rights turn on the presence of property in the United States, or whether [a foreign national] can raise certain constitutional claims, but not others." *Id.* at 25 (citing *Verdugo-Urquidez*, 494 U.S. at 264-66). This Court thus found instructive the D.C. Circuit's decisions in challenges to Foreign Terrorist Organization ("FTO") designations, which likewise involved foreign nationals asserting constitutional due process rights. *Id.* at 26. In those cases, the *Kadi* court noted, "the presence of property" served as "the benchmark for satisfying the

'substantial connections' test, and whether a party has the ability to raise constitutional claims, at least with respect to that property." *Id*.

Defendants challenge Hejeij's standing to assert a constitutional right to due process with respect to his OFAC designation. In doing so, Defendants argue that Hejeij is "a foreign national with no physical presence in the United States" and that his claim that his property and interests in property within U.S. jurisdiction are blocked is no more than "a description of the legal consequence of his designation." Def.'s Mot. at 27-28. Further, Defendants contend that— irrespective of whether or not Hejeij has property in the United States—"mere property ownership—in the absence of both presence and a substantial connection to this country—would be insufficient under *Verdugo-Urquidez* and *Jifry* to support Hejeij's claims to the protections of the Constitution." Def.'s Mot. at 28. Accordingly, in Defendants' view, Hejeij "has not demonstrated that he can assert any rights under the Constitution [and] the Court should dismiss his Fifth Amendment claims for lack of subject-matter jurisdiction . . ." Def.'s Mot. at 28.

Hejeij has alleged that he is a foreign national resident in Lebanon and that his property and interests in property within U.S. jurisdiction are blocked as a result of Defendants' actions. Am. Compl. ¶ 10, 12. Contrary to Defendants' claims, Hejeij did not "acknowledge" that he lacked a physical presence in the United States nor did he simply rehearse the legal consequences of his OFAC designation. Those are all unfair inferences entirely drawn by Defendants themselves.[2]

Moreover, Defendants over-interpret the relevant case law when they argue that the mere blocking of Hejeij's property and interests in property is "insufficient" to establish the substantial

---

[2] Considering U.S. persons are required to submit blocking reports to OFAC if they come in possession of or control over any property in which Hejeij maintains an interest, *see* 31 C.F.R. § 501.603, the question of whether Hejeij has property or an interest in property blocked in the United States or by a U.S. person, wherever located, may be an issue fit for discovery.

connections to the United States for which constitutional protections may apply. This misreading appears to follow from Defendants' view that foreign nationals may only claim constitutional rights when they "have come within the territory of the United States and developed substantial connections with this country." Def.'s Mot. at 27 (quoting *Verdugo-Urquidez*, 494 U.S. at 271). But, as the D.C. Circuit has held, that reading of *Verdugo-Urquidez* takes the lesson too far. *See Nat'l Council of Resistance of Iran*, 251 F.3d at 202. According to the D.C. Circuit, nothing in *Verdugo-Urquidez* "purports to establish whether aliens who have entered the territory of the United States and developed connections with this country but not substantial ones are entitled to constitutional protections." *Id.* Instead, *Verdugo-Urquidez* posited only that foreign nationals who "have come within the territory of the United States and developed substantial connections to this country" are entitled to constitutional protection. *Verdugo-Urquidez* did not establish either a floor or a ceiling with respect to which foreign nationals may be accorded constitutional protection. For this reason, this Court is required to take a more scrutinizing look at whether Hejeij's purported connections to the United States merit constitutional protection. Hejeij believes that they do.

Similarly, Defendants' contention that "mere property ownership" in the United States is insufficient to establish constitutional protections for foreign nationals is erroneous. Def.'s Mot. at 28. In reviewing the case law, this Court has looked squarely at "the presence of property" as the "benchmark for satisfying the 'substantial connections' test, and whether a party has the ability to raise constitutional claims, at least with respect to that property." *Kadi*, 42 F. Supp. 3d at 26. Thus, far from being insufficient to establish constitutional standing to raise due process claims, "mere property ownership" in the United States has proven central to the standing analysis.

