UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**KASSEM HEJEIJ,**

**Plaintiff,**

**v.**

**ANDREA M. GACKI,** *et al.*,

**Defendants.**

Civil Action No. 19-cv-1921 (TFH)

---

## MEMORANDUM OPINION

Kaseem Hejeij is a citizen of Lebenon who was designated by the Department of Treasury, Office of Foreign Asset Control (OFAC) as a Specially Designated Global Terrorist (SDGT) on June 10, 2015. Mr. Hejeij petitioned OFAC to reconsider his designation and remove him from the list of SDGTs, but OFAC denied his request and Mr. Hejeij commenced this litigation against OFAC and Andrea M. Gacki, in her official capacity as Director of OFAC, challenging OFAC's decision to include him on the SDGT list as arbitrary, capricious, or an abuse of discretion. Defendants have moved to dismiss or, in the alternative for summary judgment. The Court will dismiss Mr. Hejeij's delay and Fifth Amendment claims and grant summary judgment on all other claims.

## I.   BACKGROUND

The International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-08, authorizes the President to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." *Id*. § 1701(a). If a national emergency is declared under IEEPA, the President can "regulate, direct and compel,

nullify, void, prevent or prohibit" transfers or transactions involving "any property in which any foreign country or a national thereof has any interest . . . with respect to any property, subject to the jurisdiction of the United States." *Id*. ¶ 1702(a)(1)(B).  After the September 2001 terrorist attacks, President George W. Bush declared a national emergency under IEEPA.  *See* Executive Order 13224 (E.O. 13224), 66 Fed. Reg. 49079 (Sept. 23, 2001).  E.O. 13224 stressed "the pervasiveness and expansiveness of the financial foundation of foreign terrorists" and found that "financial sanctions may be appropriate for those foreign persons" determined to have assisted terrorists and terrorist organizations.  *Id*. at Preamble.  The Secretary of the Treasury was authorized to designate "persons" whose property and interests should be blocked because they "assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of" terrorism and/or terrorist organizations.  *Id*. § 1(c)-(d)(i).  The Secretary delegated its authority to OFAC, making it responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13224.  *See* 31 C.F.R. § 594.802.

Mr. Hejeij is a Lebanese businessman and the founder and former owner and manager of Middle East Africa Bank.  Am. Compl. [Dkt. 6] ¶ 11.  On June 10, 2015, Mr. Hejeij was designated under Executive Order 13224 and his name was added to OFAC's list of Specially Designated Nationals and Blocked Persons (SDN List).  *Id*. ¶ 12.  Designation on OFAC's SDN List caused all of Mr. Hejeij's property in the United States to be blocked, prohibited U.S. persons from engaging in dealings or transactions with Mr. Hejeij, and discouraged foreign persons from the same due to the potential for designation on the SDN List themselves as a result.  *Id*. ¶¶ 12, 15.  Mr. Hejeij was designated "for allegedly providing financial, material, or technological support for, or services to or in support of, Hizballah."  *Id*. ¶ 15.

OFAC's reasons for designating Mr. Hejeij include:

> As of early 2014, Kassem Hejeij and an individual whom OFAC has reason to believe is Adham Tabaja, were responsible for transferring funds from Hizballah companies in Iraq to Hizballah.

> As of mid 2014, Kassem Hejeij was an owner of Global Cleaners which provided millions of dollars per year to Hizballah.[1]  As OFAC noted in October 2016, Global Cleaners obtained lucrative contracts to provide sanitation services in Baghdad, Iraq.

> As of 2014, Hizballah had previously held investments in Global Cleaners as part of Baghdad's city government's agreement to award 80 [sic] of municipal contracts to Hizballah-owned companies.

> As of late 2013, Kassem Hejeij was working on behalf of Hizballah to manage commercial ventures in Iraq for various Lebanese companies.   These contracts included various energy-related ventures in Iraq as well as certain business activities in Africa and South America used to finance Hizballah.  The revenues were then remitted to Hizballah using accounts at various banks, and Hejeij was working to open Middle East Africa Bank (also known as MEAB) branches in Iraq for Hizballah.