Hejeij also notes the apparent incongruity in Defendants' position. This incongruity arises from Defendants—as the administrators of the GTSR—placing of Hejeij at risk of criminal

liability for causing U.S. persons to violate its prohibitions, yet, simultaneously, allegeing that Hejeij lacks sufficient nexus to the United States to warrant constitutional protection with respect to Defendants' action against him. In Defendants' view, Hejeij may have requisite nexus to the United States to warrant potential criminal prosecution by U.S. authorities but not sufficient nexus to provide any constitutional protection with respect to his blocked property. *See U.S. v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. Feb. 7, 2018) (noting its prior ruling that the Indictment "establishes a sufficient nexus between Mr. Atilla and his coconspirators' conduct and the United States.'"). Simply put, Defendants cannot have it both ways.

IV.   **DEFENDANTS FAILED TO PROVIDE HEJEIJ WITH SUFFICIENT NOTICE OF THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 OR THE REASONS FOR OFAC'S DENIAL OF HIS DELISTING PETITION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

It is a fundamental tenet of administrative law that an agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious agency action for purposes of the APA. *Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (citing *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). By requiring agencies to identify the reason for their decision, deprived parties are afforded the opportunity to address any errors the agency may have made in reaching its decision and courts are able to fairly review the matter in the instance that the agency persists in its wrongful decision. *Id.*

This requirement further ensures that the APA's administrative reconsideration procedures, which allow for interested persons to appear before an agency to seek a "determination of an issue, request, or controversy in a proceeding," 5 U.S.C. § 555(b), are procedurally fair. OFAC implements the APA's reconsideration procedures through its delisting procedures set forth at 31 C.F.R. § 501.807, which allow for designated persons to seek reconsideration of their designation or assert that the circumstances giving rise to the designation are not applicable. Under OFAC's

delisting procedures, designated persons may provide evidence or arguments that they believe establishes an insufficient basis for the designation or propose remedial measures that they believe would negate the basis for the designation. 31 C.F.R. § 501.807(a). To give effect to these delisting procedures, designated persons must have an understanding of the reasons for their designation and be placed in a position to offer rebuttal evidence to OFAC or propose remedial steps that render the factual bases for the designation inapplicable.

The APA entitles Hejeij to the reasons for the agency's action against him and to request OFAC to reconsider its action through a reconsideration process. *See e.g.*, 5 U.S.C. § 555(b); *Tourus Records, Inc.*, 259 F.3d at 736. Absent notice of the reasons for his designation or of the reasons for OFAC's denial decision, Hejeij is at a significant and unlawful disadvantage in fairly utilizing OFAC's administrative reconsideration procedures. For, as discussed above, Hejeij has no reasonable opportunity to meet his burden under OFAC's delisting procedures insofar as he continues to lack a full understanding as to the factual bases for his designation and for OFAC's denial decision. Withholding from Hejeij the sum total of reasons for his designation and his denial decision renders the APA's administrative reconsideration procedures, as well as OFAC's own delisting procedures, an empty gesture falling far short of what due process requires.

For the reasons discussed above, Defendants have failed to provide the reasons for their designation of Hejeij and for their decision to deny Hejeij's delisting petition. Most, if not all, substantive portions of both administrative records underlying OFAC's actions were redacted in the records disclosed to Hejeij, and the unclassified summaries provided with respect to OFAC's decision to designate Hejeij contain allegations of unclear relevance to the basis of Hejeij's designation. Absent a clear idea of the reasons for his designation under E.O. 13224 and OFAC's denial of his delisting petition, Hejeij is in no position to meaningfully utilize the reconsideration

procedures provided to him as a matter of law and to challenge his designation or the denial of his delisting petition. This violates Defendants' obligations under the APA to provide notice to designated parties, and, as a result, this Court should grant summary judgment in Hejeij's favor with respect to Count VI of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant Hejeij's motion for summary judgment; deny Defendants' motion to dismiss or, in the alternative, for summary judgment; and enter judgment in favor of Hejeij on all claims.

Dated: December 6, 2019

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*
*Kassem Hejeij*