> In mid-2013, Kassem Hejeij was working with the Iraqi Prime Minister's office to finalize paperwork for MEAB to begin banking operations in Iraq.

> In mid-2013, a Hizballah finance official met with Kassem Hejeij, and Hejeij agreed to make changes to bank accounts held by individuals, entities, or charitable institutions affiliated with Hizballah so as to hide ties between money laundering and Hizballah.  Specifically, Hejeij agreed to begin transferring accounts at MEAB that were registered to Hizballah-affiliated individuals or entities to new accounts under different names.

> Kassem Hejeij has maintained direct ties with senior elements in Hezbollah, Hezbollah elements in Iraq, among others.  He has provided support to Hezbollah for a number of years through Middle

---

[1] Mr. Hejeij disputes this fact and has always maintained that he possesses no ownership interest in Global Cleaners.  Am. Compl. ¶ 23.

East and Africa Bank, including by investing in civilian infrastructure that Hezbollah uses in Lebanon and Iraq.

AR 229, 232.[2]

On October 2, 2017, Mr. Hejeij requested the administrative record underlying OFAC's decision and administrative reconsideration of his designation, arguing that "the factual allegations supporting OFAC's determination that [he] met the criteria for designation . . . were erroneous or, in the alternative, that circumstances had changed so fundamentally as to [] negate the basis for his designation."  Am. Compl. ¶¶ 17, 27.  After hearing nothing from OFAC for five months, Mr. Hejeij sent another letter inquiring on the status of his October request on March 7, 2018.  OFAC responded to Mr. Hejeij's reconsideration request by issuing a questionnaire on March 12, 2018 and providing Mr. Hejeij with the redacted administrative record on April 19, 2018.  Id. ¶¶ 18, 29.  Mr. Hejeij responded to the questionnaire and provided additional information and documentation to support his reconsideration request on June 8, 2018.  Id. ¶¶ 19-20.  Between his initial reconsideration request and the response to OFAC's questionnaire, Mr. Hejeij resigned his position at Middle East Africa Bank and divested his ownership interest. Id. ¶ 19.  Mr. Hejeij also expressed a desire "to provide rebuttal evidence or otherwise explain any specific evidence in OFAC's possession" to further support his reconsideration request; however, OFAC never provided specific names or details which Mr. Hejeij could explain or refute.  Id. ¶ 20.

On June 11, 2018, Mr. Hejeij suggested to OFAC that they enter a Terms of Removal Agreement under which he:

> (1) would sever and refrain from dealings of any nature with Adham Tabaja or companies owned or controlled by Tabaja;

---

[2] All cites to the Administrative Record reflect the bates page number of the documents, not the electronic case filing (ECF) page number.  The Administrative Record is located at docket 40-1.

(2) would not be employed in any operational, executive, or managerial position in any financial institution for a five-year period; and
(3) would not extend any lines of credit to any companies for a five-year period.
OFAC acknowledged receipt but did not otherwise provide any substantive response to this request.

*Id.* ¶ 21.  Mr. Hejeij indicated that entering into a terms of removal agreement "would save resources by not [requiring OFAC] to process the reconsideration request of an SDN who has already expressed a desire to accede to conditions necessary to negating the basis of his designation."  AR 171.  After another two months without a response from OFAC, Mr. Hejeij filed a civil complaint on August 15, 2018.  Am. Compl. ¶ 31.  On October 17, 2018, OFAC provided Mr. Hejeij with a non-privileged and unclassified summary of the reasons supporting the designation and Mr. Hejeij voluntarily dismissed his civil complaint.  *Id.* ¶ 32.  OFAC provided additional support for its decision on November 28, 2018.  *Id.* ¶ 33.

Mr. Hejeij supplemented his response to OFAC's questionnaire on February 25, 2019 after OFAC provided a new unclassified summary of information contained in the administrative record that supported the designation decision.  *Id.* ¶ 22.  On March 13, 2019, Mr. Hejeij asked OFAC to clarify the reasons for his designation.  *Id.* ¶ 25.

On June 26, 2019, Mr. Hejeij filed this action under the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.*  Compl. [Dkt. 1].  On August 29, 2019, OFAC issued a decision on Mr. Hejeij's delisting request and denied reconsideration.  Am. Compl. ¶ 34; Ex. A, Am. Compl. [Dkt. 6-1]; AR 1-3.  OFAC provided Mr. Hejeij with a redacted copy of the administrative record that supported its denial of the delisting petition.  Am. Compl. ¶ 41.  On October 11, 2019, Mr. Hejeij filed an amended complaint, arguing that (1) Defendants' denial of the delisting petition constituted arbitrary and capricious agency action; (2) Defendants' failure to respond to Mr. Hejeij's request to enter into a terms of removal agreement constituted

unreasonable delay; (3) Defendants' failure to provide adequate notice of the reasons for his designation violates constitutional due process; (4) Defendants' failure to provide adequate notice of the reasons for his designation violates administrative due process; (5) Defendants' failure to provide adequate notice of the reasons for denial of his delisting petition violates constitutional due process; and (6) Defendants' failure to provide adequate notice of the reasons for denial of his delisting petition violates administrative due process.  Am. Compl. [Dkt. 6].

Defendants have moved to dismiss or, in the alternative for summary judgment and the motion is ripe for review.[3]

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When a party invokes Rule 12(b)(6) to challenge a complaint for failing to state a claim for relief pursuant to Rule 8, the Court must assess the complaint to determine whether it contains sufficient facts that, when accepted as true, evidence a claim that is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

---

[3] *See* Defs.' Mot. to Dismiss or, in the Alternative, for Summary J. [Dkt. 8]; Pl.'s Cross Mot. for Summary J. and Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Summary J. (Hejeij Opp'n) [Dkt. 9]; Defs.' Consolidated Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, for Summary J. (OFAC Opp'n) [Dkt. 11]; Pl.'s Reply Mem. in Supp. of Cross Mot. for Summ. J. [Dkt. 13]; First Notice of Suppl. Authority [Dkt. 18]; Response to First Notice of Suppl. Authority [Dkt. 19]; Second Notice of Suppl. Authority [Dkt. 20]; Response to Second Notice of Suppl. Authority [Dkt. 21]; Third Notice of Suppl. Authority [Dkt. 22]; Response to Third Notice of Suppl. Authority [Dkt. 24].

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### B. Summary Judgment

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Chiayu Chang v. USCIS*, 289 F. Supp. 3d 177, 182 (D.D.C. 2018). When considering challenges to agency action under the APA, instead of applying Federal Rule of Civil Procedure 56(a)'s summary judgment standard, "the district judge sits as an appellate tribunal. The 'entire case on review' is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

The APA requires courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### III.   ANALYSIS[4]

#### A.  Was OFAC's Denial Decision Arbitrary and Capricious?

Count I of Mr. Hejeij's Amended Complaint alleges that the denial of his delisting

petition was arbitrary and capricious agency action because the evidence Defendants argue

supports the decision to list Mr. Hejeij does not support the conclusion and findings.  Am.

Compl. ¶¶ 56-59.  He specifically challenges OFAC's conclusion that knowledge of

"Hizballah['s] funding mechanisms and business connections" equated to access to senior

elements of Hizballah and support for the organization.  Hejeij Opp'n at 20-21.  He also disputes

OFAC's determination the he was not credible when he denied interaction with the Hizballah

finance official, denied having continued involvement and control over the MEAB, and denied

partial ownership of Global Cleaners.

A court's "review—in an area at the intersection of national security, foreign policy, and

administrative law—is extremely deferential."  *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d

728, 734 (D.C. Cir. 2007).  Agency action may only be set aside "if it is 'arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law.'"  *Id*. at 732 (quoting 5 U.S.C.

§ 706(2)(A)).  A court "may not substitute [its] judgment for OFAC's," but the agency is

required "to 'examine the relevant data and articulate a satisfactory explanation for its action

including a rational connection between the facts found and the choice made.'"  *Id*. (quoting

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

---

[4] The Court has jurisdiction over this case because it arises under the laws of the United States, specifically the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., the United Nations Participation Act, 22 U.S.C. § 287c, and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.  *See* 28 U.S.C. § 1331.  Venue is proper in this District Court because the challenged actions took place in the District and the Defendants are located in the District.  *See* 28 U.S.C. §§ 1391(b) and (e).

Having reviewed the material upon which OFAC relied, the Court concludes that it did not err in denying Mr. Hejeij's delisting petition.  OFAC based its decision to list Mr. Hejeij and deny his delisting petition on the following findings by the agency:

- Mr. Hejeij "maintained direct ties with senior elements in Hizballah and provided support to the gropu for a number of years through Middle East Africa Bank (MEAB), including by working on behalf of Hizballah to manage commercial ventures in Iraq."  AR 1.

- Mr. Hejeij "met with a Hizballah finance official in 2013 and agreed to make changes to bank accounts held by individuals, entities, and charitable institutions affiliated with Hizballah in order to hide the ties between money laundering activities and Hizballah." *Id*. at 2.

- Mr. Hejeij "collaborated with Adham Tabaja, whom OFAC designated in June 2015 for providing support and services to Hizballah," by "transferring funds from Hizballah companies in Iraq to Hizballah."  *Id*.

- Mr. Hejeij assisted in opening two MEAB branches in Iraq "for reasons other than advancing innocuous commercial interests."  *Id*.

- Mr. Hejeij's partial ownership of Global Cleaners, "which provided millions of dollars per year to Hizballah."  *Id*.

OFAC also requested and reviewed additional information provided by Mr. Hejeij in response to questionnaires and responded to the arguments presented by Mr. Hejeij in his delisting petition. *See id*. at 1, 29-87 (OFAC questionnaire and response), 256-92 (supplemental response to OFAC questionnaire).  Finally, OFAC considered classified evidence supporting Mr. Hejeij's designation and provided unclassified summaries of the evidence to Mr. Hejeij.  *Id*. at 227-32. OFAC concluded that Mr. Hejeij failed to "put forth arguments or evidence establishing that an insufficient basis exists for his designation or that the circumstances resulting in the designation are no longer applicable." *Id*. at 1.

Although Mr. Hejeij does not agree with OFAC's conclusion that knowledge of Hizballah mechanisms equals support of the organization, the Court does not find such a conclusion is arbitrary and capricious.  OFAC reasonably argues that Hizballah, like other

terrorist organizations is "unlikely to widely publicize details of its nefarious operations," including the details of its funding mechanisms.  OFAC Opp'n at 11.  And OFAC is not required to provide concrete evidence that Mr. Hejeij is a member of Hizballah to defeat his APA claims, but can instead base its decision on informed judgment.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) ("[C]onclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government.").  Additionally, OFAC relies on more than that conclusion to support Mr. Hejeij's designation and a reviewing court must consider all of the evidence together, not "require[] each piece of the government's evidence to bear weight without regard to all (or indeed any) other evidence in the case."  *Al-Adahi v. Obama*, 613 F.3d 1102, 1105-06 (D.C. Cir. 2010).

Finally, the Court cannot substitute its judgment for that of the agency and OFAC adequately explained its reasons for questioning Mr. Hejeij's credibility and the evidence he presented to challenge his designation.  The agency is not required to demonstrate that Mr. Hejeij's interpretation of the evidence is unreasonable, but merely that the record evidence supports the agency's decision.  *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 n.9 (D.D.C. 2014) (quoting *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010)) ("'When reviewing for substantial evidence, [the Court does] not ask whether the record could support the petitioner's view of the issue, but whether it supports the [agency]'s ultimate decision.  The substantial evidence inquiry turns not on how many discrete pieces of evidence the [agency] relies on, but on whether that evidence adequately supports its ultimate decision.'"). The D.C. Circuit has recently held in an unpublished judgment that, under the APA, an individual challenging OFAC's designation "must show that the 'rationale' behind his original designation 'was never true or is no longer true.'"  *Joumaa v. Mnuchin*, No. 19-5166, 798 Fed.

App'x 667, 668 (D.C. Cir. March 3, 2020).  OFAC considered all of the evidence and arguments

submitted in support of Mr. Hejeij's delisting petition and determined they either conflicted with

evidence already obtained by the agency or did not require a different finding.  *See* AR 1-3

(explaining the evidence presented by Mr. Hejeij and the reasons OFAC discounted it); *id*. at 12-

13 (explaining why OFAC did not credit Mr. Hejeij's evidence that he was not a part-owner of

Global Cleaners); *id*. at 13-14 (explaining why OFAC did not credit Mr. Hejeij's statements that

his relationship with Adham Tabaja was limited to his role as MEAB chairman).

The Court has considered the entire record, both classified and unclassified, and finds

that Defendants' denial of Mr. Hejeij's delisting petition was not arbitrary and capricious.

### B.  Did OFAC Unreasonably Delay Its Response to Mr. Hejeij's Request to Enter Into a Terms of Removal Agreement?

Mr. Hejeij alleges in Count II of the Amended Complaint that Defendants have yet to

respond to his June 2018 request to enter into a terms of removal agreement and Defendants'

failure to respond constitutes unreasonable delay.  The APA requires agencies "to conclude a

matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their

representatives and within a reasonable time."  5 U.S.C. § 555(b).  And a reviewing court "shall

compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

Defendants claim that the response denying Mr. Hejeij's delisting petition also denied his

request to enter into a terms of removal agreement; and the fact that a decision was issued on

both of Mr. Hejeij's requests moots his unreasonable delay claim.  *See Zevallos*, 10 F. Supp. 3d

at 123 ("The plaintiff's first argument is moot because OFAC has issued its decision regarding

[plaintiff's] designation.").  However, the letter denying Mr. Hejeij's delisting petition nowhere

mentions his request to enter a terms of removal agreement.  *See* AR 1-3 ("Consequently, and for

the aforementioned reasons, your client's request is denied and your client's name will remain on

OFAC's SDN list pursuant to E.O. 13224.").  Despite the fact that OFAC's denial letter did not also specifically deny Mr. Hejeij's request to enter a terms of removal agreement, it is evident from Mr. Hejeij's request itself that OFAC was only required to respond to the terms of removal request as an alternative to deciding his delisting petition.  *See generally* AR 167-72 ("Request to Enter into an Agreement for Removal from OFAC's SDN List").  Mr. Hejeij specifically stated that:

> Petitioner believes that a Terms of Removal Agreement would satisfactorily resolve this reconsideration matter to the benefit of all parties and would serve to achieve OFAC's underlying policy objectives. . . .  OFAC would save resources by not having to process the reconsideration request of an SDN who has already expressed a desire to accede to conditions necessary to negating the basis of his designation.

AR 171.  Therefore, Mr. Hejeij's request to enter into a terms of removal agreement was an alternative to OFAC deciding his delisting petition.  The fact that OFAC completed the reconsideration process and denied Mr. Hejeij's delisting petition is *de facto* a refusal to select Mr. Hejeij's alternative request to enter into a terms of removal agreement.  Therefore, OFAC has responded to Mr. Hejeij's request to enter into a terms of removal agreement and Count II is moot.

### C.  Did OFAC Provide Adequate Notice of the Reasons for the 2015 Designation and 2019 Denial Decision?

Mr. Hejeij challenges OFAC's provision of notice regarding the reasoning behind both his original designation in 2015 and the agency's denial of his delisting petition in 2019.  For both decisions, Mr. Hejeij argues OFAC failed to provide adequate notice under the Fifth Amendment and the APA.

### 1. Fifth Amendment Notice

Mr. Hejeij argues that Defendants infringed on his Fifth Amendment right to due process by failing to adequately notify him of the reasons supporting his original designation and the subsequent denial of his delisting petition.  Defendants move to dismiss Mr. Hejeij's Fifth Amendment claims because he lacks substantial contacts with the United States and, therefore, is not entitled to Fifth Amendment protections.

"[N]on-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections."  *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (citing *Johnson v. Eisentrager*, 339 U.S. 763, 771 (1950)); *see also People's Mojahedin Org. of Iran v. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise.").  However, non-resident aliens are entitled to Fifth Amendment protections if they "have come within the territory of the United States and developed substantial connections with the country."  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (plurality opinion). The D.C. Circuit has also held within the context of an OFAC sanctions case that presence in the United States or substantial property interests are necessary to warrant due process rights. *Compare Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 201 (D.C. Cir. 2001) (finding two Iranian organizations could bring a due process challenge because they had an "overt presence within the National Press Building in Washington, D.C." and an "interest in a small bank account") *with 32 County Sovereignty Comm. v. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002) (rejecting petitioners' claim to constitutional rights where they "demonstrated neither a property interest nor a presence in this country").

Mr. Hejeij is a foreign national with no presence in the United States and he has not alleged any specific property or other interest located within the United States.  The Amended

Complaint states that "all of Hejeij's property and interests in property within U.S. jurisdiction was blocked," Am. Compl. ¶ 15, but does not list any specific property or interests. "Describing the legal consequences of any person's addition to the SDN list, however, does not establish *Plaintiff's* substantial connections to the United States." *See Rakhimov v. Gacki*, Case No. 19-2553, 2020 WL 1911561, at *5 (D.D.C. April 20, 2020) (emphasis in original). In response to Defendants' argument that Mr. Hejeij lacked substantial contacts, Mr. Hejeij offers no specific examples of property or other interests located within the United States, but instead asks for discovery on the issue. It is incomprehensible why a plaintiff would need to conduct discovery regarding his own interests. Mr. Hejeij is the individual with the specific knowledge of whether he has property or other interests in the United States and his failure to identify even one example of such interests permits the Court to find no substantial connections exist to warrant due process protections. In fact, Mr. Hejeij responded to an OFAC questionnaire asking him to "detail any interest you currently hold in any financial accounts or real property in the United States" and he responded that he "does not maintain an interest in any financial accounts or real property in the United States." AR 47.

Because Mr. Hejeij has not alleged any connection to the United States, let alone a substantial one, the Court will dismiss Mr. Hejeij's Fifth Amendment due process claims.

2. *APA Notice*

Mr. Hejeij also argues that OFAC failed to provide adequate notice as required by the APA. The APA requires an agency to "set forth its reasons" for decisions, *Roelofs v. Secretary of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980), and when considering a challenge to agency action to provide:

> Prompt notice . . . of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a

14

prior denial or when the denial is self-explanatory, the notice shall
be accompanied by a brief statement of the grounds for denial.

5 U.S.C. § 555(e).

Mr. Hejeij was provided with the administrative record which includes (1) a three page
letter explaining the reasons his delisting petition was denied; (2) a redacted copy of the
evidentiary memorandum supporting the delisting petition denial; (3) a form requesting
additional information, that specifically listed individuals and organizations whose relationship
to Mr. Hejeij OFAC was particularly interested in; (4) a redacted memorandum listing the
reasons for Mr. Hejeij's designation; and (5) two unclassified summaries of the information
forming the basis for Mr. Hejeij's designation and the denial of his delisting petition.  While Mr.
Hejeij argues that the significant redactions and lack of specificity in the unclassified summaries
makes it impossible for him to adequately refute Defendants' findings, he has more information
than merely the redacted document and summaries.  He focuses on OFAC's failure to disclose
the name of the individual he allegedly met with in 2013, but OFAC did identify a list of
individuals whose relationship with Mr. Hejeij about which it was interested in learning.  That
list provided Mr. Hejeij with additional details upon which OFAC presumably relied both when
he was designated and when his delisting petition was denied.  *See Rakhimov*, 2020 WL
1911561, at *7 ("OFAC's questionnaires offer further information . . . [and] provide meaningful
details regarding the evidence.").  It is also well established "that the APA does not require
OFAC to provide [individuals] with the classified or law-enforcement-privileged information
supporting [their] designation."  *Id*. (citing *Sulemane v. Mnuchin*, No. 16-1822, 2019 WL 77428,
*7 (D.D.C. Jan. 2, 2019)).

Mr. Hejeij was provided with a sufficient basis to understand his designation and delisting petition denial.  Therefore, the Court will grant summary judgment to Defendants on Mr. Hejeij's claims challenging the adequacy of the notice under the APA.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, or in the alternative for summary judgment, will be granted.  A memorializing Order accompanies this Memorandum Opinion.

Date: September 16, 2020

THOMAS F. HOGAN
United States District Judge

16